# EXHIBIT 1

# Maryland Judiciary Case Search

NOTICE: Available

## Case Detail

### Case Information

Court System: **Circuit Court For Montgomery County - Civil**
Location:        **Montgomery Circuit Court**
Case Number: **C-15-CV-25-000042**
Title:            **HEALTHWELL FOUNDATION, INC. vs. ALAN KLEIN, et al.**
Case Type:    **Injunction**
Filing Date:   **01/03/2025**
Case Status:  **Open**

### Involved Parties Information

#### Defendant

Name: **PAN FOUNDATION, INC., a/k/a PATIENT ACCESS NETWORK FOUNDATION**

Address: **805 15th Street, NW**
                **Suite 500**
City:        **Washington**   State: **DC**   Zip Code: **20005**

#### Plaintiff

Name: **HEALTHWELL FOUNDATION, INC.**

Address: **20440 Century Boulevard**
                **Suite 250**
City:        **Germantown**   State: **MD**   Zip Code: **20874**

#### Attorney(s) for the Plaintiff

Name:                **CURRY, JENNIFER L**
Appearance Date: **01/03/2025**
Address Line 1:    **Baker, Donelson, Bearman, Caldwell & Berkowitz P.C.**
Address Line 2:    **100 Light Street**
Address Line 3:    **19th Floor**
City:                   **BALTIMORE**   State: **MD**   Zip Code: **21202**

Name:                **Felix, Gillian M**
Appearance Date: **01/03/2025**

Address Line 1:    **Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
Address Line 2:    **100 Light Street**
City:                      **BALTIMORE**   State:  **MD**   Zip Code:  **21202**

---

## Defendant

Name: **KLEIN, ALAN**

Address: **11602 Georgetowne Court**
City:        **Potomac**   State:  **MD**   Zip Code:  **20854**

---

# Document Information

File Date:            **01/03/2025**
Document Name: **Complaint / Petition**
Comment:             **for Injunctive Relief, Declaratory Judgment, and Damages**

---

File Date:            **01/03/2025**
Document Name: **Case Information Report Filed**
Comment:

---

File Date:            **01/03/2025**
Document Name: **Request to Issue**
Comment:             **Summons on Defendants**

---

File Date:            **01/03/2025**
Document Name: **Motion/Request for Protective Order**
Comment:             **and Request for Emergency Hearing**

---

File Date:            **01/03/2025**
Document Name: **Memorandum**
Comment:             **in Support of Motion for Temporary Restraining Order and Request for Emergency Hearing**

---

File Date:            **01/03/2025**
Document Name: **Supporting Exhibit**
Comment:             **A to Motion for Temporary Restraining Order and Request for Emergency Hearing**

---

File Date:            **01/03/2025**
Document Name: **Supporting Exhibit**
Comment:             **B to Motion for Temporary Restraining Order and Request for Emergency Hearing**

File Date:          **01/03/2025**
Document Name: **Supporting Exhibit**
Comment:          **C to Motion for Temporary Restraining Order and Request for Emergency Hearing**

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland Rules, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

Copyright © 2025. Maryland Judiciary. All rights reserved.
Service Desk: (410) 260-1114

| | | |
|---|---|---|
| HEALTHWELL FOUNDATION, INC. | * | IN THE |
| 20440 Century Blvd. Suite 250 | | |
| Germantown, Md 20874 | * | CIRCUIT COURT |
| | | |
| Plaintiff | * | FOR |
| | | |
| v. | * | MONTGOMERY COUNTY |
| | | |
| ALAN KLEIN, | * | Case No. |
| 11602 Georgetowne Court | | |
| Potomac, MD 20854, | * | |
| | | C-15-CV-25-000042 |
| And | * | |
| | | |
| PAN FOUNDATION, INC. | * | |
| a/k/a PATIENT ACCESS NETWORK | | |
| FOUNDATION, | * | |
| 805 15TH Street, NW | | |
| Suite 500 | * | |
| Washington, D.C. 20005 | | |
| **S/O:** | * | |
| Resident Agent: | | |
| CORPORATION SERVICE COMPANY, | * | |
| 1090 Vermont Avenue, NW | | |
| Washington, D.C. 20005 | * | |
| infor@cscglobal.com | | |
| | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

Plaintiff, HealthWell Foundation, Inc. ("HealthWell" or the "Foundation"), brings this Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages against Defendants, Alan Klein ("Mr. Klein") and PAN Foundation, Inc. ("PAN") (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

**Nature of this Action**

1.      This is an action seeking permanent injunctive relief, a declaratory judgment, and damages against Mr. Klein, the former Chief Development Officer of HealthWell, arising out of his breaches and threatened breaches of his Employment Agreement with the Foundation, as explained below.

2.      This is also an action against PAN, Mr. Klein's new employer, for tortious interference with the Agreement between HealthWell and Mr. Klein.

**Parties**

3.      HealthWell is a 501(c)(3) non-profit corporation headquartered in Germantown, Maryland, which operates as an independent charitable healthcare patient assistance organization.

4.      Mr. Klein was the Chief Development Officer of HealthWell, until he voluntarily resigned on December 2, 2024.

5.      PAN is a 501(c)(3) non-profit corporation headquartered in Washington, DC, and is a direct competitor of HealthWell that operates as an independent charitable healthcare patient assistance organization.

**Factual Allegations**

**The Terms and Conditions of Mr. Klein's Employment with HealthWell**

6.      Mr. Klein began his employment with HealthWell in September 2015 as the Chief Development Officer and a member of the Senior Management Team.

7.      On August 8, 2018, in exchange for additional compensation, Mr. Klein entered into an Employment Agreement (the "Agreement") with HealthWell that governs the terms of his conduct both during his employment with, and after his termination from, HealthWell. A copy of Mr. Klein's Employment Agreement is attached as Exhibit A.

8.    Among those terms of his employment are those set forth on page four (4) of the Agreement addressing his non-compete obligations:

> During the term of your employment and for a period of one (1) year following the termination of your employment for any reason whatever you will not, directly or indirectly, whether as principal or as agent, officer, director, employee, member, manager, consultant, shareholder, or otherwise, alone or in associate with any other person corporation or other entity, (i) engage in a Restricted Business (as defined below) in the geographic area constituting the United States of America, [or] (ii) solicit the trade of, or trade with, any customer, prospective customer, donor, prospective donor, supplier, or prospective supplier of the Foundation in any business, organization or enterprise competitive with that of the Foundation to the Foundation's advantage…

> * * *

> For purposes of this paragraph, the term "Restricted Business" shall mean and include any business, enterprise or organization that (i) is operated as an independent, charitable patient assistance program or organization or (ii) has as its primary business operation a patient assistance program or organization. For example, the foregoing shall not restrict you from acting as an employee, consultant or the like for (i) a charitable organization that operates a patient assistance program as an ancillary, but not primary, part of its overall operations or (ii) a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an ancillary, but not primary, part of its overall operations.

9.    Mr. Klein's non-compete obligations, per the Agreement, provide as follows:

> During the term of your employment and for a period of one (1) year following the termination of your employment for any reason whatever you will not, directly or indirectly, whether as principal or as agent, officer, director, employee, member, manager, consultant, shareholder, or otherwise, alone or in associate with any other person corporation or other entity…(iii) solicit or induce, or attempt to solicit or induce, any employee of the Foundation to leave the Foundation for any reason whatsoever, or hire any employee of the Foundation (it being conclusively presumed so as to avoid any disputes under this paragraph

that the hiring of any employee or former employee of the Foundation within six (6) months following the termination of his/her employment with the Foundation is in violation of this paragraph).

10.    Among those terms of his employment are those set forth on page two (2) of the Agreement addressing Mr. Klein's obligations to protect HealthWell's Confidential and Proprietary Information:

> You recognize and acknowledge that: (i) in the course of your employment you have access to and acquire certain Confidential Information…relating to the business and operation of the Foundation, (ii) the Confidential Information is the property of the Foundation, (iii) the use, misappropriation or disclosure of the Confidential Information would constitute a breach of trust and could cause irreparable injury to the Foundation, and (iv) it is essential to the protection of the Foundation's good will and to the maintenance of the Foundation's competitive position that the Confidential Information be kept secret and that the Confidential Information not be disclosed by you to others or be used by you to your own advantage or the advantage of others.

> You are to hold and safeguard the Confidential Information in trust for the Foundation, its successors and assigns and shall not, without the prior written consent of the Foundation, misappropriate or disclose or make available to anyone for use outside the Foundation's organization at any time, either during your employment or subsequent to the termination of your employment for any reason whatsoever, any of the Confidential Information, whether or not developed by you, except as required in the performance of your duties for the Foundation….

> For purposes hereof, the term "Confidential Information" means, without limitation, all information with respect to the Foundation and its business and operations (including, without limitation, proposals, business and operational plans, financial information, customer and prospect lists and information, donor and prospective donor lists and information, donations and grants, individual grant recipients, providers, including specialty pharmacies, vendor information personnel information and contract information), governance, structure, properties, methods of operation, software (including, without limitation, source code, specifications, data, works in process, alpha and beta versions, design documents and

documentation), trade secrets, inventions, discoveries, know-how and other intellectual property.

Upon the termination of your employment for any reason, you are to promptly deliver to the Foundation all correspondence, …notes, notebooks, reports, flowcharts, programs, proposals, and any documents concerning the Foundation's individual grant recipients or donors, or concerning products, services, programs or processes used by the Foundation and, without limiting the foregoing, you are to promptly deliver to the Foundation any and all other documents or materials containing or constituting Confidential Information.

11.     As HealthWell's Chief Development Officer, Mr. Klein was the primary person responsible for developing revenue for HealthWell through soliciting and obtaining charitable donations to HealthWell from donors, the great majority of which consisted of pharmaceutical manufacturers. Those donations would be earmarked for one or more of the many "disease funds" maintained by HealthWell, and which were the source of charitable grants made to qualifying healthcare patients in need of financial assistance to help pay for their medications and other healthcare products and services.

12.     As part of his duties, Mr. Klein would regularly interact with donors and prospective donors in several different ways – including, via telephone and video conference, email, text, attending conferences and the like – and would secure donations by having donors enter into donation agreements with HealthWell setting forth the terms and conditions of the donations.

13.     Mr. Klein was responsible for securing donations to HealthWell in the hundreds of millions of dollars on an annual basis.

**HealthWell's Search For a New President and CEO**

14.     HealthWell's Board of Directors (the "Board") launched a national search for a new President and CEO ("CEO")in or around March 2024.

15.     The Board Chair, David Knowlton ("Mr. Knowlton") selected two members of the Board – Jerri Scarzella ("Ms. Scarzella") and Cathleen Bennett ("Ms. Bennett") – to conduct the CEO search.

16.     With input from other members of the Board, Ms. Scarzella and Ms. Bennett created a new job description, job posting, and a list of criteria required for the new CEO.

17.     On April 15, 2024, Ms. Scarzella and Ms. Bennett issued a CEO job posting, inviting candidates to apply. HealthWell received 192 applications, including Mr. Klein's application and the application of another long-time HealthWell employee.

18.     Over the course of the next several months, Mr. Klein repeatedly told his HealthWell coworkers, as well as some of HealthWell's biggest donors that he would be named CEO.

19.     Ms. Scarzella and Ms. Bennett reviewed the applications and narrowed the pool down to eight candidates for the first round of interviews. Although Mr. Klein and the other HealthWell employee did not meet all of the criteria identified for the CEO position as did the other eight candidates, they were included in the first round of interviews based on their years of service to HealthWell (*i.e.*, nine years for Mr. Klein and 18 years for the other HealthWell employee).

20.     Mr. Klein was interviewed by Ms. Scarzella and Ms. Bennett in or around June 2024.

21.     Ms. Scarzella and Ms. Bennett determined that Mr. Klein's qualifications were not on par with several of the other outside candidates, and therefore he would not continue to the second round of interviews.

22.     Mr. Klein was issued a letter on or around July, 2024, notifying him of the decision that he would not continue through the CEO hiring process.

**Mr. Klein Threatens to Inflict "Pain" on HealthWell When He Was Not Chosen as the New CEO**

23.     Mr. Klein was incensed that he was not selected for the second round of interviews and demanded a meeting with Mr. Knowlton.

24.     Mr. Klein and Mr. Knowlton met in person on July 24, 2024. During that meeting, Mr. Klein told Mr. Knowlton that the decision not to hire him as CEO as embarrassing, particularly because he had told many of his co-workers and several HealthWell donors that he would be the new CEO.

25.     During that same conversation, Mr. Klein demanded that Mr. Knowlton either significantly increase his salary and pay him a hefty bonus or release him from his non-compete obligations. Mr. Klein threatened Mr. Knowlton that if did not acquiesce to these demands, he could inflict significant pain on HealthWell, by convincing donors not to donate going forward or to convince them to place their donations with Mr. Klein at a competitor organization. Mr. Klein later disclosed to another HealthWell employee that he issued this threat to Mr. Knowlton.

26.     Mr. Knowlton made clear that Mr. Klein would not be released from his non-compete obligations and he indicated that HealthWell would consider conducting a compensation study to determine whether his salary required an adjustment based on industry comparisons.

27.     Mr. Klein thereafter began acting out at work, including intimating that he would not return to HealthWell after his vacation, leading to other HealthWell employees raising concerns to Mr. Knowlton about Mr. Klein and his threats.

28.     When Mr. Klein's demands were not heeded, he began targeting HealthWell and the Board with a variety of litigation, all in an apparent effort to force HealthWell to make him CEO, pay him a significant amount of money, or release him from his non-compete obligations.

29.     Specifically, Mr. Klein alleged, among other things, that he was retaliated against because only he and the former CEO were subject to restrictive covenants and because HealthWell refused to release him from his non-compete obligations.

30.     HealthWell's Board selected Michael Heimall ("Mr. Heimall") as the new CEO, and he formally commenced employment in that position in late October 2024.

31.     When Mr. Klein met Mr. Heimall for the first time, at the event when he was announced as the new CEO, Mr. Klein introduced himself to Mr. Heimall and specifically (and without reason) informed him that he was in a legal battle with the Board.

**Mr. Klein Assists PAN to Recruit HealthWell Employee**

32.     Meanwhile, on or about September 12, 2024, HealthWell's Associate Director of Development, Sarina Robbins ("Ms. Robbins"), Mr. Klein's long-time subordinate, received a "connection" request on LinkedIn from Kevin Hagan, Chief Executive Officer of PAN.

33.     The following day, September 13, 2024, Jeanine Jones ("Ms. Jones"), Chief Experience Officer of PAN, sent a "connection" to Ms. Robbins on LinkedIn. Ms. Jones also sent Ms. Robbins a message, stating that Ms. Jones wanted to "connect" because she had "heard great things about [Ms. Robbins] from [Ms. Jones's] colleagues at PAN."

34.     A few days later, while at work at HealthWell, Mr. Klein asked Ms. Robbins whether she regularly checks her LinkedIn account and suggested that she do so. Ms. Robbins found this statement strange because she had never before discussed LinkedIn with Mr. Klein.

35.    Ms. Robbins never applied to work at PAN, nor had she been searching for new employment generally, and remains an employee of HealthWell.

36.    Ms. Robbins also was not active on LinkedIn at that time. In fact, Ms. Robbins had not updated her LinkedIn profile in over a year, and her profile therefore did not include her current title with HealthWell.

37.    Ms. Robbins found it odd that any PAN employee said "great things about [her]" to Ms. Jones, or otherwise had identified her as a potential candidate for employment with PAN, based on her prior lack of engagement or connection with any employees of PAN.

**Mr. Klein Voluntarily Resigned from HealthWell to Accept a Position with PAN**

38.    On December 2, 2024, Mr. Klein notified Mr. Knowlton and Mr. Heimall that he was resigning from his position with HealthWell, effective December 31, 2024.

39.    On December 4, 2024, Mr. Klein notified Mr. Heimall that he had accepted a development position – the same work he was doing with HealthWell – with PAN that would begin on January 6, 2025.

40.    Mr. Klein specifically told Mr. Heimall that Mr. Klein's new job at PAN would be to focus on development of revenue and cultivate PAN's documented existing donors. Mr. Klein explained that both his personal attorney and counsel for PAN reviewed his Employment Agreement and determined that the position would not violate his non-compete obligations.

41.    Prior to leaving HealthWell, Mr. Klein told Ms. Robbins and another HealthWell employee that they would always have a job wherever he worked, implying that he would get them a job at PAN if they wanted.

42.    As required by all HealthWell employees whose employment is terminated, Mr. Klein returned his Foundation-issued equipment – a cell phone and laptop – to HealthWell. Upon

receipt of that cell phone, HealthWell learned that Mr. Klein had uploaded the entire contents of the phone – including internals emails with confidential documents attached, sensitive emails to and from donors, and detailed contact information for donors – to his personal iCloud account.

<u>**Count One**</u>
**Declaratory Judgment**

43.     HealthWell incorporates by reference each of the allegations set forth in Paragraphs 1 to 42 as set forth in full in this Paragraph 43.

44.     There exists an actual and justiciable controversy between HealthWell and the Defendants with respect to whether the Non-Competition provision in Mr. Klein's Employment Agreement are valid and enforceable under Maryland law.

45.     HealthWell seeks declaratory relief on this controversy.

46.     Specifically, HealthWell seeks a declaration that the Non-Competition provision is enforceable, and prohibits Mr. Klein from being employed by an organization that operates as an independent charitable healthcare patient assistance organization in direct competition with HealthWell (*i.e.,* PAN) in a development position with the intention of soliciting and growing donors.

47.     HealthWell further seeks a declaration that Mr. Klein will be in breach of the Employment Agreement, including but not limited to the Non-Competition provision.

WHEREFORE, Plaintiff HealthWell Foundation, Inc. requests that this Court enter judgment declaring that the Non-Competition provision of Mr. Klein's Employment Agreement:

A.  is enforceable; and

B.  prohibits Mr. Klein from being employed in a development position with PAN, and similar organizations.

## Count Two
**Breach of Contract (Against Mr. Klein)**

48.     HealthWell incorporates by reference each of the allegations set forth in Paragraphs 1 to 47 as set forth in full in this Paragraph 48.

49.     HealthWell and Mr. Klein entered into a binding Employment Agreement on August 8, 2018, concerning the terms of his continued employment with HealthWell and his conduct following the termination of his employment with HealthWell.

50.     Among the various terms of the Agreement, in exchange for additional compensation, Mr. Klein was required to refrain directly or indirectly, from soliciting or inducing, or attempting to solicit or induce, any employee of HealthWell to leave HealthWell for any reason whatsoever, both during his employment and during the Restricted Period after the termination of his employment.

51.     The Agreement also required Mr. Klein to keep HealthWell's Confidential Information secret and not to disclose the Confidential Information.

52.     HealthWell has fully performed its obligations under the Employment Agreement.

53.     Mr. Klein has threatened to violate the Non-Competition provisions of his Agreement by accepting employment with PAN, an independent, non-profit organization that provides charitable financial assistance for healthcare patients, in direct competition with HealthWell, to perform development work, the very same work that he performed for HealthWell.

54.     Upon information and belief, Mr. Klein violated the Non-Solicitation provision of the Agreement by assisting PAN to solicit Ms. Robbins, an employee of HealthWell and Mr. Klein's direct subordinate.

55.     Mr. Klein violated the confidentiality provision of the Agreement by taking HealthWell's Confidential and Proprietary Information, including donor contact information,

details of donations, and confidential HealthWell emails and documents before returning his HealthWell-issued laptop computer and cell phone at the time of his termination.

56.     Because the Agreement entitles HealthWell with a unique interest in the protection against unfair competition, solicitation of its employees, and security of its Confidential and Proprietary Information, HealthWell is without an adequate remedy at law.

57.     By reason of these breaches, HealthWell has been, and continues to be, damaged.

WHEREFORE, Plaintiff HealthWell Foundation, Inc. requests that this Court enter judgment on foregoing Count against Defendant Alan Klein, as follows:

A.      For compensatory damages adequate to compensate HealthWell in an amount to be proved at trial;

B.      Preliminary and permanently restrain and enjoin Mr. Klein from soliciting any HealthWell employee to work for PAN, or any other similar organization, for the time period of one year from the date this Court enters its order(s);

C.      Preliminarily and permanently restrain and enjoin Mr. Klein from using any HealthWell Confidential and Proprietary Information and compelling him to return all such Information, permanently delete such information from any electronic storage device or cloud-based system, and destroy all copies thereof wherever they may be located outside of HealthWell's control;

D.      Reasonable attorneys' fees and costs of suit; and

E.      Such other and further relief as the Court deems proper and just.

## Count Three
### Specific Performance (Against Mr. Klein)

58.     HealthWell incorporates by reference each of the allegations set forth in Paragraphs 1 to 57 as set forth in full in this Paragraph 58.

59.    HealthWell and Mr. Klein entered into a binding Employment Agreement on August 8, 2018, concerning the terms of his continued employment with HealthWell and his conduct following the termination of his employment with HealthWell.

60.    Among the various terms of the Agreement, in exchange for additional compensation, Mr. Klein was required to refrain from the following conduct both during his employment and during the designated duration after the termination of his employment:

> (i) [E]ngag[ing] in a Restricted Business (as defined below) in the geographic area constituting the United States of America, [or] (ii) solicit[ing] the trade of, or trade with, any customer, prospective customer, donor, prospective donor, supplier, or prospective supplier of the Foundation in any business, organization or enterprise competitive with that of the Foundation to the Foundation's advantage…
>
> * * *
>
> (iii) solicit[ing] or induc[ing], or attempt[ing] to solicit or induce, any employee of the Foundation to leave the Foundation for any reason whatsoever, or hire any employee of the Foundation (it being conclusively presumed so as to avoid any disputes under this paragraph that the hiring of any employee or former employee of the Foundation within six (6) months following the termination of his/her employment with the Foundation is in violation of this paragraph).
>
> * * *
>
> For purposes of this paragraph, the term "Restricted Business" shall mean and include any business, enterprise or organization that (i) is operated as an independent, charitable patient assistance program or organization or (ii) has as its primary business operation a patient assistance program or organization. For example, the foregoing shall not restrict you from acting as an employee, consultant or the like for (i) a charitable organization that operates a patient assistance program as an ancillary, but not primary, part of its overall

operations or (ii) a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an ancillary, but not primary, part of its overall operations.

61.    HealthWell has fully performed its obligations under the Agreement.

62.    Mr. Klein has threatened to violate the Non-Competition provisions of his Agreement by accepting employment with PAN, an independent, non-profit company that operates as a charitable healthcare patient assistance organization, and performs development work, through soliciting and obtaining charitable donations from donors, in direct competition with HealthWell.

63.    Because the Agreement entitles HealthWell with a unique interest in the protection against unfair competition, HealthWell is without an adequate remedy at law.

64.    By reason of this threatened breach, HealthWell will be damaged.

WHEREFORE, Plaintiff HealthWell Foundation, Inc. requests that this Court enter judgment on foregoing Count against Defendant Alan Klein, as follows:

A.    For preliminary and permanently restrain and enjoin Mr. Klein from working for PAN, or any other similar business, for a period of one year from the date the Court enters said order.

B.    Reasonable attorneys' fees and costs of suit;

C.    Such other and further relief as the Court deems proper and just.

## Count Four
### Breach of Fiduciary Duty (Against Mr. Klein)

65.    HealthWell incorporates by reference each of the allegations set forth in Paragraphs 1 to 64 as set forth in full in this Paragraph 65.

66.     As an executive and member of HealthWell's Senior Management Team, Mr. Klein owed duties to HealthWell, including but not limited to, the duties of care and loyalty to HealthWell.

67.     Upon information and belief, Mr. Klein breached duties he owed to HealthWell, in whole or in part, by:

a.  Coordinating with PAN – directly or indirectly – to solicit Ms. Robbins, a HealthWell employee and Mr. Klein's direct subordinate, to leave her employment with HealthWell and take employment with PAN;

b.  Providing a copy of his Employment Agreement to PAN's counsel for analysis to

c.  Coordinating with PAN to terminate his employment with HealthWell to take a position in development with PAN, doing the very same work soliciting and growing donors as he performed with HealthWell, in violation of the Non-Competition provision of his Employment Agreement;

d.  Taking and failing to return HealthWell's Confidential and Proprietary Information, and, based on information and belief, by uploading the contents of his HealthWell-issued laptop computer and cell phone to his personal iCloud account.

68.     Until five months ago (July 2024), HealthWell held reasonable trust in Mr. Klein as its Chief Development Officer. Because of this trust, HealthWell relied on Mr. Klein to act in the best interests of HealthWell, to not make threats to inflict "pain" on HealthWell, to not induce its employees to leave HealthWell to work for a direct competitor, and to not share HealthWell's Confidential Information with a direct competitor.

69.     The above actions by Mr. Klein actually and proximately caused harm to HealthWell in an amount to be proven at trial.

70.     In the course of breaching his Employment Agreement and breaching his fiduciary duties to HealthWell, while he was still an employee of HealthWell, Mr. Klein acted fraudulently, intentionally, maliciously, and recklessly.

WHEREFORE, Plaintiff HealthWell Foundation, Inc. requests that this Court enter judgment on the foregoing Count against Defendant Alan Klein, as follows:

<u>Count Five</u>
**Intentional Interference with a Contract (Against PAN)**

71.     HealthWell incorporates by reference each of the allegations set forth in Paragraphs 1 to 70 as set forth in full in this Paragraph 71.

72.     There is an existing and enforceable Employment Agreement between HealthWell and Mr. Klein, as set forth above and attached here as Exhibit A.

73.     PAN was and is aware of the contractual relationship between HealthWell and Mr. Klein.

74.     Upon information and belief, PAN intentionally and unjustifiably induced Mr. Klein to breach his Employment Agreement by (1) coordinating with Mr. Klein to solicit a HealthWell employee – Ms. Robbins, Mr. Klein's direct subordinate – to work for PAN; (2) offering Mr. Klein employment in a development position in direct competition with HealthWell; and (3) inducing Mr. Klein to use HealthWell's Confidential and Proprietary Information that he took from HealthWell upon the termination of his employment, all of which are in violation of Mr. Klein's Employment Agreement.

75.     The aforementioned actions by PAN were undertaken with actual malice in that PAN acted with a positive desire and intention to injure HealthWell.

76.     By reason of these actions by PAN, HealthWell has been, and continues to be damaged.

77.     HealthWell lacks an adequate remedy at law in that PAN's employment of Mr. Klein, Mr. Klein's stated intention of continuing to solicit HealthWell employees, and Mr. Klein's continued possession of HealthWell's Confidential and Proprietary Information threatens to harm HealthWell into the future in competing for donors, and this future harm is not measurable and cannot be completely redressed in money damages alone.

WHEREFORE, Plaintiff HealthWell Foundation, Inc. requests that this Court enter judgment on foregoing Count against Defendant Alan Klein, as follows:

A.     For compensatory damages adequate to compensate HealthWell in an amount to be proved at trial;

B.     For punitive damages;

C.     For a period of one year from the date this Court enters such an order, preliminarily and permanently restrain and enjoin PAN from:

    a. employing Mr. Klein;

    b. inducing Mr. Klein to directly or indirect solicit HealthWell employees; and

    c. using HealthWell's Confidential and Proprietary Information and compelling them to return all such HealthWell Information and permanently destroy all electronically-stored copies of such HealthWell Information, and destroy all copies thereof wherever they may be located outside of HealthWell's control; and

D.  Such other and further relief as the Court deems proper and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## <u>VERIFICATION</u>

I solemnly affirm under the penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information and belief.

David Knowlton
HealthWell Foundation Inc. Board Chair

Respectfully submitted,

*/s/ Jennifer L. Curry, Esq.*
Jennifer L. Curry, Esq.
jcurry@bakerdonelson.com
AIS No.: 0712110079
Gillian M. Felix, Esq.
gfelix@bakerdonelson.com
AIS No.: 2001060010
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
100 Light Street
Baltimore, Maryland 21202
Phone: 410.862.1183
Fax: 443.263.7583

E-FILED; Montgomery Circuit Court
Docket: 1/3/2025 4:03 PM; Submission: 1/3/2025 4:03 PM
Envelope: 19407415

IN THE CIRCUIT COURT FOR    Montgomery County
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒PLAINTIFF  ☐DEFENDANT    CASE NUMBER
(Clerk to insert)

**CASE NAME:** HealthWell Foundation, Inc._____ vs. _Alan Klein, et al._
Plaintiff                                    Defendant

PARTY'S NAME: HealthWell Foundation, Inc._____ PHONE: _____

PARTY'S ADDRESS:  20440 Century Blvd., Suite 250, Germantown, MD 20874

PARTY'S E-MAIL: _____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Jennifer L. Curry_____ PHONE: 410-862-1183

PARTY'S ATTORNEY'S ADDRESS:  100 Light St., 19th Floor, Baltimore, MD 21202

PARTY'S ATTORNEY'S E-MAIL:  jcurry@bakerdonelson.com

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** ____ hours   3  days

### PLEADING TYPE

**New Case:** ☒Original    ☐ Administrative Appeal   ☐ Appeal

**Existing Case:** ☐Post-Judgment   ☐Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

**IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)**

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☒ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 04/2017)
Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Findings of Fact
- ☐ Foreclosure
- ☒ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☒ Judgment-Declaratory
- ☐ Judgment-Default

- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above*, mark one of the following.  This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐Liability is conceded.  ☐Liability is not conceded, but is not seriously in dispute.  ☐Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000     ☐ $10,000 - $30,000     ☐ $30,000 - $100,000     ☒ Over $100,000

☐ Medical Bills $_____     ☐ Wage Loss $_____     ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101?  (Check all that apply)
A. Mediation          ☐Yes  ☒No          C. Settlement Conference  ☒Yes  ☐No
B. Arbitration        ☐Yes  ☒No          D. Neutral Evaluation      ☐Yes  ☒No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*          ***(Case will be tracked accordingly)***

- ☐ 1/2 day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time

- ☒ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions***, *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of Defendant's response          ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

| **COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)** |
|---|

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❑ **Expedited** - Trial within 7 months of Defendant's response          ❑ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

## CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ❑ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❑ | Civil-Short | Trial 210 days from first answer. |
| ❑ | Civil-Standard | Trial 360 days from first answer. |
| ❑ | Custom | Scheduling order entered by individual judge. |
| ❑ | Asbestos | Special scheduling order. |
| ❑ | Lead Paint | Fill in: Birth Date of youngest plaintiff ......................... . |
| ❑ | Tax Sale Foreclosures | Special scheduling order. |
| ❑ | Mortgage Foreclosures | No scheduling order. |

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ❑ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❑ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❑ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❑ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| | |
|---|---|
| January 3, 2025 | */s/ Jennifer L. Curry,* AIS No.: 0712110079 |
| Date | Signature of Counsel / Party |
| 100 Light St., 19th Floor | Jennifer L. Curry |
| Address | Printed Name |
| Baltimore, MD 21202 | |
| City            State            Zip Code | |

| | | |
|---|---|---|
| HEALTHWELL FOUNDATION, INC. | * | IN THE |
| 20440 Century Blvd. Suite 250 | | |
| Germantown, Md 20874 | * | CIRCUIT COURT |
| | | |
| Plaintiff | * | FOR |
| | | |
| v. | * | MONTGOMERY COUNTY |
| | | |
| ALAN KLEIN, | * | Case No. |
| 11602 Georgetowne Court | | |
| Potomac, MD 20854, | * | |
| | | |
| And | * | |
| | | |
| PAN FOUNDATION, INC. | * | |
| a/k/a PATIENT ACCESS NETWORK | | |
| FOUNDATION, | * | |
| 805 15TH Street, NW | | |
| Suite 500 | * | |
| Washington, D.C. 20005 | | |
| **S/O:** | * | |
| Resident Agent: | | |
| CORPORATION SERVICE COMPANY, | * | |
| 1090 Vermont Avenue, NW | | |
| Washington, D.C. 20005 | * | |
| infor@cscglobal.com | | |
| | * | |
| | | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## REQUEST FOR ISSUANCE OF SUMMONS

Plaintiff, HealthWell Foundation, Inc., by and through its undersigned attorneys, requests

the issuance of summons upon the Defendants:

ALAN KLEIN,
11602 Georgetowne Court
Potomac, MD 20854

and

PAN FOUNDATION, INC.
a/k/a PATIENT ACCESS NETWORK FOUNDATION,
805 15TH Street, NW

Suite 500
Washington, D.C. 20005
**S/O:**
Resident Agent:
CORPORATION SERVICE COMPANY,
1090 Vermont Avenue, NW
Washington, D.C. 20005
infor@cscglobal.com

Respectfully submitted,

*/s/ Jennifer L. Curry, Esq.*
Jennifer L. Curry, Esq.
jcurry@bakerdonelson.com
AIS No.: 0712110079
Gillian M. Felix, Esq.
gfelix@bakerdonelson.com
AIS No.: 2001060010
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
100 Light Street
Baltimore, Maryland 21202
Phone: 410.862.1183
Fax: 443.263.7583

E-FILED; Montgomery Circuit Court
Docket: 1/3/2025 4:03 PM; Submission: 1/3/2025 4:03 PM
Envelope: 19407415

| | | |
|---|---|---|
| HEALTHWELL FOUNDATION, INC. | * | IN THE |
| 20440 Century Blvd. Suite 250 | | |
| Germantown, MD 20874 | * | CIRCUIT COURT |
| | | |
| Plaintiff | * | FOR |
| | | |
| v. | * | MONTGOMERY COUNTY |
| | | |
| ALAN KLEIN, | * | Case No. |
| 11602 Georgetowne Court | | |
| Potomac, MD 20854, | * | |
| | | |
| And | * | C-15-CV-25-000042 |
| | | |
| PAN FOUNDATION, INC. | * | |
| a/k/a PATIENT ACCESS NETWORK | | |
| FOUNDATION 805 15TH Street, NW | * | |
| Suite 500 | | |
| Washington, D.C. 20005, | * | |
| | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND REQUEST FOR EMERGENCY HEARING

Plaintiff, HealthWell Foundation, Inc. ("HealthWell"), respectfully moves this Court for a

Temporary Restraining Order and Preliminary Injunction pursuant to Maryland Rules 15-501, 15-

504, and 15-505 against Defendants Alan Klein and PAN Foundation, Inc.  In support of this

Motion, HealthWell files the attached Memorandum of Law in Support of Motion for Temporary

Restraining Order and Preliminary Injunction.

Respectfully submitted,

*/s/ Jennifer L. Curry, Esq.*
Jennifer L. Curry, Esq.
jcurry@bakerdonelson.com
AIS No.: 0712110079
Gillian M. Felix, Esq.
gfelix@bakerdonelson.com

AIS No.: 2001060010
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
100 Light Street
Baltimore, Maryland 21202
Phone: 410.862.1183
Fax: 443.263.7583

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of January, 2025, the forgoing Motion for Temporary Restraining Order and Request for Emergency Hearing was served via email and via first class mail, postage prepaid upon the following:

Carla D. Brown, Esq.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
cbrown@charlsonbredehoft.com

*/s/ Jennifer L. Curry, Esq.*
Jennifer L. Curry, Esq.

| | | |
|---|---|---|
| HEALTHWELL FOUNDATION, INC. | * | IN THE |
| 20440 Century Blvd. Suite 250 | | |
| Germantown, MD 20874 | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | MONTGOMERY COUNTY |
| ALAN KLEIN, | * | Case No. |
| 11602 Georgetowne Court | | |
| Potomac, MD 20854, | * | C-15-CV-25-000042 |
| And | * | |
| PAN FOUNDATION, INC. | * | |
| a/k/a PATIENT ACCESS NETWORK | | |
| FOUNDATION, | * | |
| 805 15TH Street, NW | | |
| Suite 500 | * | |
| Washington, D.C. 20005 | | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Maryland Rules 15-501, 15-504 and 15-505, Plaintiff HealthWell Foundation, Inc. ("HealthWell" or the "Foundation"), hereby moves for a temporary restraining order ("TRO") and preliminary injunction against Defendants Alan Klein ("Mr. Klein") and PAN Foundation, Inc. ("PAN") (collectively, "Defendants").

## I.   Preliminary Statement.

As set forth below, the subject matter of this litigation is the violation, and ongoing threatened violations, of the restrictive covenants in Mr. Klein's Employment Agreement (the "Agreement") with HealthWell. Mr. Klein, the former Chief Development Officer of HealthWell, recently resigned and is not only aware of the terms of the non-compete, non-

1

solicitation, and confidentiality provisions of his Agreement, but he has acted with utter disregard for his obligations under those provisions. In the months leading up to his resignation, HealthWell has learned that Mr. Klein has assisted PAN – a direct competitor of the Foundation – in recruiting a HealthWell employee, taken a development position with PAN, and surreptitiously retained confidential and proprietary information from HealthWell equipment following his resignation from the Foundation.

For the reasons set forth below, the four-factor test for a TRO favors HealthWell's need to protect against unlawful competition and theft of its data, while this matter is litigated. HealthWell therefore moves for such a TRO to maintain the status quo while this case is pending.

## II.    Background Facts.

HealthWell is a non-profit organization whose goal is to reduce financial barriers to care for underinsured patients with chronic or life-altering diseases. *See* HealthWell's 2023 IRS 990 Filing, attached as Exhibit A; Compl. ¶ 3) HealthWell relies on grants and donations to fund its important work. (Compl. ¶ 11) The donations received would be earmarked for one or more of the many "disease funds" maintained by HealthWell, and which were the source of charitable grants made to qualifying healthcare patients in need of financial assistance to help pay for their medications and other healthcare products and services. *Id.*

Mr. Klein served as the Chief Development Officer of HealthWell, beginning September 2015. (Compl. ¶ 6) In that role, Mr. Klein was responsible for developing revenue for HealthWell through soliciting and obtaining charitable donations from the Foundation's donors, the great majority of which consisted of pharmaceutical manufacturers. (Compl. ¶ 11) To that end, Mr. Klein would regularly interact with donors and prospective donors in several different

ways – including, via telephone and video conference, email, text, attending conferences and the like – and would secure donations by having donors enter into donation agreements with HealthWell setting forth the terms and conditions of the donations. (Compl. ¶ 12) In that regard, Mr. Klein was responsible for securing donations to HealthWell in the hundreds of millions of dollars on an annual basis. (Compl. ¶ 13).

HealthWell is the largest non-profit organization dedicated to improving access to health care for underinsured patients in the United States. (Compl. ¶¶3, 11)  It has spent many years developing a stable and growing network of donors, largely through its excellent reputation as a leader among charitable organizations for effectiveness and efficiency in the management of its donations and grants. As the Chief Development Officer, Mr. Klein was given access to all of HealthWell's donor and grant information. (Compl. ¶ 12)  Because of the sensitive nature and value of his work to HealthWell, and in exchange for additional compensation, Mr. Klein signed the Agreement that included restrictive covenants, such as non-compete and non-solicit provisions, intended to protect HealthWell's relationships with its donors and its employees. (Compl. ¶ 7) A copy of Mr. Klein's Agreement is attached as Exhibit B. Specifically, Mr. Klein's Agreement provided:

> <u>Confidential and Proprietary Information:</u>
>
> You recognize and acknowledge that: (i) in the course of your employment you have access to and acquire certain Confidential Information…relating to the business and operation of the Foundation, (ii) the Confidential Information is the property of the Foundation, (iii) the use, misappropriation or disclosure of the Confidential Information would constitute a breach of trust and could cause irreparable injury to the Foundation, and (iv) it is essential to the protection of the Foundation's good will and to the maintenance of the Foundation's competitive position that the Confidential Information be kept secret and that the Confidential

Information not be disclosed by you to others or be used by you to your own advantage or the advantage of others.

You are to hold and safeguard the Confidential Information in trust for the Foundation, its successors and assigns and shall not, without the prior written consent of the Foundation, misappropriate or disclose or make available to anyone for use outside the Foundation's organization at any time, either during your employment or subsequent to the termination of your employment for any reason whatsoever, any of the Confidential Information, whether or not developed by you, except as required in the performance of your duties for the Foundation….

For purposes hereof, the term "Confidential Information" means, without limitation, all information with respect to the Foundation and its business and operations (including, without limitation, proposals, business and operational plans, financial information, customer and prospect lists and information, donor and prospective donor lists and information, donations and grants, individual grant recipients, providers, including specialty pharmacies, vendor information personnel information and contract information), governance, structure, properties, methods of operation, software (including, without limitation, source code, specifications, data, works in process, alpha and beta versions, design documents and documentation), trade secrets, inventions, discoveries, know-how and other intellectual property.

Upon the termination of your employment for any reason, you are to promptly deliver to the Foundation all correspondence, …notes, notebooks, reports, flowcharts, programs, proposals, and any documents concerning the Foundation's individual grant recipients or donors, or concerning products, services, programs or processes used by the Foundation and, without limiting the foregoing, you are to promptly deliver to the Foundation any and all other documents or materials containing or constituting Confidential Information.

*Id*. at p. 2.

Non-Competition; Non-Solicitation.

During the term of your employment and for a period of one (1) year following the termination of your employment for any reason whatever you will not, directly or indirectly, whether as principal or as agent, officer, director, employee, member, manager, consultant, shareholder, or otherwise, alone or in associate with any other person corporation or other entity, (i) engage in a Restricted Business (as defined below) in the geographic area constituting the United States of America, [or] (ii) solicit the trade of, or trade with, any customer, prospective customer, donor, prospective donor, supplier, or prospective supplier of the Foundation in any business, organization or enterprise competitive with that of the Foundation to the Foundation's advantage…

* * *

For purposes of this paragraph, the term "Restricted Business" shall mean and include any business, enterprise or organization that (i) is operated as an independent, charitable patient assistance program or organization or (ii) has as its primary business operation a patient assistance program or organization. For example, the foregoing shall not restrict you from acting as an employee, consultant or the like for (i) a charitable organization that operates a patient assistance program as an ancillary, but not primary, part of its overall operations or (ii) a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an ancillary, but not primary, part of its overall operations.

During the term of your employment and for a period of one (1) year following the termination of your employment for any reason whatever you will not, directly or indirectly, whether as principal or as agent, officer, director, employee, member, manager, consultant, shareholder, or otherwise, alone or in associate with any other person corporation or other entity…(iii) solicit or induce, or attempt to solicit or induce, any employee of the Foundation to leave the Foundation for any reason whatsoever, or hire any employee of the Foundation (it being conclusively presumed so as to avoid any disputes under this paragraph that the hiring of any employee or former employee of the Foundation within six (6)

> months following the termination of his/her employment with the
> Foundation is in violation of this paragraph).

*Id*. at p. 4.

In or around March 2024, HealthWell launched a nationwide search for a new President and Chief Executive Officer ("CEO"), led by two members of the Foundation's Board of Directors (the "Board"). (Compl. ¶¶ 14, 15) Mr. Klein applied for the position and apparently assumed that he would be selected as the new CEO, based on his relaying that belief to the many of his coworkers at HealthWell's headquarters. (Compl. ¶¶ 17, 18) After HealthWell received almost 200 applications, the two Board members leading the search narrowed the pool to ten candidates who would receive initial interviews. (Compl. ¶ 17, 19) Based on his years of service to HealthWell, Mr. Klein, as well as another, even-longer serving Foundation employee, were included in the top ten candidate pool. (Compl. ¶ 19).

Mr. Klein's credentials, however, were no match for the credentials of the other candidates in the pool. (Compl. ¶ 21) As a result, he was not selected to receive a second interview, a decision for which he was notified in mid-July 2024. *Id*. Mr. Klein was incensed that he was not selected as the new CEO and demanded a meeting with the Chair of HealthWell's Board, David Knowlton ("Mr. Knowlton"). (Compl. ¶ 23) During that meeting, Mr. Klein threatened that he could inflict significant pain on HealthWell if he stole or turned donors against the Foundation. (Compl. ¶ 25) He then demanded that HealthWell install him as CEO or release him from the non-compete restriction in his Agreement so he could find new employment with a competitor.[1] *Id*. HealthWell would not agree to such a demand and insisted that Mr. Klein remain as the Foundation's Chief Development Officer. (Compl. ¶ 26).

---

[1] Mr. Klein has never waivered his understanding that the language of his Agreement prevents him from working for a competitor, like PAN. So deep is his understanding of the application of that language to his conduct, that he has insisted that HealthWell's decision not to release from his non-compete to allow him to work for a competitor was itself a discriminatory and/or retaliatory act.

Meanwhile, on September 12, 2024, Sarina Robbins ("Ms. Robbins,") HealthWell's Associate Development Director and Mr. Klein's long-time direct subordinate – was contacted on LinkedIn by Kevin Hagan and Jeannine Jones, the CEO and Chief Experience Officer of PAN, respectively. (Compl. ¶ 32, 33) PAN is a non-profit organization that works toward the same goal of reducing financial barriers to healthcare for underinsured patients. *See* PAN's 2023 IRS 990 Filing, attached as Exhibit C. Within days of the LinkedIn messages being sent to Ms. Robbins, Mr. Klein asked her whether she used LinkedIn often. (Compl. ¶ 34) When Ms. Robbins responded that she did not, Mr. Klein insisted that she check her LinkedIn messages. *Id*. Ms. Robbins ultimately remained employed by HealthWell, but Mr. Klein's efforts to recruit her would not be over. (Compl. ¶ 35)

While HealthWell respected and appreciated the efforts Mr. Klein put into his development work and hoped that he would recover from his disappointment at not being selected for CEO, it is clear now that he could not. Mr. Klein's resentment and anger at the decision was so deep, that not only did he threaten to sue each individual HealthWell Board member, but upon meeting the new HealthWell CEO, Michael Heimall ("Mr. Heimall"), for the first time, he went out of his way to inform Mr. Heimall that he was locked in a legal battle with the Board. (Compl. ¶ 31)

Then, on December 2, 2024, Mr. Klein submitted his resignation to Mr. Heimall, identifying December 31, 2024 as his final day of employment. (Compl. ¶ 38) Two days later, December 4, 2024, Mr. Klein notified Mr. Heimall that he had accepted a position with PAN – the same direct competitor that had attempted to recruit Mr. Klein's subordinate – to develop and cultivate donors for PAN – the same development work that he had been doing for HealthWell. (Compl. ¶¶ 32, 39) Mr. Klein also revealed to Mr. Heimall that he had provided a copy of his

Agreement to both his counsel and counsel for PAN, and who determined that the position created for him was somehow compliant with his non-compete restriction. (Compl. ¶ 40)

Although HealthWell initially intended to honor Mr. Klein's request to make December 31 his last day of employment, it simply could not allow Mr. Klein to continue working at HealthWell, with access to its confidential and proprietary information, in light of his plans to move to the Foundation's competitor the following month. Accordingly, Mr. Klein's last day of work at HealthWell was December 9, 2024, and his HealthWell-issued equipment, including his laptop and cell phone, were collected soon thereafter. (Compl. ¶ 40)

Mr. Klein, however, was determined not to go quietly. Before leaving HealthWell, Mr. Klein stated to his direct subordinate – the same one previously recruited by PAN – and another HealthWell employee that he had new employment with PAN and that they would also have a job wherever he worked. (Compl. ¶ 41) Also, before turning in his HealthWell-issued cell phone, Mr. Klein uploaded the entire contents of the phone – including donor names and contact information and sensitive internal emails – to his personal iCloud account. (Compl. ¶ 42)

## III.  HealthWell Is Entitled to a Temporary Restraining Order.

### A.  <u>Legal Standard</u>.

A TRO should be granted if it clearly appears from specific facts shown by affidavit or some other statement under oath that immediate, substantial and irreparable harm will result to the person or entity seeking injunctive relief before a full adversary hearing can be held on the merits of the preliminary or final injunction. Md. Rule 15-504(a). A TRO is "intended to suspend action until an opportunity is afforded the defendants to answer and defend." *Maryland Comm'n on Human Relations v. Downey Communications, Inc.*, 110 Md. App. 493, 516 (1996). A party adversely affected by a TRO may apply for modification of the order on two days' notice, or

such shorter notice as prescribed by the court. Md. Rule 15-504(c)(4).

The Maryland Supreme Court has enumerated four factors which must be considered by trial courts when deciding whether a TRO should be issued:

> (1)    The likelihood that the plaintiff will succeed on the merits;
>
> (2)    the "balance of convenience" determined by whether greater injury would be done to defendants by granting the injunction than would result to the plaintiff from its refusal;
>
> (3)    whether the plaintiff will suffer irreparable injury unless the injunction is granted; and
>
> (4)    the public interest.

*Fritszche v. Maryland State Board of Elections*, 397 Md. 331, 339 (2007).

HealthWell satisfies the four factors that support preliminary injunctive relief. Accordingly, this Court should grant a TRO restraining and enjoining Mr. Klein from breaching his Agreement with HealthWell, by (1) taking and using confidential information he obtained during the course of his employment with HealthWell, (2) soliciting HealthWell employees, and (3) taking employment doing development work for a direct competitor of HealthWell within the one-year restricted period. A TRO should also restrain and enjoin both Mr. Klein and PAN from using HealthWell's confidential and proprietary donor information to conduct PAN's competitive business.

**B.    Likelihood of Success on the Merits.**

HealthWell is likely to succeed on the merits of its claim for a judgment declaring that the Non-Compete, Non-Solicit, and Confidentiality provisions (the "Restrictive Covenants") in Mr. Klein's Agreement are enforceable under Maryland law.

### 1.    The Agreement is unambiguous and capable of only one interpretation.

Under Maryland law, "[i]f the contract language is unambiguous and capable of only one

meaning, [courts] will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Landaverde v. Navarro*, 238 Md. App. 224, 243 (2018). Here, the Restrictive Covenants are not capable of multiple interpretations, and in fact, Mr. Klein understood that he was bound by the terms of those restrictive covenants when he requested that HealthWell release him from the same after he was not selected for the CEO position. (Compl. ¶ 25)

However even were there any ambiguity that would permit the examination of extrinsic evidence to interpret the Agreement – which there is not – the typical sources of that extrinsic evidence – *i.e.*, "the 'negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own construction of the contract and the conduct of the parties,'" *Chaplick for Canal Vista Tr. v. Jeng Fen Mao*, 216 F. Supp. 3d 470, 481 (D. Md. 2016) (quoting *Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337 (1974)), all point to HealthWell's interpretation of the contract. For example, Mr. Klein specifically negotiated for greater compensation in exchange for signing the Agreement with the Restrictive Covenant language. (Compl. ¶ 7) As such, he acted as a sophisticated party with equal bargaining power and negotiated the Agreement – to his benefit – while fully aware of, and consenting to the Restrictive Covenants therein. *Id.*

### 2. The restrictive covenants are enforceable under Maryland law.

In Maryland, a restrictive employment covenant will be enforced if it meets four requirements: (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy. *Becker v. Bailey*, 268 Md. 93, 299 A.2d 835, 838 (1973). Each of these requirements are met in the present case.

a. *The Restrictive Covenants cover HealthWell's legally protectable interests*.

An employer's "legally protectable interest" includes confidential employer information not readily accessible to the public, such as trade secrets, routes, or lists of clients; the employer's "good will" developed through customer contact; and the protection of the employer-client relationship. *Id.* ("an employer has a legitimate interest and so can enforce 'restrictive covenants' . . . to prevent the future misuse of trade secrets, routes, or lists of clients, or solicitation of customers."); *Intellus Corp. v. Barton*, 7 F. Supp. 2d 635, 639 (D. Md. 1998) (finding that former employer had shown that "the success of its business is largely dependent on the personal contacts of its account managers, and Maryland law recognizes [a former employer's] right to protect itself from the harm that would result should [its] clients choose to follow [a former employee] and engage [a rival]").

As the Chief Development Officer, Mr. Klein's position necessarily requires development and cultivation of personal contacts with donors. (Compl. ¶ 11) The cultivation of these relationship is a legally recognized interest protectable by non-compete and/or non-solicitation agreements. *Holloway v. Faw, Casson Co.*, 319 Md. 324, 572 A.2d 510, 515 (1990) ("Persons in business have protectable interest in preventing employees from using contacts established during employment to pirate employer's customers."). This interest is strongest for businesses in which the personal contacts between the employee and the customer are an important element for determining the business's success. *See Millard v. Gerstung Int'l Sport Educ., Inc*., 268 Md. 483, 488–89, 302 A.2d 14, 17 (1973) (quoting *Bailey*, 268 Md. 93, 97–98, 299 A.2d 835, 838 (1973)). Here, there is no greater measure to HealthWell's success than its continued relationships with established donors.

In addition to cultivating close relationships with HealthWell's donors, Mr. Klien's

position also granted him access to HealthWell's confidential business information, defined in

the Agreement as:

> all information with respect to the Foundation and its business and operations (including, without limitation, proposals, business and operational plans, financial information, customer and prospect lists and information, donor and prospective donor lists and information, donations and grants, individual grant recipients, providers, including specialty pharmacies, vendor information personnel information and contract information), governance, structure, properties, methods of operation, software (including, without limitation, source code, specifications, data, works in process, alpha and beta versions, design documents and documentation), trade secrets, inventions, discoveries, know-how and other intellectual property.

Ex. B.

An employer's desire in protecting the disclosure of this information is also a legally

protectable interest under Maryland law. *Willard Packaging Co. v. Javier*, 169 Md. App. 109,

136 (2006).

> b. *The duration and geographical scope of the Restrictive Covenants within the Agreement are reasonably necessary to protect HealthWell's interests.*

The general rule in Maryland is that if a restrictive covenant in an employment contract is

supported by adequate consideration and is ancillary to the employment contract, an employee's

agreement not to compete with his employer upon leaving the employment will be upheld if the

restraint is confined within limits which are no wider as to area and duration than are reasonably

necessary for the protection of the business of the employer. *Bailey*, 268 Md. 93, 299 A.2d 835,

838 (1973).

The noncompete and non-solicitation provisions are both reasonably necessary to protect

HealthWell's interests. First, the noncompete is limited to "Restricted Business," only, which is

defined in the Agreement "as any business, enterprise or organization that (i) is operated as an

independent, charitable patient assistance program or organization or (ii) has as its primary business operation a patient assistance program or organization." Ex. B. The provision specifically permits engagement with similar businesses to HealthWell, such as "a charitable organization that operates a patient assistance program as an *ancillary*, but not primary, part of its overall operations or . . . a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an *ancillary*, but not primary, part of its overall operations." *Id*. (emphasis added). Similarly, the non-solicitation provisions (preventing Mr. Klein's solicitation of HealthWell's donors and current employees) are reasonably limited to protect HealthWell's interests, because they are targeted in preventing Mr. Klein from trading on the goodwill he generated with donors and the HealthWell employees he supervised during his employment.

Second, the one-year duration of the noncompete and non-solicitation provisions, and the geographical scope of the noncompete are both facially reasonable under Maryland law. *PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 606 (D. Md. 2002) ("Maryland has consistently upheld two-year limitations on employment with competitors as reasonable."); *see also Fowler v. Printers II, Inc*., 89 Md. App. 448, 464, 598 A.2d 794, 801 (1991) (upholding a one-year non-solicitation clause as reasonable in duration.). Notably, federal courts applying Maryland law have upheld a larger geographic scope (such as transcontinental) as reasonable where the employer competes for clients on a global basis. *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 292 F. Supp. 2d 748, 756 (D. Md. 2003), aff'd, 116 Fed. Appx. 435 (4th Cir. 2004) ("[I]n situations where the plaintiff competes for clients on a global basis, a restriction limited to a narrow geographic area would be meaningless; therefore, the absence of such a restriction is reasonable."); *see also Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 641–42 (D. Md. 1998); *Hekimian Labs., Inc. v. Domain Sys*., Inc., 664 F. Supp. 493, 498 (S.D. Fla. 1987) (applying

Maryland law).

       c.  *The Restrictive Covenants do not create an undue hardship for Mr. Klein.*

A restrictive covenant does not impose an undue hardship on a former employee when that employee is permitted to use his skills in a similar industry, provided that he does not compete with any aspects of his former employer's business. *Allegis Grp., Inc. v. Jordan*, No. CIV. A. GLR-12-2535, 2014 WL 2612604, at \*7 (D. Md. June 10, 2014), aff'd, 951 F.3d 203 (4th Cir. 2020) (applying Maryland law).

As stated above, the noncompete provision permits Mr. Klein to engage in businesses operating patient assistance programs as an ancillary, but not primary, part of its overall operations. The covenant also allows Mr. Klein to work for a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an ancillary, but not primary, part of its overall operations. Ex. B. This language unambiguously permits Mr. Klein to use his skills at other companies who perform similar work to HealthWell, so long as the primary work is not operating patient assistance programs.

Similarly, the non-solicitation provisions do not prevent Mr. Klein from using his skills in an industry similar to HealthWell, it simply prevents him from stealing HealthWell's established donors and current employees during a one-year period. *Tuttle v. Riggs–Warfield–Roloson, Inc.*, 246 A.2d 588, 589 (Md.1968). (Upholding a two-year non-solicitation provision as reasonably necessary to protect company interests.).

       d.  *The Restrictive Covenants do not violate Maryland public policy.*

There are no applicable public policies prohibiting enforcement of the Restrictive Covenants. To the contrary, it is within the public interest to enforce restrictive covenants, uphold contractual negotiations between equal parties, and the protect an employer's cultivated good

14

will.

### e. Mr. Klein breached his Agreement.

As referenced above, HealthWell is aware of several incidents in which Mr. Klein's conduct constitute breaches of his Agreement, including: (1) accepting employment with PAN, an independent, non-profit organization that provides independent and charitable financial assistance for healthcare patients, in direct competition with HealthWell, in violation of the noncompete; (2) attempting to solicit Ms. Robbins, an employee of HealthWell and Mr. Klein's direct subordinate, in violation of the non-solicitation provision; and (3) taking HealthWell's Confidential and Proprietary Information, including donor contact information, details of donations, and confidential HealthWell emails and documents before returning his HealthWell-issued laptop computer and cell phone at the time of his termination.

For these reasons, HealthWell is likely to succeed on the merits of its counts for Declaratory Judgment (Count One) and/or Breach of Contract (Count Two).

### C.      The Balance of Hardships.

The balance of hardships tilts heavily towards HealthWell. The injury that would be caused to the organization if a TRO or injunction is denied far outweighs any inconvenience to the Defendants. Should Mr. Klein inflict the pain to HealthWell that he threatened to Mr. Knowlton by using the connections he created while employed as the Chief Development Officer, to solicit HealthWell donors to PAN, the potential devastation to HealthWell and the work it performs is immense. (Compl. ¶ 25) The loss of even one significant donation could mean the loss of healthcare to thousands of underinsured patients.

In contrast, the inconvenience (if any) to PAN would be minimal if this Court were to order that the *status quo* should be maintained. Indeed, if PAN is insistent on employing Mr.

Klein, it can simply wait to do so until the one-year restricted period ends on January 1, 2026.

With regard to Mr. Klein, he chose to voluntarily resign from his employment with HealthWell, knowing that he had clear restrictions in his Agreement that prevent him from working for PAN – a fact that he has routinely complained about over the prior several months. Mr. Klein believes that he has CEO-level qualifications and thus he could find a development job with any organization outside of one that does the exact same work ensuring underinsured patients receive healthcare that HealthWell does.

When this Court weighs the benefits and hardships of granting injunctive relief, it is clear that HealthWell will suffer significantly more harm if the relief sought is not granted than the Defendants will suffer if it is.

### D.     Irreparable Injury.

The importance of HealthWell's donors to its work would cause their loss through Mr. Klein's solicitation to be an irreparable harm. Over almost a decade, Mr. Klein worked on behalf of HealthWell to cultivate and grow donors looking to support an organization that ensures healthcare coverage for underinsured patients. (Compl. ¶¶ 11, 12) Losing even one donor due to Mr. Klein's competitive efforts could mean the loss of millions of dollars and loss of healthcare to patients who desperately need it. That loss is irreplaceable. *Ehrlich v. Perez*, 394 Md. 691, 733, 908 A.2d 1220, 1244 (2006) (finding irreparable harm to healthcare patients whose continued treatment depended on State funding, if temporary injunction in favor of the patients was not granted.).

Accordingly, the loss of a major donor to PAN via Mr. Klein's efforts would cause irreparable injury to HealthWell.

### E.     The Public Interest.

Finally, the public interest is served by maintaining the status quo pending a final judicial determination of the enforceability of Mr. Klein's Agreement and determination as to whether his work with PAN would violate that Agreement. Public policy favors the provision of healthcare, particularly to those with chronic illnesses and who are underinsured. It would not serve the public interest if Mr. Klein began soliciting HealthWell's donors, and HealthWell was no longer able to provide its valuable services to underinsured patients before a judicial determination of the enforceability of Mr. Klein's Agreement.

## IV.    Conclusion.

HealthWell has satisfied the four factors under Maryland law for the granting of a TRO: that HealthWell is likely to succeed on the merits, that the balance of hardships favors is in its favor, that it will suffer irreparable harm, and that the public policy of Maryland favors the granting of injunctive relief.  Thus, this Court should order restrain and enjoin the Defendants from starting Mr. Klein's employment, using HealthWell's confidential and proprietary information, and soliciting HealthWell's employees unless a judicial determination can be rendered with regard to Mr. Klein's Agreement.

Respectfully submitted,

*/s/ Jennifer L. Curry, Esq.*
Jennifer L. Curry, Esq.
jcurry@bakerdonelson.com
AIS No.: 0712110079
Gillian M. Felix, Esq.
gfelix@bakerdonelson.com
AIS No.: 2001060010
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
100 Light Street
Baltimore, Maryland 21202
Phone: 410.862.1183
Fax: 443.263.7583

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January, 2025, the forgoing Memorandum in Support of Motion for Temporary Restraining Order and Request for Emergency Hearing was served via email and via first class mail, postage prepaid upon the following:

Carla D. Brown, Esq.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
cbrown@charlsonbredehoft.com

                                                */s/ Jennifer L. Curry, Esq.*
                                                Jennifer L. Curry, Esq.

E-FILED: Montgomery Circuit Court
Docket: 1/3/2025 4:03 PM; Submission: 1/3/2025 4:03 PM
Envelope: 19407415

# EXHIBIT A

PUBLIC DISCLOSURE COPY

| Form **990** | **Return of Organization Exempt From Income Tax** | OMB No. 1545-0047 |
|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations) | **2023** |
| Department of the Treasury<br>Internal Revenue Service | Do not enter social security numbers on this form as it may be made public.<br>Go to www.irs.gov/Form990 for instructions and the latest information. | **Open to Public<br>Inspection** |

**A** For the 2023 calendar year, or tax year beginning _____ and ending _____

| **B** Check if applicable: | **C** Name of organization | **D** Employer identification number |
|---|---|---|
| ☐ Address change | HEALTHWELL FOUNDATION | |
| ☐ Name change | Doing business as | 20-0413676 |
| ☐ Initial return | Number and street (or P.O. box if mail is not delivered to street address) **Room/suite** | **E** Telephone number |
| ☐ Final return/terminated | 20440 CENTURY BOULEVARD  250 | (240)632-5305 |
| ☐ Amended return | City or town, state or province, country, and ZIP or foreign postal code | **G** Gross receipts $ 873,632,339. |
| ☐ Application pending | GERMANTOWN, MD  20874 | **H(a)** Is this a group return |
| | **F** Name and address of principal officer: DAVID L. KNOWLTON | for subordinates? ...... ☐ Yes ☒ No |
| | SAME AS C ABOVE | **H(b)** Are all subordinates included? ☐ Yes ☐ No |

**I** Tax-exempt status: ☒ 501(c)(3)  ☐ 501(c) ( ) ◄ (insert no.)  ☐ 4947(a)(1) or  ☐ 527

**J** Website: ► WWW.HEALTHWELLFOUNDATION.ORG

If "No," attach a list. See instructions

**H(c)** Group exemption number ►

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ► | **L** Year of formation: 2003 | **M** State of legal domicile: VA

## Part I Summary

| | | |
|---|---|---|
| **1** | Briefly describe the organization's mission or most significant activities: IMPROVING ACCESS TO HEALTH CARE FOR AMERICA'S UNDERINSURED. | |
| **2** | Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | |
| **3** | Number of voting members of the governing body (Part VI, line 1a) | **3** 7 |
| **4** | Number of independent voting members of the governing body (Part VI, line 1b) | **4** 7 |
| **5** | Total number of individuals employed in calendar year 2023 (Part V, line 2a) | **5** 234 |
| **6** | Total number of volunteers (estimate if necessary) | **6** 0 |
| **7a** | Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** 0. |
| **b** | Net unrelated business taxable income from Form 990-T, Part I, line 11 | **7b** 0. |

| | | **Prior Year** | **Current Year** |
|---|---|---|---|
| **8** | Contributions and grants (Part VIII, line 1h) | 678,100,099. | 730,901,028. |
| **9** | Program service revenue (Part VIII, line 2g) | 2,800. | 32,198. |
| **10** | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 5,851,613. | 11,430,992. |
| **11** | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0. | 0. |
| **12** | Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 683,954,512. | 742,364,218. |
| **13** | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 604,818,055. | 695,015,656. |
| **14** | Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| **15** | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 16,027,638. | 19,608,580. |
| **16a** | Professional fundraising fees (Part IX, column (A), line 11e) | 325,596. | 423,341. |
| **b** | Total fundraising expenses (Part IX, column (D), line 25) ► 1,239,170. | | |
| **17** | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 6,360,022. | 6,452,253. |
| **18** | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 627,531,311. | 721,499,830. |
| **19** | Revenue less expenses. Subtract line 18 from line 12 | 56,423,201. | 20,864,388. |

| | | **Beginning of Current Year** | **End of Year** |
|---|---|---|---|
| **20** | Total assets (Part X, line 16) | 538,621,977. | 637,832,771. |
| **21** | Total liabilities (Part X, line 26) | 30,879,876. | 81,556,071. |
| **22** | Net assets or fund balances. Subtract line 21 from line 20 | 507,742,101. | 556,276,700. |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ► Signature of officer | | Date |
|---|---|---|---|
| | ► DAVID L. KNOWLTON, BOARD CHAIR | *[signature]* | 10/21/24 |
| | Type or print name and title | | |

| | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| Paid Preparer Use Only | AARON M. FOX | AARON M. FOX | 10/20/24 | | P01365820 |
| | Firm's name ► MARCUS LLP | | | Firm's EIN ► 11-1986323 | |
| | Firm's address ► 1899 L STREET, NW, SUITE 850 | | | | |
| | WASHINGTON, DC 20036 | | Phone no. (202) 227-4000 | | |

May the IRS discuss this return with the preparer shown above? See instructions ........................ ☒ Yes ☐ No

LHA **For Paperwork Reduction Act Notice, see the separate instructions.** 332001 12-21-23 Form **990** (2023)

Form 990 (2023)    HEALTHWELL FOUNDATION    20-0413676    Page **2**

| **Part III** | **Statement of Program Service Accomplishments** | |

Check if Schedule O contains a response or note to any line in this Part III ................................................................. **X**

**1** Briefly describe the organization's mission:

THE HEALTHWELL FOUNDATION (THE FOUNDATION) REDUCES FINANCIAL BARRIERS
TO CARE FOR UNDERINSURED PATIENTS WITH CHRONIC OR LIFE-ALTERING
DISEASES. HEALTHWELL'S VISION IS TO ENSURE THAT NO PATIENT - ADULT OR
CHILD - GOES WITHOUT HEALTH CARE BECAUSE THEY CANNOT AFFORD IT.

**2** Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? ................................................................................................................ ☐ Yes ☒ No
If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? ............. ☐ Yes ☒ No
If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and
revenue, if any, for each program service reported.

**4a** (Code: _____ ) (Expenses $ 174,514,707. including grants of $ 169,322,492. ) (Revenue $ 32,198. )
MULTIPLE MYELOMA - MEDICARE ACCESS - PROVIDED DEDUCTIBLE, COINSURANCE,
COPAYMENT AND PREMIUM ASSISTANCE TO 29,383 ELIGIBLE MEDICARE PATIENTS
RECEIVING TREATMENT FOR MULTIPLE MYELOMA.

**4b** (Code: _____ ) (Expenses $ 58,394,844. including grants of $ 56,929,150. ) (Revenue $ _____ )
RENAL CELL CARCINOMA - MEDICARE ACCESS - PROVIDED DEDUCTIBLE,
COINSURANCE, COPAYMENT AND PREMIUM ASSISTANCE TO 9,547 ELIGIBLE
MEDICARE PATIENTS RECEIVING TREATMENT FOR RENAL CELL CARCINOMA.

**4c** (Code: _____ ) (Expenses $ 56,810,862. including grants of $ 54,622,815. ) (Revenue $ _____ )
HYPERCHOLESTEROLEMIA - MEDICARE ACCESS - PROVIDED DEDUCTIBLE,
COINSURANCE, COPAYMENT AND PREMIUM ASSISTANCE TO 52,454 ELIGIBLE
MEDICARE PATIENTS BEING TREATED FOR HYPERCHOLESTEROLEMIA.

**4d** Other program services (Describe on Schedule O.)
(Expenses $ 426,050,804. including grants of $ 414,141,198. ) (Revenue $ _____ )

**4e** Total program service expenses ▶ 715,771,217.

Form **990** (2023)

332002 12-21-23

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION              192879_1

Form 990 (2023)  HEALTHWELL FOUNDATION                                              20-0413676       Page **3**

**Part IV** | **Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? | | | |
| | *If "Yes," complete Schedule A* | **1** | X | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions | **2** | X | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for | | | |
| | public office? *If "Yes," complete Schedule C, Part I* | **3** | | X |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect | | | |
| | during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | X |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or | | | |
| | similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | X |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to | | | |
| | provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | **6** | | X |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, | | | |
| | the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | X |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete* | | | |
| | *Schedule D, Part III* | **8** | | X |
| **9** | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for | | | |
| | amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? | | | |
| | *If "Yes," complete Schedule D, Part IV* | **9** | | X |
| **10** | Did the organization, directly or through a related organization, hold assets in donor-restricted endowments | | | |
| | or in quasi-endowments? *If "Yes," complete Schedule D, Part V* | **10** | | X |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, | | | |
| | as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* | | | |
| | *Part VI* | **11a** | X | |
| **b** | Did the organization report an amount for investments - other securities in Part X, line 12, that is 5% or more of its total | | | |
| | assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | X |
| **c** | Did the organization report an amount for investments - program related in Part X, line 13, that is 5% or more of its total | | | |
| | assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | X |
| **d** | Did the organization report an amount for other assets in Part X, line 15, that is 5% or more of its total assets reported in | | | |
| | Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | | X |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | X | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses | | | |
| | the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | X | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete* | | | |
| | *Schedule D, Parts XI and XII* | **12a** | | X |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? | | | |
| | *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | X | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | X |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | X |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, | | | |
| | investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 | | | |
| | or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | X |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any | | | |
| | foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | X |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to | | | |
| | or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | X |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, | | | |
| | column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions | **17** | X | |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines | | | |
| | 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | X |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes,"* | | | |
| | *complete Schedule G, Part III* | **19** | | X |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | X |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or | | | |
| | domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | X |

332003  12-21-23                                                                          Form **990** (2023)

4

Form 990 (2023)　　　　　HEALTHWELL FOUNDATION　　　　　　　　　　　　　　20-0413676　　　Page **4**

## Part IV  Checklist of Required Schedules *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | **22** | X | |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | **23** | X | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | **24a** | | X |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | **25a** | | X |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | **25b** | | X |
| **26** | Did the organization report any amount on Part X, line 5 or 22, for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | **26** | X | |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | **27** | | X |
| **28** | Was the organization a party to a business transaction with one of the following parties? (See the Schedule L, Part IV, instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | **28a** | | X |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | **28b** | | X |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | **28c** | | X |
| **29** | Did the organization receive more than $25,000 in noncash contributions? *If "Yes," complete Schedule M* | **29** | | X |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | **30** | | X |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | X |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | **32** | | X |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | **33** | X | |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | **34** | | X |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | X |
| **b** | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | **36** | | X |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | X |
| **38** | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note:** All Form 990 filers are required to complete Schedule O | **38** | X | |

## Part V  Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response or note to any line in this Part V ................................................................. ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | **1a** | 22 | | |
| **b** | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | **1c** | X | |

18261020 150872 192879　　　　　　　　　2023.04030 HEALTHWELL FOUNDATION　　　　　192879_1

Form 990 (2023)  HEALTHWELL FOUNDATION  20-0413676  Page **5**

| Part V | Statements Regarding Other IRS Filings and Tax Compliance *(continued)* | | | | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return ... | **2a** | 234 | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | **2b** | X | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? | | **3a** | | X |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation on Schedule O* | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities or other financial account)? | | **4a** | | X |
| **b** | If "Yes," enter the name of the foreign country | | | | |
| | See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | **5a** | | X |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | X |
| **c** | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | **6a** | | X |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | **7a** | | X |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | **7c** | | X |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | X |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | **7f** | | X |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | |
| **a** | Gross income from members or shareholders | **11a** | | | |
| **b** | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year | **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? | | **13a** | | |
| | **Note:** See the instructions for additional information the organization must report on Schedule O. | | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| **c** | Enter the amount of reserves on hand | **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | | **14a** | | X |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation on Schedule O* | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? | | **15** | | X |
| | If "Yes," see the instructions and file Form 4720, Schedule N. | | | | |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? | | **16** | | X |
| | If "Yes," complete Form 4720, Schedule O. | | | | |
| **17** | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952 or 4953? | | **17** | | |
| | If "Yes," complete Form 6069. | | | | |

18261020 150872 192879                2023.04030 HEALTHWELL FOUNDATION            192879_1

Form 990 (2023)    HEALTHWELL FOUNDATION    20-0413676    Page **6**

| **Part VI** | **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes on Schedule O. See instructions.* |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VI ........................................................ [X]

## Section A. Governing Body and Management

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year .............. **1a** `7` |  |  |  |
|  | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain on Schedule O. |  |  |  |
| **b** | Enter the number of voting members included on line 1a, above, who are independent .............. **1b** `7` |  |  |  |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** |  | X |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, trustees, or key employees to a management company or other person? | **3** |  | X |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** |  | X |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | **5** |  | X |
| **6** | Did the organization have members or stockholders? | **6** |  | X |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | **7a** |  | X |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | **7b** |  | X |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: |  |  |  |
| **a** | The governing body? | **8a** | X |  |
| **b** | Each committee with authority to act on behalf of the governing body? | **8b** | X |  |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses on Schedule O* | **9** |  | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** |  | X |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** |  |  |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | X |  |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. |  |  |  |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | X |  |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | X |  |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | **12c** | X |  |
| **13** | Did the organization have a written whistleblower policy? | **13** | X |  |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | X |  |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? |  |  |  |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | X |  |
| **b** | Other officers or key employees of the organization | **15b** | X |  |
|  | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. |  |  |  |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** |  | X |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** |  |  |

## Section C. Disclosure

| **17** | List the states with which a copy of this Form 990 is required to be filed `AL,AK,AZ,AR,CA,CT,FL,GA,HI,IL,KS,KY` |
|---|---|

**18** Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

[X] Own website    [X] Another's website    [X] Upon request    [ ] Other *(explain on Schedule O)*

**19** Describe on Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records
DAVID L. KNOWLTON - (240) 632-5305
20440 CENTURY BOULEVARD, 250, GERMANTOWN, MD  20874

332006 12-21-23    SEE SCHEDULE O FOR FULL LIST OF STATES    Form **990** (2023)

7

Form 990 (2023)   HEALTHWELL FOUNDATION                      20-0413676   Page **7**

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |

Check if Schedule O contains a response or note to any line in this Part VII ............................ ☐

**Section A.   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) KRISTA ZODET<br>PRESIDENT & CEO | 39.00<br>1.00 | | | X | | | | 369,804. | 0. | 25,413. |
| (2) ALAN KLEIN<br>CHIEF DEVELOPMENT OFFICER | 40.00 | | | X | | | | 348,022. | 0. | 25,703. |
| (3) FRED ASIEDU LARBI<br>CHIEF OPERATIONS OFFICER | 36.00<br>4.00 | | | X | | | | 249,626. | 0. | 59,567. |
| (4) SHELA HALPER<br>CHIEF FOUNDATION PROGRAM OFFICER | 40.00 | | | X | | | | 246,358. | 0. | 37,326. |
| (5) ERICA MATA<br>DIRECTOR, OPERATIONS | 40.00 | | | | | X | | 157,370. | 0. | 60,155. |
| (6) TIMOTHY VAWTER<br>ASSOCIATE DIRECTOR, INFO. TECH. | 40.00 | | | | | X | | 147,825. | 0. | 40,168. |
| (7) CESAR MARTINEZ<br>DIRECTOR, ARCHITECT SOLUTIONS | 40.00 | | | | | X | | 148,133. | 0. | 38,482. |
| (8) VIRGINIA DUNN<br>DIRECTOR, COMM, AND MKTG | 40.00 | | | | | X | | 140,435. | 0. | 41,299. |
| (9) LORI MARTIN<br>DIRECTOR, HUMAN RESOURCES | 40.00 | | | | | X | | 138,781. | 0. | 41,953. |
| (10) COLLIN ALEXANDER, CHIEF<br>FINANCIAL OFFICER THRU 6/23 | 40.00 | | | X | | | | 144,359. | 0. | 28,330. |
| (11) DAVID L. KNOWLTON<br>BOARD CHAIR | 2.00 | X | | X | | | | 48,276. | 0. | 0. |
| (12) STEPHEN M. WEINER, BOARD<br>MEMBER & CHIEF COMPL. OFFICER | 1.00 | X | | X | | | | 32,388. | 0. | 0. |
| (13) RICHA DAHIYA, CHIEF<br>FINANCIAL OFFICER AS OF 11/23 | 40.00 | | | X | | | | 16,039. | 0. | 2,510. |
| (14) NANCY CARTERON, MD, FACR<br>BOARD MEMBER | 1.00 | X | | | | | | 17,816. | 0. | 0. |
| (15) SUZANNE M. MILLER, PHD<br>VICE CHAIR & SECRETARY | 1.00 | X | | X | | | | 12,000. | 0. | 0. |
| (16) JERRI SCARZELLA, BSN<br>VICE CHAIR & TREASURER | 1.00 | X | | X | | | | 12,000. | 0. | 0. |
| (17) CATHLEEN BENNETT, ESQ<br>BOARD MEMBER | 1.00 | X | | | | | | 12,000. | 0. | 0. |

332007  12-21-23                                                                    Form **990** (2023)

18261020 150872 192879                 2023.04030 HEALTHWELL FOUNDATION        192879_1

Form 990 (2023)  HEALTHWELL FOUNDATION  20-0413676  Page **8**

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/ 1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/ 1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (18) DAVID F. ERTEL | 1.00 | | | | | | | | | |
| BOARD MEMBER THRU 8/23 | | X | | | | | | 4,500. | 0. | 0. |
| (19) DON LISS, MD | 1.00 | | | | | | | | | |
| BOARD MEMBER | | X | | | | | | 141. | 0. | 0. |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Subtotal** | | | | | | | | 2,245,873. | 0. | 400,906. |
| **c Total from continuation sheets to Part VII, Section A** | | | | | | | | 0. | 0. | 0. |
| **d Total (add lines 1b and 1c)** | | | | | | | | 2,245,873. | 0. | 400,906. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▸ **16**

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director, trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | **3** | | X |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | **4** | X | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* | **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| PHARMACY DATA MANAGEMENT, INC. 8530 CROSSROADS DR, POLAND, OH 44514 | PHARMACY CLAIMS PROCESSING | 992,557. |
| VONAGE BUSINESS, INC. 101 CRAWFORDS CORNER RD, HOLMDEL, NJ 07733 | TELECOM SERVICES | 437,906. |
| SALESFORCE.ORG, 415 MISSION ST, 3RD FLOOR, SAN FRANCISCO, CA 94105 | GRANTS MANAGEMENT SYSTEM | 273,885. |
| AB DATA 600 AB DATA DRIVE, MILWAUKEE, WI 53217 | DIRECT MAIL | 204,334. |
| EXPERIAN HEALTH 475 ANTON BLVD, COSTA MESA, CA 92626 | VERIFICATION SERVICES FOR APPLICA | 188,642. |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▸ **10**

Form **990** (2023)

332008 12-21-23

18261020 150872 192879                2023.04030 HEALTHWELL FOUNDATION        192879_1

Form 990 (2023)          HEALTHWELL FOUNDATION                                    20-0413676          Page **9**

| Part VIII | Statement of Revenue |

Check if Schedule O contains a response or note to any line in this Part VIII .................................... ☐

|  |  | | | (A)<br>Total revenue | (B)<br>Related or exempt<br>function revenue | (C)<br>Unrelated<br>business revenue | (D)<br>Revenue excluded<br>from tax under<br>sections 512 - 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1 a** Federated campaigns | 1a | | | | | |
| | **b** Membership dues | 1b | | | | | |
| | **c** Fundraising events | 1c | | | | | |
| | **d** Related organizations | 1d | | | | | |
| | **e** Government grants (contributions) | 1e | | | | | |
| | **f** All other contributions, gifts, grants, and<br>similar amounts not included above | 1f | 730901028. | | | | |
| | **g** Noncash contributions included in lines 1a-1f | 1g $ | | | | | |
| | **h** **Total.** Add lines 1a-1f | | | 730901028. | | | |
| **Program Service Revenue** | **2 a** SERVICE FEES | Business Code<br>900099 | | 32,198. | 32,198. | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | | | | | | |
| | **e** | | | | | | |
| | **f** All other program service revenue | | | | | | |
| | **g** **Total.** Add lines 2a-2f | | | 32,198. | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and<br>other similar amounts) | | | 16272559. | | | 16272559. |
| | **4** Income from investment of tax-exempt bond proceeds | | | | | | |
| | **5** Royalties | | | | | | |
| | | | (i) Real | (ii) Personal | | | | |
| | **6 a** Gross rents | 6a | | | | | | |
| | **b** Less: rental expenses | 6b | | | | | | |
| | **c** Rental income or (loss) | 6c | | | | | | |
| | **d** Net rental income or (loss) | | | | | | |
| | | | (i) Securities | (ii) Other | | | | |
| | **7 a** Gross amount from sales of<br>assets other than inventory | 7a | 26,426,554. | | | | | |
| | **b** Less: cost or other basis<br>and sales expenses | 7b | 31,268,121. | | | | | |
| | **c** Gain or (loss) | 7c | -4841567 | | | | | |
| | **d** Net gain or (loss) | | | -4841567. | | | -4841567. |
| | **8 a** Gross income from fundraising events (not<br>including $ _____ of<br>contributions reported on line 1c). See<br>Part IV, line 18 | 8a | | | | | |
| | **b** Less: direct expenses | 8b | | | | | |
| | **c** Net income or (loss) from fundraising events | | | | | | |
| | **9 a** Gross income from gaming activities. See<br>Part IV, line 19 | 9a | | | | | |
| | **b** Less: direct expenses | 9b | | | | | |
| | **c** Net income or (loss) from gaming activities | | | | | | |
| | **10 a** Gross sales of inventory, less returns<br>and allowances | 10a | | | | | |
| | **b** Less: cost of goods sold | 10b | | | | | |
| | **c** Net income or (loss) from sales of inventory | | | | | | |
| **Miscellaneous Revenue** | **11 a** | Business Code | | | | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** All other revenue | | | | | | |
| | **e** **Total.** Add lines 11a-11d | | | | | | |
| | **12** **Total revenue.** See instructions | | | 742364218. | 32,198. | 0. | 11430992. |

332009  12-21-23                                                                          Form **990** (2023)

18261020 150872 192879                          2023.04030 HEALTHWELL FOUNDATION                          192879_1

Form 990 (2023)        HEALTHWELL FOUNDATION                                      20-0413676    Page **10**

**Part IX** | **Statement of Functional Expenses**

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX .................................... ☐

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | | | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 | 695,015,656. | 695,015,656. | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | 1,553,057. | 406,310. | 967,615. | 179,132. |
| **6** Compensation not included above to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages | 13,630,856. | 12,311,270. | 1,025,550. | 294,036. |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 430,423. | 424,061. | 5,124. | 1,238. |
| **9** Other employee benefits | 3,126,405. | 2,736,125. | 316,429. | 73,851. |
| **10** Payroll taxes | 867,839. | 749,899. | 97,719. | 20,221. |
| **11** Fees for services (nonemployees): | | | | |
| **a** Management | | | | |
| **b** Legal | 212,084. | 143,051. | 69,033. | |
| **c** Accounting | 198,553. | 133,924. | 64,629. | |
| **d** Lobbying | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | 423,341. | | | 423,341. |
| **f** Investment management fees | 266,048. | | 266,048. | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A), amount, list line 11g expenses on Sch O.) | 1,974,550. | 1,223,001. | 738,122. | 13,427. |
| **12** Advertising and promotion | 92,967. | 72,549. | 20,418. | |
| **13** Office expenses | 646,192. | 432,577. | 189,860. | 23,755. |
| **14** Information technology | 558,233. | 532,555. | 25,678. | |
| **15** Royalties | | | | |
| **16** Occupancy | 966,190. | 854,332. | 90,357. | 21,501. |
| **17** Travel | 225,385. | 17,715. | 139,978. | 67,692. |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings | 267,694. | 5,663. | 198,059. | 63,972. |
| **20** Interest | | | | |
| **21** Payments to affiliates | | | | |
| **22** Depreciation, depletion, and amortization | 177,244. | 120,537. | 45,918. | 10,789. |
| **23** Insurance | 101,394. | 67,876. | 29,791. | 3,727. |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses on line 24e. If line 24e amount exceeds 10% of line 25, column (A), amount, list line 24e expenses on Schedule O.) | | | | |
| **a** TAXES & LICENSES | 542,425. | 362,204. | 158,137. | 22,084. |
| **b** EMPLOYEE DEVELOPMENT | 184,499. | 150,908. | 31,176. | 2,415. |
| **c** DUES & PUBLICATIONS | 28,359. | 10,910. | 7,153. | 10,296. |
| **d** STATE REGISTRATION FEES | 10,436. | 94. | 2,649. | 7,693. |
| **e** All other expenses | | | | |
| **25** Total functional expenses. Add lines 1 through 24e | 721,499,830. | 715,771,217. | 4,489,443. | 1,239,170. |
| **26** Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

332010  12-21-23                                                                    Form **990** (2023)

18261020 150872 192879                2023.04030 HEALTHWELL FOUNDATION              192879_1

Form 990 (2023)  HEALTHWELL FOUNDATION  20-0413676  Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X .................................... ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash - non-interest-bearing | 55,253,608. | 1 | 67,443,198. |
| | 2 | Savings and temporary cash investments | 11,220,414. | 2 | 126,704,265. |
| | 3 | Pledges and grants receivable, net | 114,682,600. | 3 | 54,753,671. |
| | 4 | Accounts receivable, net | | 4 | 28,522. |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | 3,220. |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) ..... | | 6 | |
| | 7 | Notes and loans receivable, net | | 7 | 55,919. |
| | 8 | Inventories for sale or use | | 8 | |
| | 9 | Prepaid expenses and deferred charges | 491,920. | 9 | 807,955. |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D  **10a** 2,568,991. | | | |
| | b | Less: accumulated depreciation  **10b** 2,051,087. | 593,992. | 10c | 517,904. |
| | 11 | Investments - publicly traded securities | 349,645,641. | 11 | 381,722,305. |
| | 12 | Investments - other securities. See Part IV, line 11 | | 12 | |
| | 13 | Investments - program-related. See Part IV, line 11 | | 13 | |
| | 14 | Intangible assets | | 14 | 1,300. |
| | 15 | Other assets. See Part IV, line 11 | 6,733,802. | 15 | 5,794,512. |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | 538,621,977. | 16 | 637,832,771. |
| **Liabilities** | 17 | Accounts payable and accrued expenses | 18,512,164. | 17 | 68,481,966. |
| | 18 | Grants payable | | 18 | |
| | 19 | Deferred revenue | | 19 | |
| | 20 | Tax-exempt bond liabilities | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D ......... | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 12,367,712. | 25 | 13,074,105. |
| | 26 | **Total liabilities.** Add lines 17 through 25 | 30,879,876. | 26 | 81,556,071. |
| **Net Assets or Fund Balances** | | Organizations that follow FASB ASC 958, check here ☒ and complete lines 27, 28, 32, and 33. | | | |
| | 27 | Net assets without donor restrictions | 6,602,692. | 27 | 37,685,821. |
| | 28 | Net assets with donor restrictions | 501,139,409. | 28 | 518,590,879. |
| | | Organizations that do not follow FASB ASC 958, check here ☐ and complete lines 29 through 33. | | | |
| | 29 | Capital stock or trust principal, or current funds | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building, or equipment fund | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds ......... | | 31 | |
| | 32 | Total net assets or fund balances | 507,742,101. | 32 | 556,276,700. |
| | 33 | Total liabilities and net assets/fund balances | 538,621,977. | 33 | 637,832,771. |

Form **990** (2023)

18261020 150872 192879  2023.04030 HEALTHWELL FOUNDATION  192879_1

Form 990 (2023)    HEALTHWELL FOUNDATION    20-0413676    Page **12**

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XI .................................................... **[X]**

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | **1** | 742,364,218. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | **2** | 721,499,830. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | **3** | 20,864,388. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | **4** | 507,742,101. |
| 5 | Net unrealized gains (losses) on investments | **5** | 27,659,762. |
| 6 | Donated services and use of facilities | **6** | |
| 7 | Investment expenses | **7** | |
| 8 | Prior period adjustments | **8** | |
| 9 | Other changes in net assets or fund balances (explain on Schedule O) | **9** | 10,449. |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | **10** | 556,276,700. |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII .................................................... **[ ]**

| | | Yes | No |
|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: [ ] Cash  [X] Accrual  [ ] Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? .................... **2a** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | |
| | [ ] Separate basis  [ ] Consolidated basis  [ ] Both consolidated and separate basis | | |
| b | Were the organization's financial statements audited by an independent accountant? .................................... **2b** | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | |
| | [ ] Separate basis  [X] Consolidated basis  [ ] Both consolidated and separate basis | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? ...................... **2c** | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain on Schedule O. | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? .................................................................................... **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why on Schedule O and describe any steps taken to undergo such audits ...................... **3b** | | |

Form **990** (2023)

| **SCHEDULE A** (Form 990) | **Public Charity Status and Public Support** | OMB No. 1545-0047 |
|---|---|---|
| | Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust. | **2023** |
| Department of the Treasury Internal Revenue Service | **Attach to Form 990 or Form 990-EZ.** Go to www.irs.gov/Form990 for instructions and the latest information. | **Open to Public Inspection** |

| **Name of the organization** | **Employer identification number** |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I** | **Reason for Public Charity Status.** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **section 170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land-grant college of agriculture (see instructions). Enter the name, city, and state of the college or university: _____

10 ☐ An organization that normally receives (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions, subject to certain exceptions; and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations ......................................................................................... ☐

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1-10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**    332021  12-21-23    **Schedule A (Form 990) 2023**

Schedule A (Form 990) 2023     HEALTHWELL FOUNDATION     20-0413676   Page **2**

| **Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)** |

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 481424153 | 546256983 | 538184808 | 678100099 | 730901028 | 2974867071. |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **4** **Total.** Add lines 1 through 3 | 481424153 | 546256983 | 538184808 | 678100099 | 730901028 | 2974867071. |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 2003190631. |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | 971676440 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4 | 481424153 | 546256983 | 538184808 | 678100099 | 730901028 | 2974867071. |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | 7173067. | 7417028. | 9540057. | 7753813. | 16272559. | 48156524. |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | 3023023595. |
| **12** Gross receipts from related activities, etc. (see instructions) | | | | | **12** | 34,998. |
| **13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** | | | | | | ☐ |

### Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **14** Public support percentage for 2023 (line 6, column (f), divided by line 11, column (f)) | | **14** | 32.14 % |
| **15** Public support percentage from 2022 Schedule A, Part II, line 14 | | **15** | 32.79 % |

**16a** **33 1/3% support test - 2023.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ☐

   **b** **33 1/3% support test - 2022.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ☐

**17a** **10% -facts-and-circumstances test - 2023.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization ☒

   **b** **10% -facts-and-circumstances test - 2022.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ☐

**Schedule A (Form 990) 2023**

332022 12-21-23

18261020 150872 192879      2023.04030 HEALTHWELL FOUNDATION      192879_1

Schedule A (Form 990) 2023  HEALTHWELL FOUNDATION    20-0413676  Page **3**

**Part III** | Support Schedule for Organizations Described in Section 509(a)(2)

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6 Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8 Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| **13 Total support.** (Add lines 9, 10c, 11, and 12.) | | | | | | |

**14 First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ........................................................................................................................................................ ☐

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| **15** Public support percentage for 2023 (line 8, column (f), divided by line 13, column (f)) ................ | **15** | % |
| **16** Public support percentage from 2022 Schedule A, Part III, line 15 ............................................. | **16** | % |

**Section D. Computation of Investment Income Percentage**

| | | |
|---|---|---|
| **17** Investment income percentage for **2023** (line 10c, column (f), divided by line 13, column (f)) ......... | **17** | % |
| **18** Investment income percentage from **2022** Schedule A, Part III, line 17 ................................. | **18** | % |

**19a 33 1/3% support tests - 2023.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization .................................. ☐

**b 33 1/3% support tests - 2022.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization .......................... ☐

**20 Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ........................... ☐

332023  12-21-23  Schedule A (Form 990) 2023

18261020 150872 192879      2023.04030 HEALTHWELL FOUNDATION      192879_1

Schedule A (Form 990) 2023      HEALTHWELL FOUNDATION                     20-0413676   Page **4**

| **Part IV** | **Supporting Organizations** |
|---|---|

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, Part I, complete Sections A and B. If you checked box 12b, Part I, complete Sections A and C. If you checked box 12c, Part I, complete Sections A, D, and E. If you checked box 12d, Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

|  |  | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in* **Part VI** *how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in* **Part VI** *how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in* **Part VI** *when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in* **Part VI** *what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes," and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* **Part VI** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* **Part VI** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* **Part VI,** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* **Part VI.** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (as defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990).* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* **Part VI.** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* **Part VI.** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* **Part VI.** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings.)* | **10b** | | |

332024  12-21-23

Schedule A (Form 990) 2023

18261020 150872 192879                    2023.04030 HEALTHWELL FOUNDATION          192879_1

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **5**

| **Part IV** | **Supporting Organizations** *(continued)* |
|---|---|

|  |  | Yes | No |
|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? |  |  |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** |  |
| **b** | A family member of a person described on line 11a above? | **11b** |  |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to line 11a, 11b, or 11c, provide detail in* **Part VI.** | **11c** |  |

### Section B. Type I Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| **1** | Did the governing body, members of the governing body, officers acting in their official capacity, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's officers, directors, or trustees at all times during the tax year? *If "No," describe in* **Part VI** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove officers, directors, or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** |  |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* **Part VI** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization.* | **2** |  |

### Section C. Type II Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* **Part VI** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** |  |

### Section D. All Type III Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** |  |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* **Part VI** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** |  |
| **3** | By reason of the relationship described on line 2, above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* **Part VI** *the role the organization's supported organizations played in this regard.* | **3** |  |

### Section E. Type III Functionally Integrated Supporting Organizations

| **1** | *Check the box next to the method that the organization used to satisfy the Integral Part Test during the year* **(see instructions).** |  |  |  |
|---|---|---|---|---|
| **a** | ☐ The organization satisfied the Activities Test. *Complete* **line 2** *below.* |  |  |  |
| **b** | ☐ The organization is the parent of each of its supported organizations. *Complete* **line 3** *below.* |  |  |  |
| **c** | ☐ The organization supported a governmental entity. *Describe in* **Part VI** *how you supported a governmental entity (see instructions).* |  |  |  |

|  |  | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** |  |  |  |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* **Part VI identify those supported organizations and explain** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** |  |  |
| **b** | Did the activities described on line 2a, above, constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* **Part VI** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** |  |  |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** |  |  |  |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *If "Yes" or "No" provide details in* **Part VI.** | **3a** |  |  |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in* **Part VI** *the role played by the organization in this regard.* | **3b** |  |  |

332025  12-21-23    **Schedule A (Form 990) 2023**

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **6**

| **Part V** | **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** |
| --- | --- |

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 ( *explain in* **Part VI**). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
| --- | --- | --- | --- |
| **1** Net short-term capital gain | 1 | | |
| **2** Recoveries of prior-year distributions | 2 | | |
| **3** Other gross income (see instructions) | 3 | | |
| **4** Add lines 1 through 3. | 4 | | |
| **5** Depreciation and depletion | 5 | | |
| **6** Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| **7** Other expenses (see instructions) | 7 | | |
| **8** **Adjusted Net Income** (subtract lines 5, 6, and 7 from line 4) | 8 | | |

| **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
| --- | --- | --- | --- |
| **1** Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | | | |
| **a** Average monthly value of securities | 1a | | |
| **b** Average monthly cash balances | 1b | | |
| **c** Fair market value of other non-exempt-use assets | 1c | | |
| **d** **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| **e** **Discount** claimed for blockage or other factors (*explain in detail in* **Part VI**): | | | |
| **2** Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| **3** Subtract line 2 from line 1d. | 3 | | |
| **4** Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| **5** Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| **6** Multiply line 5 by 0.035. | 6 | | |
| **7** Recoveries of prior-year distributions | 7 | | |
| **8** **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| **Section C - Distributable Amount** | | | Current Year |
| --- | --- | --- | --- |
| **1** Adjusted net income for prior year (from Section A, line 8, column A) | 1 | | |
| **2** Enter 0.85 of line 1. | 2 | | |
| **3** Minimum asset amount for prior year (from Section B, line 8, column A) | 3 | | |
| **4** Enter greater of line 2 or line 3. | 4 | | |
| **5** Income tax imposed in prior year | 5 | | |
| **6** **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions). | 6 | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally integrated Type III supporting organization (see instructions).

Schedule A (Form 990) 2023

332026  12-21-23

18261020  150872  192879           2023.04030  HEALTHWELL FOUNDATION           192879_1

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **7**

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations *(continued)* |
|---|---|

**Section D - Distributions**

| | | | Current Year |
|---|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | 1 | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | 2 | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | 3 | |
| 4 | Amounts paid to acquire exempt-use assets | 4 | |
| 5 | Qualified set-aside amounts (prior IRS approval required - *provide details in* **Part VI**) | 5 | |
| 6 | Other distributions (*describe in* **Part VI**). See instructions. | 6 | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | 7 | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (*provide details in* **Part VI**). See instructions. | 8 | |
| 9 | Distributable amount for 2023 from Section C, line 6 | 9 | |
| 10 | Line 8 amount divided by line 9 amount | 10 | |

| Section E - Distribution Allocations (see instructions) | (i) Excess Distributions | (ii) Underdistributions Pre-2023 | (iii) Distributable Amount for 2023 |
|---|---|---|---|
| **1** Distributable amount for 2023 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2023 (reasonable cause required - *explain in* **Part VI**). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2023 | | | |
| **a** From 2018 | | | |
| **b** From 2019 | | | |
| **c** From 2020 | | | |
| **d** From 2021 | | | |
| **e** From 2022 | | | |
| **f** **Total** of lines 3a through 3e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2023 distributable amount | | | |
| **i** Carryover from 2018 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2023 from Section D, line 7:                $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2023 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2023, if any. Subtract lines 3g and 4a from line 2. For result greater than zero, *explain in* **Part VI**. See instructions. | | | |
| **6** Remaining underdistributions for 2023. Subtract lines 3h and 4b from line 1. For result greater than zero, *explain in* **Part VI**. See instructions. | | | |
| **7** **Excess distributions carryover to 2024.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2019 | | | |
| **b** Excess from 2020 | | | |
| **c** Excess from 2021 | | | |
| **d** Excess from 2022 | | | |
| **e** Excess from 2023 | | | |

Schedule A (Form 990) 2023

332027 12-21-23

20

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **8**

**Part VI**  **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.)

PART II, SECTION C, LINE 17A, FACTS AND CIRCUMSTANCES TEST:

THE HEALTHWELL FOUNDATION (THE "FOUNDATION") OFFERS THE FOLLOWING FACTS
AND CIRCUMSTANCES IN SUPPORT OF ITS ONGOING CLASSIFICATION AS A PUBLIC
CHARITY AND NOT A PRIVATE FOUNDATION.

GENERAL BACKGROUND - THE FOUNDATION PROVIDES NEED-BASED FINANCIAL
ASSISTANCE TO UNDERINSURED INDIVIDUALS LIVING WITH CHRONIC AND/OR
LIFE-ALTERING ILLNESSES SUCH AS MULTIPLE SCLEROSIS, CYSTIC FIBROSIS,
MULTIPLE MYELOMA AND MANY OTHER TYPES OF CANCER. THROUGH 2023, THE
FOUNDATION HAS HELPED 932,798 PATIENTS AFFORD THEIR PRESCRIPTION DRUG
COPAYMENTS, PREMIUMS AND OTHER OUT-OF-POCKET HEALTH CARE COSTS.

THE FOUNDATION GRANTS FUNDS TO PATIENTS WHO HAVE PRIVATE OR
GOVERNMENT-SPONSORED INSURANCE BUT WHO ARE STILL UNABLE TO AFFORD THEIR
INSURANCE COPAYMENTS OR PREMIUMS TO OBTAIN COVERAGE FOR THEIR CONDITIONS.
THE FOUNDATION AWARDS GRANTS BASED ON THE OBJECTIVE CONSIDERATION OF
FINANCIAL AND MEDICAL CRITERIA AND THE ADEQUACY OF THE RECIPIENT'S
INSURANCE COVERAGE. GRANTS ARE AWARDED TO RECIPIENTS FOR A 12 MONTH CYCLE.
THE FOUNDATION DOES NOT PLACE RESTRICTIONS ON THE MEDICATIONS WITHIN EACH
DISEASE FUND ITS GRANT RECIPIENTS USE. THE DECISION AS TO WHICH
MEDICATIONS ARE PRESCRIBED IS A MEDICAL JUDGMENT.  FURTHER, THE FOUNDATION
DOES NOT LIMIT THE PROVIDERS OR PHARMACIES ITS GRANT RECIPIENTS MAY USE TO
OBTAIN THEIR MEDICATIONS.

PUBLIC SUPPORT PERCENTAGE - THE FOUNDATION'S CUMULATIVE PUBLIC SUPPORT
PERCENTAGE THROUGH DECEMBER 31, 2023 IS 32.14%, WHICH IS ABOVE THE MINIMUM
AMOUNT AT WHICH FACTS AND CIRCUMSTANCES WILL BE CONSIDERED BY THE SERVICE
IN DETERMINING THE FOUNDATION'S ONGOING QUALIFICATION AS A PUBLICLY

332028  12-21-23                             **Schedule A (Form 990) 2023**

18261020 150872 192879          2023.04030 HEALTHWELL FOUNDATION      192879_1

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION                               20-0413676   Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |

SUPPORTED CHARITY. THE FOUNDATION'S PUBLIC SUPPORT PERCENTAGE HAS

GENERALLY MAINTAINED AN UPWARD TRAJECTORY SINCE 2004, WITH A SMALL

FLUCTUATION DOWN IN 2018; THE FACTS AND CIRCUMSTANCES RELATING TO THE

FOUNDATION'S STRUCTURE AND OPERATIONS PRESENT AN EXCEPTIONALLY STRONG CASE

IN SUPPORT OF ITS ONGOING CLASSIFICATION AS A PUBLIC CHARITY AND NOT AS A

PRIVATE FOUNDATION. THESE FACTS AND CIRCUMSTANCES, WHICH ARE DISCUSSED IN

MORE DETAIL LATER, INCLUDE THE FOLLOWING:

1. THE FOUNDATION IS NOT CONTROLLED BY ITS CONTRIBUTORS AND HAS NO

ENDOWMENT FUND, CHARACTERISTICS WHICH DISTINGUISH IT FROM VIRTUALLY ALL

PRIVATE FOUNDATIONS.

2. THE FOUNDATION'S BOARD REPRESENTS MANY DIVERSE ASPECTS OF THE HEALTH

CARE COMMUNITY, DEMONSTRATING THE FOUNDATION'S COMMITMENT TO THE BROAD

PUBLIC BENEFIT AND THE FOUNDATION'S COMMITMENT TO OPERATE AN OUTSTANDING

ORGANIZATION THAT WILL ATTRACT FUTURE PUBLIC SUPPORT.

3. THE FOUNDATION'S ACTIVITIES BROADLY BENEFIT THE GENERAL PUBLIC AS WELL

AS OTHER CHARITABLE ORGANIZATIONS THAT ARE ATTEMPTING TO HELP PATIENTS

COPE WITH A VARIETY OF ILLNESSES AND CONDITIONS.

FACTS AND CIRCUMSTANCES SUPPORTING QUALIFICATION AS A PUBLICLY SUPPORTED

ORGANIZATION

1. ATTRACTION OF PUBLIC SUPPORT.

THE FOUNDATION'S POLICY IS TO ACCEPT CONTRIBUTIONS FROM DONORS AND TO

332028  12-21-23                                                      **Schedule A (Form 990) 2023**

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION           192879_1

Schedule A (Form 990) 2023       HEALTHWELL FOUNDATION                    20-0413676   Page **8**

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |

DISBURSE THE CONTRIBUTIONS IN THE FORM OF GRANTS AS SOON AS PRACTICABLE.

THE FOUNDATION DOES NOT HAVE AN ENDOWMENT FUND, AND ITS ABILITY TO FULFILL

ITS FUTURE MISSION IS ENTIRELY DEPENDENT ON ITS ABILITY TO ATTRACT FUTURE

SUPPORT FROM DONORS ON A CONTINUOUS BASIS. NONE OF THE FOUNDATION'S

HISTORICAL SUBSTANTIAL CONTRIBUTORS HAVE PLEDGED OR OTHERWISE COMMITTED TO

CONTINUE TO SUPPORT THE FOUNDATION IN FUTURE YEARS. THEREFORE, THE

FOUNDATION MUST CONTINUALLY SEEK NEW DONORS TO SUSTAIN ITS FUNDS, AND IT

HAS DONE SO.


SPECIFICALLY:


THE FOUNDATION EMPLOYS 234 PERSONS WHO, IN ADDITION TO THEIR PRIMARY

TASKS, MAY ALSO WORK ON FUNDRAISING PROJECTS AS NEEDED.


THE FOUNDATION'S CORPORATE CUMULATIVE DONOR BASE HAS INCREASED EACH YEAR

FROM ONE CORPORATE DONOR IN 2004 TO 71 TOTAL CORPORATE DONORS IN ITS

HISTORY.


THE FOUNDATION'S CHIEF DEVELOPMENT OFFICER WORKS WITH THE PRESIDENT/CEO

AND BOARD TO IDENTIFY AND PURSUE NEW CORPORATE FUNDRAISING OPPORTUNITIES.


THE FOUNDATION'S CHIEF DEVELOPMENT OFFICER IDENTIFIES AND SECURES DONORS

FOR THE FOUNDATION'S BROAD-BASED SPECIAL INITIATIVES, INCLUDING ITS

CANCER-RELATED BEHAVIORAL HEALTH FUND AND EMERGENCY / MEDICAL WORKERS

BEHAVIORAL HEALTH FUND.


THE FOUNDATION'S SENIOR FOUNDATION PROGRAM OFFICER ALSO ENGAGES A LARGE

Schedule A (Form 990) 2023   HEALTHWELL FOUNDATION   20-0413676   Page **8**

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.)

NETWORK OF DISEASE-ALIGNED NON-PROFITS TO PROMOTE THE FOUNDATION PROGRAMS

AND SPECIFIC DISEASE AREA FUNDS TO THEIR NETWORKS.

THE FOUNDATION REGULARLY SOLICITS SUPPORT FROM PRIVATE INDIVIDUALS, WHICH

HAS RESULTED IN DONATIONS FROM MORE THAN 80,200 INDIVIDUAL DONORS.

2. REPRESENTATIVE GOVERNING BODY.

THE FOUNDATION'S BOARD CONSISTS ENTIRELY OF NATIONALLY RECOGNIZED HEALTH

CARE EXPERTS WITH DEEP EXPERIENCE IN THE FIELDS OF HEALTH CARE

ADMINISTRATION, CLINICAL PRACTICE AND RESEARCH, DIRECT PATIENT CARE,

PATIENT ADVOCACY AND HEALTH LAW. THE COMPOSITION OF THE BOARD EXEMPLIFIES

THE FOUNDATION'S COMMITMENT TO REPRESENT THE BROAD INTERESTS OF THE

GENERAL PUBLIC AND TO OPERATE IN A MANNER THAT WILL ATTRACT ATTENTION -

AND SUPPORT - FROM A BROAD RANGE OF POTENTIAL DONORS.

GIVEN THEIR DIVERSE EXPERTISE, THE FOUNDATION'S BOARD MEMBERS BRING

FORWARD A VARIETY OF IMPORTANT ISSUES TO ENCOURAGE DISCUSSION ABOUT HOW

THE FOUNDATION'S PROGRAMS AND SERVICES WILL DIRECTLY IMPACT THE GENERAL

PUBLIC. THEIR WIDE-RANGING OPINIONS HELP TO EXPAND THE FOUNDATION'S

VIEWPOINT AND RESULT IN AN ORGANIZATION THAT CAN RESPOND SUCCESSFULLY TO

IMPORTANT CHANGES IN THE HEALTH CARE ENVIRONMENT.

SIGNIFICANTLY, NONE OF THE FOUNDATION'S BOARD MEMBERS ARE AFFILIATED WITH

ANY CONTRIBUTOR TO THE FOUNDATION AND IT IS THE FOUNDATION'S STRICT POLICY

THAT THERE NOT BE SUCH AFFILIATIONS.  MOREOVER, NO CONTRIBUTOR HAS THE

POWER TO APPOINT DIRECTORS TO THE FOUNDATION'S BOARD. IN THIS REGARD, THE

18261020 150872 192879            2023.04030 HEALTHWELL FOUNDATION            192879_1

Schedule A (Form 990) 2023     **HEALTHWELL FOUNDATION**     20-0413676    Page **8**

**Part VI**   **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.)

FOUNDATION DIFFERS MARKEDLY FROM A PRIVATE FOUNDATION, WHERE THE GOVERNING

BODY IS TYPICALLY COMPOSED OF SUBSTANTIAL CONTRIBUTORS AND/OR MEMBERS

CHOSEN BY SUBSTANTIAL CONTRIBUTORS.


3. AVAILABILITY OF PUBLIC FACILITIES OR SERVICES; PUBLIC PARTICIPATION IN

PROGRAMS OR POLICIES.


THE FOUNDATION PUTS FORTH SIGNIFICANT EFFORTS TO MAKE THE AVAILABILITY OF

ITS PROGRAMS AND SERVICES KNOWN TO THE GENERAL PUBLIC THROUGH AVENUES SUCH

AS ITS WEBSITE (WWW.HEALTHWELLFOUNDATION.ORG), WHERE PATIENTS, PROVIDERS,

PHARMACIES AND ADVOCATES CAN OBTAIN INFORMATION ON THE FOUNDATION'S

PROGRAM, APPLY ONLINE AND, THROUGH INTERACTIVE PORTALS, MANAGE A PATIENT'S

PORTFOLIO OF GRANTS (PROVIDERS AND PHARMACIES) OR MONITOR THEIR OWN GRANT

(PATIENTS). THESE AVENUES ARE UPDATED CONTINUOUSLY AND MONITORED CLOSELY

THROUGHOUT THE YEAR.


THE FOUNDATION ENGAGES IN A WIDE RANGE OF PROMOTIONAL OUTREACH ACTIVITIES,

INCLUDING MEDIA RELATIONS AND BI-MONTHLY REAL WORLD HEALTH CARE BLOG

ACTIVITIES (HEALTHWELLFOUNDATION.ORG/REALWORLDHEALTHCARE) IN ADDITION TO

TARGETED SOCIAL MEDIA CAMPAIGNS TO EDUCATE THE PUBLIC, PROVIDERS,

PHARMACIES AND OTHER HEALTH-RELATED ORGANIZATIONS ABOUT ITS WORK. NEWS

ABOUT THE FOUNDATION'S PROGRAMS REGULARLY APPEAR IN LOCAL AND NATIONAL

PUBLICATIONS, INCLUDING MEDICAL JOURNALS, NEWSPAPERS, MAGAZINES, BLOGS AND

HEALTH CARE WEBSITES.


IN 2023, REPRESENTATIVES OF THE FOUNDATION WERE ABLE TO RESUME FULL

PARTICIPATION AT NATIONAL AND LOCAL CONFERENCES INCLUDING THOSE OF SUCH

Schedule A (Form 990) 2023          HEALTHWELL FOUNDATION                    20-0413676    Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |
|---|---|

ENTITIES AS ONCOLOGY NURSING SOCIETY, THE LIVER MEETING, AMERICAN SOCIETY

OF CLINICAL ONCOLOGY, ASEMBIA SPECIALTY PHARMACY SUMMIT, HEALTHCARE

ADVOCATE SUMMIT, AND AMERICAN SOCIETY OF HEMATOLOGY.


ADDITIONALLY, WHEN THE FOUNDATION ESTABLISHES A NEW FUND WITH RESPECT TO A

PARTICULAR DISEASE OR CONDITION, THE FOUNDATION:


- IDENTIFIES KEY NATIONAL PATIENT SUPPORT AND HEALTH CARE ORGANIZATIONS

THAT ARE ABLE TO REACH OUT TO PATIENTS IN THE NEW FUND AREA.


- IDENTIFIES APPROPRIATE CONTACTS IN EACH ORGANIZATION THAT FOCUS ON

PATIENT ADVOCACY AND/OR REIMBURSEMENT ISSUES.


- INVITES THESE ORGANIZATIONS TO EDUCATE PATIENTS, PROVIDERS, ADVOCATES

AND THEIR BROADER NETWORKS ABOUT THE FOUNDATION'S PROGRAMS BY POSTING A

LINK TO WWW.HEALTHWELLFOUNDATION.ORG ON THEIR WEBSITES, PROMOTING VIA

SOCIAL MEDIA AND/OR INCLUDING INFORMATION ABOUT THE FOUNDATION'S SERVICES

IN THEIR MARKETING AND EDUCATIONAL MATERIALS AS WELL AS THEIR WEBINARS AND

CONFERENCES.


- ISSUES A PRESS RELEASE TO ANNOUNCE A NEW FUND TO THE MEDIA, PATIENT

ADVOCACY GROUPS AND THE BROADER HEALTH CARE COMMUNITY.


- REACHES OUT TO PROSPECTIVE DONORS TO SOLICIT ADDITIONAL SUPPORT FOR THE

DISEASE AREA.


- PROMOTES THE NEW FUND IN ITS NEWSLETTER, "THE PULSE," WHICH REACHES

Schedule A (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **8**

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |
|---|---|

APPROXIMATELY 156,000 INDIVIDUALS FOUR TIMES A YEAR, AND THROUGH SOCIAL

MEDIA.


PART II, SECTION C, LINE 17A, FACTS AND CIRCUMSTANCES TEST:

CONCLUSION


IN SUMMARY, THE HEALTHWELL FOUNDATION HAS THE CHARACTERISTICS OF A

"PUBLICLY SUPPORTED" ORGANIZATION, BASED ON THE FACTS AND CIRCUMSTANCES

TEST DESCRIBED IN SECTION 1.170A-9(E)(3) OF THE TREASURY REGULATIONS.

SPECIFICALLY, A SMALL NUMBER OF DONORS DO NOT CONTROL HEALTHWELL;

RATHER HEALTHWELL IS A GROWING INSTITUTION THAT BEARS MANY OF THE

INDICIA OF A "PUBLICLY SUPPORTED" ORGANIZATION, INCLUDING PUBLIC

SUPPORT FROM A WIDE CROSS-SECTION OF DONORS WITH A REPRESENTATIVE

GOVERNING BODY. MOREOVER, HEALTHWELL IS CONTINUING TO SEEK NEW SOURCES

OF SUPPORT FROM THE GENERAL PUBLIC AS WELL AS OTHER ORGANIZATIONS.

ACCORDINGLY, THE FOUNDATION QUALIFIES AS A "PUBLICLY SUPPORTED"

ORGANIZATION DESCRIBED IN SECTION 170(B)(1)(A)(VI).

332028  12-21-23    Schedule A (Form 990) 2023

18261020 150872 192879          2023.04030 HEALTHWELL FOUNDATION          192879_1

| **Schedule B**<br>**(Form 990)**<br><br>Department of the Treasury<br>Internal Revenue Service | **Schedule of Contributors**<br><br>**Attach to Form 990, 990-EZ, or 990-PF.**<br>**Go to www.irs.gov/Form990 for the latest information.** | OMB No. 1545-0047<br><br>**2023** |

| Name of the organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Organization type** (check one):

**Filers of:**                                **Section:**

Form 990 or 990-EZ          [X]  501(c)(  3  ) (enter number) organization

                                          [ ]  4947(a)(1) nonexempt charitable trust **not** treated as a private foundation

                                          [ ]  527 political organization

Form 990-PF                       [ ]  501(c)(3) exempt private foundation

                                          [ ]  4947(a)(1) nonexempt charitable trust treated as a private foundation

                                          [ ]  501(c)(3) taxable private foundation

Check if your organization is covered by the **General Rule** or a **Special Rule.**

**Note:** Only a section 501(c)(7), (8), or (10) organization can check boxes for both the General Rule and a Special Rule. See instructions.

**General Rule**

[X]  For an organization filing Form 990, 990-EZ, or 990-PF that received, during the year, contributions totaling $5,000 or more (in money or property) from any one contributor. Complete Parts I and II. See instructions for determining a contributor's total contributions.

**Special Rules**

[ ]  For an organization described in section 501(c)(3) filing Form 990 or 990-EZ that met the 33 1/3% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), that checked Schedule A (Form 990), Part II, line 13, 16a, or 16b, and that received from any one contributor, during the year, total contributions of the greater of **(1)** $5,000; or **(2)** 2% of the amount on (i) Form 990, Part VIII, line 1h; or (ii) Form 990-EZ, line 1. Complete Parts I and II.

[ ]  For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, total contributions of more than $1,000 *exclusively* for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. Complete Parts I (entering "N/A" in column (b) instead of the contributor name and address), II, and III.

[ ]  For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, contributions *exclusively* for religious, charitable, etc., purposes, but no such contributions totaled more than $1,000. If this box is checked, enter here the total contributions that were received during the year for an *exclusively* religious, charitable, etc., purpose. Don't complete any of the parts unless the **General Rule** applies to this organization because it received *nonexclusively* religious, charitable, etc., contributions totaling $5,000 or more during the year  ................................................  $ _____

**Caution:** An organization that isn't covered by the General Rule and/or the Special Rules doesn't file Schedule B (Form 990), but it **must** answer "No" on Part IV, line 2, of its Form 990; or check the box on line H of its Form 990-EZ or on its Form 990-PF, Part I, line 2, to certify that it doesn't meet the filing requirements of Schedule B (Form 990).

**For Paperwork Reduction Act Notice, see the instructions for Form 990, 990-EZ, or 990-PF.**                  Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                                                              Page **2**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**  **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 1 | | $ 264,000,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 2 | | $ 82,920,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 3 | | $ 55,000,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 4 | | $ 54,626,251. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 5 | | $ 46,445,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 6 | | $ 40,000,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |

323452  12-26-23                                                                              Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                               Page **2**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**  **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 7 | | $ 39,600,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 8 | | $ 30,000,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 9 | | $ 23,672,515. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 10 | | $ 16,100,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 11 | | $ 15,500,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 12 | | $ 12,013,671. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |

323452  12-26-23                                                           **Schedule B (Form 990) (2023)**

18261020 150872 192879                 2023.04030 HEALTHWELL FOUNDATION        192879_1

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**   **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 13 | | $ 10,300,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 14 | | $ 8,000,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 15 | | $ 7,000,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 16 | | $ 5,150,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 17 | | $ 4,000,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 18 | | $ 3,376,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |

Schedule B (Form 990) (2023)                                                                         Page **2**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**    **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 19 | | $ 2,500,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 20 | | $ 2,000,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 21 | | $ 2,000,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 22 | | $ 1,850,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 23 | | $ 1,000,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 24 | | $ 750,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |

323452 12-26-23                                                                   Schedule B (Form 990) (2023)

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION              192879_1

Schedule B (Form 990) (2023)                                                                 Page **2**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**  **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 25 | | $ 300,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 26 | | $ 200,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| ___ | | $ _____ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| ___ | | $ _____ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| ___ | | $ _____ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| ___ | | $ _____ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |

323452  12-26-23                                                                 Schedule B (Form 990) (2023)

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION              192879_1

Page **3**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part II** **Noncash Property** (see instructions). Use duplicate copies of Part II if additional space is needed.

| (a) No. from Part I | (b) Description of noncash property given | (c) FMV (or estimate) (See instructions.) | (d) Date received |
|---|---|---|---|
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |

323453  12-26-23                                                                    Schedule B (Form 990) (2023)

34

Schedule B (Form 990) (2023)    Page **4**

| Name of organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part III** Exclusively religious, charitable, etc., contributions to organizations described in section 501(c)(7), (8), or (10) that total more than $1,000 for the year from any one contributor. Complete columns **(a)** through **(e)** and the following line entry. For organizations completing Part III, enter the total of exclusively religious, charitable, etc., contributions of **$1,000 or less** for the year. (Enter this info. once.) ▶ $_____

Use duplicate copies of Part III if additional space is needed.

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| _____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| _____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| _____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| _____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

323454  12-26-23    Schedule B (Form 990) (2023)

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION              192879_1

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

**Complete if the organization answered "Yes" on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
Attach to Form 990.
Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public
Inspection**

**Name of the organization**

HEALTHWELL FOUNDATION

**Employer identification number**

20-0413676

| Part I | Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts. Complete if the organization answered "Yes" on Form 990, Part IV, line 6. |
| --- | --- |

|   |   | (a) Donor advised funds | (b) Funds and other accounts |
| --- | --- | --- | --- |
| 1 | Total number at end of year ................................. |   |   |
| 2 | Aggregate value of contributions to (during year) ........... |   |   |
| 3 | Aggregate value of grants from (during year) ............... |   |   |
| 4 | Aggregate value at end of year ............................. |   |   |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds
are the organization's property, subject to the organization's exclusive legal control? ........................ ☐ **Yes** ☐ **No**

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only
for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring
impermissible private benefit? ............................................................................. ☐ **Yes** ☐ **No**

| Part II | Conservation Easements. Complete if the organization answered "Yes" on Form 990, Part IV, line 7. |
| --- | --- |

1  Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (for example, recreation or education)   ☐ Preservation of a historically important land area
☐ Protection of natural habitat                                                ☐ Preservation of a certified historic structure
☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last
day of the tax year.

|   |   |   | Held at the End of the Tax Year |
| --- | --- | --- | --- |
| a | Total number of conservation easements ................................................ | 2a |   |
| b | Total acreage restricted by conservation easements ..................................... | 2b |   |
| c | Number of conservation easements on a certified historic structure included on line 2a ........... | 2c |   |
| d | Number of conservation easements included on line 2c acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d |   |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax
year

4  Number of states where property subject to conservation easement is located

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? ......................................... ☐ **Yes** ☐ **No**

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year

8  Does each conservation easement reported on line 2d above satisfy the requirements of section 170(h)(4)(B)(i)
and section 170(h)(4)(B)(ii)? ............................................................................. ☐ **Yes** ☐ **No**

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement and
balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the
organization's accounting for conservation easements.

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets. Complete if the organization answered "Yes" on Form 990, Part IV, line 8. |
| --- | --- |

1a  If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works
of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public
service, provide in Part XIII the text of the footnote to its financial statements that describes these items.

 b  If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of
art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service,
provide the following amounts relating to these items.

 (i)  Revenue included on Form 990, Part VIII, line 1 ............................................... $ _____
 (ii) Assets included in Form 990, Part X .......................................................... $ _____

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide
the following amounts required to be reported under FASB ASC 958 relating to these items:

 a  Revenue included on Form 990, Part VIII, line 1 ................................................... $ _____
 b  Assets included in Form 990, Part X ................................................................ $ _____

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.**                                **Schedule D (Form 990) 2023**

332051 09-28-23

18261020 150872 192879                    2023.04030 HEALTHWELL FOUNDATION          192879_1

Schedule D (Form 990) 2023    HEALTHWELL FOUNDATION    20-0413676    Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that make significant use of its
collection items (check all that apply).

**a** ☐ Public exhibition     **d** ☐ Loan or exchange program

**b** ☐ Scholarly research     **e** ☐ Other _____

**c** ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets
to be sold to raise funds rather than to be maintained as part of the organization's collection? ................... ☐ **Yes** ☐ **No**

| Part IV | Escrow and Custodial Arrangements. Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21. |
|---|---|

**1a** Is the organization an agent, trustee, custodian, or other intermediary for contributions or other assets not included
on Form 990, Part X? ................... ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

|  |  | Amount |
|---|---|---|
| **c** Beginning balance | **1c** |  |
| **d** Additions during the year | **1d** |  |
| **e** Distributions during the year | **1e** |  |
| **f** Ending balance | **1f** |  |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? .......... ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII ................... ☐

| Part V | Endowment Funds. Complete if the organization answered "Yes" on Form 990, Part IV, line 10. |
|---|---|

|  | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance |  |  |  |  |  |
| **b** Contributions |  |  |  |  |  |
| **c** Net investment earnings, gains, and losses |  |  |  |  |  |
| **d** Grants or scholarships |  |  |  |  |  |
| **e** Other expenditures for facilities and programs |  |  |  |  |  |
| **f** Administrative expenses |  |  |  |  |  |
| **g** End of year balance |  |  |  |  |  |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment _____ %

**b** Permanent endowment _____ %

**c** Term endowment _____ %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the
organization by:

|  | Yes | No |
|---|---|---|
| **(i)** Unrelated organizations? | **3a(i)** |  |
| **(ii)** Related organizations? | **3a(ii)** |  |
| **b** If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? | **3b** |  |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| Part VI | Land, Buildings, and Equipment. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land |  |  |  |  |
| **b** Buildings |  |  |  |  |
| **c** Leasehold improvements |  | 121,560. | 74,594. | 46,966. |
| **d** Equipment |  | 574,896. | 497,711. | 77,185. |
| **e** Other |  | 1,872,535. | 1,478,782. | 393,753. |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, line 10c, column (B))* ................... |  |  |  | 517,904. |

Schedule D (Form 990) 2023

Schedule D (Form 990) 2023  HEALTHWELL FOUNDATION                          20-0413676   Page **3**

## Part VII  Investments - Other Securities

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely held equity interests | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Col. (b) must equal Form 990, Part X, line 12, col. (B)) | | |

## Part VIII  Investments - Program Related.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Col. (b) must equal Form 990, Part X, line 13, col. (B)) | | |

## Part IX  Other Assets

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, line 15, col. (B)) | |

## Part X  Other Liabilities

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** | (a) Description of liability | (b) Book value |
|---|---|---|
| (1) | Federal income taxes | |
| (2) | COPAYMENTS AND PREMIUM ASSISTANCE | |
| (3) | PAYABLE | 7,093,237. |
| (4) | LEASE LIABILITY | 5,980,868. |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Column (b) must equal Form 990, Part X, line 25, col. (B)) | | 13,074,105. |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FASB ASC 740. Check here if the text of the footnote has been provided in Part XIII ....  [X]

Schedule D (Form 990) 2023

332053  09-28-23

18261020 150872 192879                    2023.04030 HEALTHWELL FOUNDATION              192879_1

Schedule D (Form 990) 2023    HEALTHWELL FOUNDATION                    20-0413676    Page **4**

| Part XI | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | |
|---|---|---|---|---:|
| **1** | Total revenue, gains, and other support per audited financial statements | | **1** | 769,757,932. |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| **a** | Net unrealized gains (losses) on investments | **2a** 27,659,762. | | |
| **b** | Donated services and use of facilities | **2b** | | |
| **c** | Recoveries of prior year grants | **2c** | | |
| **d** | Other (Describe in Part XIII.) | **2d** | | |
| **e** | Add lines **2a** through **2d** | | **2e** | 27,659,762. |
| **3** | Subtract line **2e** from line **1** | | **3** | 742,098,170. |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** 266,048. | | |
| **b** | Other (Describe in Part XIII.) | **4b** | | |
| **c** | Add lines **4a** and **4b** | | **4c** | 266,048. |
| **5** | Total revenue. Add lines **3** and **4c**. *(This must equal Form 990, Part I, line 12.)* | | **5** | 742,364,218. |

| Part XII | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | |
|---|---|---|---|---:|
| **1** | Total expenses and losses per audited financial statements | | **1** | 721,223,333. |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| **a** | Donated services and use of facilities | **2a** | | |
| **b** | Prior year adjustments | **2b** | | |
| **c** | Other losses | **2c** | | |
| **d** | Other (Describe in Part XIII.) | **2d** | | |
| **e** | Add lines **2a** through **2d** | | **2e** | 0. |
| **3** | Subtract line **2e** from line **1** | | **3** | 721,223,333. |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** 266,048. | | |
| **b** | Other (Describe in Part XIII.) | **4b** 10,449. | | |
| **c** | Add lines **4a** and **4b** | | **4c** | 276,497. |
| **5** | Total expenses. Add lines **3** and **4c**. *(This must equal Form 990, Part I, line 18.)* | | **5** | 721,499,830. |

| Part XIII | Supplemental Information |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 2; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

PART X, LINE 2:

THE FOUNDATION EVALUATED ITS UNCERTAINTY IN INCOME TAXES FOR THE YEAR

ENDED DECEMBER 31, 2023, AND DETERMINED THAT THERE WERE NO MATTERS THAT

WOULD REQUIRE RECOGNITION IN THE CONSOLIDATED FINANCIAL STATEMENTS OR THAT

MAY HAVE ANY EFFECT ON ITS TAX-EXEMPT STATUS.


PART XII, LINE 4B - OTHER ADJUSTMENTS:

RETURNED GRANTS                                                    10,449.

**SCHEDULE G**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" on Form 990, Part IV, line 17, 18, or 19, or if the
organization entered more than $15,000 on Form 990-EZ, line 6a.

**Attach to Form 990 or Form 990-EZ.**

Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2023**

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

**Part I**   **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17. Form 990-EZ filers are not
required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

**a** [X] Mail solicitations

**b** [X] Internet and email solicitations

**c** [ ] Phone solicitations

**d** [ ] In-person solicitations

**e** [ ] Solicitation of non-government grants

**f** [ ] Solicitation of government grants

**g** [ ] Special fundraising events

**2 a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees, or
key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   [X] **Yes**   [ ] **No**

**b** If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be
compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| A.B. DATA GROUP - 600 A B DATA DRIVE, MILWAUKEE, WI | DIRECT MAIL CAMPAIGN | | X | 1,503,383. | 423,341. | 1,080,042. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | 1,503,383. | 423,341. | 1,080,042. |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration
or licensing.

AL,AK,AZ,AR,CA,CO,CT,DE,FL,GA,HI,ID,IL,IN,IA,KS,KY,LA,ME,MD,MA,MI,MN,MS,MO
MT,NE,NV,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,RI,SC,SD,TN,TX,UT,VT,VA,WA,WV,WI,WY
DC

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.

**Schedule G (Form 990) 2023**

SEE PART IV FOR CONTINUATIONS

LHA   332081 09-13-23

18261020 150872 192879          2023.04030 HEALTHWELL FOUNDATION          192879_1

Schedule G (Form 990) 2023        HEALTHWELL FOUNDATION                    20-0413676   Page **2**

| **Part II** | **Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000. |
|---|---|

|  |  | **(a)** Event #1 | **(b)** Event #2 | **(c)** Other events | **(d)** Total events (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|
|  |  | (event type) | (event type) | (total number) |  |
| Revenue | **1** Gross receipts .................... |  |  |  |  |
|  | **2** Less: Contributions |  |  |  |  |
|  | **3** Gross income (line 1 minus line 2) ........... |  |  |  |  |
| Direct Expenses | **4** Cash prizes ..................... |  |  |  |  |
|  | **5** Noncash prizes .................. |  |  |  |  |
|  | **6** Rent/facility costs .............. |  |  |  |  |
|  | **7** Food and beverages ............. |  |  |  |  |
|  | **8** Entertainment ................... |  |  |  |  |
|  | **9** Other direct expenses .......... |  |  |  |  |
|  | **10** Direct expense summary. Add lines 4 through 9 in column (d) ................................................... | | | | |
|  | **11** Net income summary. Subtract line 10 from line 3, column (d) ................................................ | | | | |

| **Part III** | **Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a. |
|---|---|

|  |  | **(a)** Bingo | **(b)** Pull tabs/instant bingo/progressive bingo | **(c)** Other gaming | **(d)** Total gaming (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|
| Revenue | **1** Gross revenue ................... |  |  |  |  |
| Direct Expenses | **2** Cash prizes ..................... |  |  |  |  |
|  | **3** Noncash prizes .................. |  |  |  |  |
|  | **4** Rent/facility costs .............. |  |  |  |  |
|  | **5** Other direct expenses .......... |  |  |  |  |
|  | **6** Volunteer labor ................. | ☐ Yes_____ %  ☐ No | ☐ Yes_____ %  ☐ No | ☐ Yes_____ %  ☐ No |  |
|  | **7** Direct expense summary. Add lines 2 through 5 in column (d) ................................................... | | | | |
|  | **8** Net gaming income summary. Subtract line 7 from line 1, column (d) ........................................ | | | | |

**9** Enter the state(s) in which the organization conducts gaming activities: _____

**a** Is the organization licensed to conduct gaming activities in each of these states? ...........................................    ☐ **Yes**  ☐ **No**

**b** If "No," explain: _____

_____

**10a** Were any of the organization's gaming licenses revoked, suspended, or terminated during the tax year? .........................    ☐ **Yes**  ☐ **No**

**b** If "Yes," explain: _____

_____

332082  09-13-23                                                                                 **Schedule G (Form 990) 2023**

18261020  150872  192879              2023.04030  HEALTHWELL FOUNDATION              192879_1

Schedule G (Form 990) 2023     HEALTHWELL FOUNDATION                      20-0413676     Page **3**

---

**11**  Does the organization conduct gaming activities with nonmembers? .................................................................  ☐ **Yes**  ☐ **No**

**12**  Is the organization a grantor, beneficiary or trustee of a trust, or a member of a partnership or other entity formed
to administer charitable gaming? ........................................................................................................  ☐ **Yes**  ☐ **No**

**13**  Indicate the percentage of gaming activity conducted in:

**a**  The organization's facility .............................................................................................................  | **13a** | % |

**b**  An outside facility .......................................................................................................................  | **13b** | % |

**14**  Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name  _____

Address  _____

**15a**  Does the organization have a contract with a third party from whom the organization receives gaming revenue? .............  ☐ **Yes**  ☐ **No**

**b**  If "Yes," enter the amount of gaming revenue received by the organization        $ _____  and the amount
of gaming revenue retained by the third party   $ _____

**c**  If "Yes," enter name and address of the third party:

Name  _____

Address  _____

**16**  Gaming manager information:

Name  _____

Gaming manager compensation   $ _____

Description of services provided  _____

_____

☐ Director/officer        ☐ Employee        ☐ Independent contractor

**17**  Mandatory distributions:

**a**  Is the organization required under state law to make charitable distributions from the gaming proceeds to
retain the state gaming license? ......................................................................................................  ☐ **Yes**  ☐ **No**

**b**  Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the
organization's own exempt activities during the tax year   $ _____

**Part IV**   **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b,
15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions.

SCHEDULE G, PART I, LINE 2B, LIST OF TEN HIGHEST PAID FUNDRAISERS:

_____

(I) NAME OF FUNDRAISER: A.B. DATA GROUP

(I) ADDRESS OF FUNDRAISER: 600 A B DATA DRIVE, MILWAUKEE, WI  53217

_____

PART I, LINE 2B, COLUMN (V):

HEALTHWELL IS RESPONSIBLE FOR ALL  COSTS OF PAPER, BINDERY, PRINTING,

LIST RENTALS, LIST PURCHASES, LETTERSHOP, COMPUTER SERVICES, POSTAGE

COSTS.

332083 09-13-23                                                    Schedule G (Form 990) 2023

18261020 150872 192879              2023.04030 HEALTHWELL FOUNDATION              192879_1

Schedule G (Form 990)   HEALTHWELL FOUNDATION   20-0413676   Page **4**

**Part IV** | **Supplemental Information** *(continued)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Schedule G (Form 990)**

332084  04-01-23

18261020 150872 192879        2023.04030 HEALTHWELL FOUNDATION        192879_1

**SCHEDULE I**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Grants and Other Assistance to Organizations,**
**Governments, and Individuals in the United States**
Complete if the organization answered "Yes" on Form 990, Part IV, line 21 or 22.
**Attach to Form 990.**
**Go to www.irs.gov/Form990 for the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public Inspection**

Name of the organization

HEALTHWELL FOUNDATION

Employer identification number
20-0413676

| Part I | General Information on Grants and Assistance |
|---|---|

**1** Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? .................................................................................................... [X] **Yes**  [ ] **No**

**2** Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

| Part II | Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed. |
|---|---|

| **1 (a)** Name and address of organization or government | **(b)** EIN | **(c)** IRC section (if applicable) | **(d)** Amount of cash grant | **(e)** Amount of noncash assistance | **(f)** Method of valuation (book, FMV, appraisal, other) | **(g)** Description of noncash assistance | **(h)** Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**2** Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ......................................................

**3** Enter total number of other organizations listed in the line 1 table ...........................................................................................

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

**Schedule I (Form 990) 2023**

LHA    332101  11-01-23

Schedule I (Form 990) 2023        HEALTHWELL FOUNDATION                                              20-0413676                    Page **2**

| Part III | Grants and Other Assistance to Domestic Individuals. Complete if the organization answered "Yes" on Form 990, Part IV, line 22. |
|---|---|

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| MULTIPLE MYELOMA - MEDICARE ACCESS | 29383 | 169,322,492. | 0. | | |
| RENAL CELL CARCINOMA - MEDICARE ACCESS | 9547 | 56,929,150. | 0. | | |
| HYPERCHOLESTEROLEMIA - MEDICARE ACCESS | 52454 | 54,622,815. | 0. | | |
| HEPATITIS C | 8927 | 48,404,470. | 0. | | |
| TARDIVE DYSKINESIA - MEDICARE ACCESS | 8241 | 38,803,600. | 0. | | |

| Part IV | Supplemental Information. Provide the information required in Part I, line 2; Part III, column (b); and any other additional information. |
|---|---|

PART I, LINE 2:

EACH PATIENT SEEKING ASSISTANCE IS SCREENED FOR ELIGIBILITY EITHER BY A

SPECIALIST THROUGH THE FOUNDATION HOTLINE OR THROUGH THE FOUNDATION'S

ONLINE APPLICATION TOOL. CRITERIA ARE STATIC ACROSS ALL OF THE FOUNDATION

FUNDS: DEPENDING ON THE PARTICULAR FUND FROM WHICH THE GRANT ISSUES, THE

PATIENT'S HOUSEHOLD INCOME MAY BE UP TO 505% OF THE FEDERAL POVERTY LEVEL,

ADJUSTED FOR HOUSEHOLD SIZE AND HIGH COST OF LIVING AREAS; THE PATIENT MUST

HAVE A DIAGNOSIS THAT THE FOUNDATION CURRENTLY SUPPORTS; THE PATIENT MUST

HAVE INSURANCE COVERAGE FOR THE TREATMENT FOR WHICH THEY ARE SEEKING

Schedule I (Form 990)    HEALTHWELL FOUNDATION                                      20-0413676              Page **2**

| Part III | Continuation of Grants and Other Assistance to Domestic Individuals (Schedule I (Form 990), Part III.) |

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| PROSTATE CANCER - MEDICARE ACCESS | 10,558. | 34,151,624. | 0. | | |
| PULMONARY HYPERTENSION - MEDICARE ACCESS | 6,066. | 32,830,128. | 0. | | |
| CARDIOMYOPATHY - MEDICARE ACCESS | 17,640. | 31,000,288. | 0. | | |
| CHRONIC LYMPHOCYTIC LEUKEMIA | 7,657. | 30,490,105. | 0. | | |
| ACUTE MYELOID LEUKEMIA | 7,180. | 25,088,080. | 0. | | |
| CYSTIC FIBROSIS TREATMENTS | 7,655. | 21,691,498. | 0. | | |
| PULMONARY FIBROSIS | 4,167. | 21,063,910. | 0. | | |
| MYELODYSPLASTIC SYNDROMES - MEDICARE ACCESS | 5,420. | 19,853,002. | 0. | | |
| NEUROCOGNITIVE DISEASE WITH PSYCHOSIS - MEDICARE ACCESS | 5,991. | 19,823,178. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)          HEALTHWELL FOUNDATION                              20-0413676              Page **2**

| **Part III** | **Continuation of Grants and Other Assistance to Domestic Individuals** (Schedule I (Form 990), Part III.) |

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| AMYOTROPHIC LATERAL SCLEROSIS | 3,226. | 18,871,854. | 0. | | |
| BREAST CANCER - MEDICARE ACCESS | 2,448. | 12,195,432. | 0. | | |
| MULTIPLE SCLEROSIS - MEDICARE ACCESS | 1,367. | 6,159,570. | 0. | | |
| PEYRONIE'S DISEASE | 1,723. | 4,900,361. | 0. | | |
| CYSTIC FIBROSIS VITAMINS AND SUPPLEMENTS | 8,827. | 4,890,144. | 0. | | |
| MANTLE CELL LYMPHOMA | 1,069. | 4,825,026. | 0. | | |
| CONGENITAL SUCRASE-ISOMALTASE DEFICIENCY | 1,168. | 4,563,781. | 0. | | |
| PEDIATRIC ASSISTANCE | 2,305. | 3,970,929. | 0. | | |
| DUPUYTREN'S DISEASE | 2,294. | 3,777,799. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)         HEALTHWELL FOUNDATION                                    20-0413676                    Page **2**

| Part III | Continuation of Grants and Other Assistance to Domestic Individuals (Schedule I (Form 990), Part III.) |

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| AMYLOIDOSIS | 578. | 2,979,901. | 0. | | |
| GOUT - MEDICARE ACCESS | 1,237. | 2,443,201. | 0. | | |
| NON-SMALL CELL LUNG CANCER - MEDICARE ACCESS | 691. | 2,261,065. | 0. | | |
| NON-HODGKIN'S LYMPHOMA - MEDICARE ACCESS | 486. | 2,149,795. | 0. | | |
| SMALL CELL LUNG CANCER - MEDICARE ACCESS | 703. | 2,131,525. | 0. | | |
| SYSTEMIC SCLEROSIS WITH INTERSTITIAL LUNG DISEASE | 352. | 1,671,186. | 0. | | |
| WALDENSTROM MACROGLOBULINEMIA | 297. | 1,360,658. | 0. | | |
| URTICARIA | 576. | 1,357,771. | 0. | | |
| SICKLE CELL DISEASE | 369. | 1,152,303. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)    HEALTHWELL FOUNDATION                                      20-0413676                Page **2**

| Part III | Continuation of Grants and Other Assistance to Domestic Individuals  (Schedule I (Form 990), Part III.) |

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| TYPE 2 DIABETES | 1,266. | 851,853. | 0. | | |
| MELANOMA - MEDICARE ACCESS | 150. | 819,030. | 0. | | |
| COLORECTAL CARCINOMA - MEDICARE ACCESS | 377. | 698,131. | 0. | | |
| CUSHING'S DISEASE | 231. | 664,437. | 0. | | |
| PANCREATIC CANCER - MEDICARE ACCESS | 401. | 647,575. | 0. | | |
| POST MENOPAUSAL OSTEOPOROSIS - MEDICARE ACCESS | 1,632. | 621,504. | 0. | | |
| IGA NEPHROPATHY | 131. | 615,336. | 0. | | |
| BLEPHARITIS | 899. | 614,942. | 0. | | |
| LAMBERT-EATON MYASTHENIC SYNDROME | 120. | 612,390. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)        HEALTHWELL FOUNDATION                                        20-0413676                Page **2**

| Part III | Continuation of Grants and Other Assistance to Domestic Individuals (Schedule I (Form 990), Part III.) |

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| GIANT CELL ARTERITIS OR TEMPORAL ARTERITIS – MEDICARE ACCESS | 156. | 517,809. | 0. | | |
| CHRONIC MYELOID LEUKEMIA – MEDICARE ACCESS | 109. | 442,734. | 0. | | |
| BLADDER AND UROTHELIAL CANCER – MEDICARE ACCESS | 154. | 386,788. | 0. | | |
| AAV & GPA | 0. | 358,155. | 0. | | |
| HEALTH ACCESS | 0. | 350,993. | 0. | | |
| BONE METASTASES – MEDICARE ACCESS | 168. | 191,054. | 0. | | |
| B-CELL LYMPHOMA – MEDICARE ACCESS | 95. | 149,892. | 0. | | |
| ANCA-ASSOC VASCULITIS, AND GRANULOMATOSIS WITH POLYANGIITIS (FORMERLY WEGENERS) | 140. | 133,385. | 0. | | |
| NONTUBERCULOUS MYCOBACTERIUM – MEDICARE ACCESS | 119. | 111,308. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)    HEALTHWELL FOUNDATION                                           20-0413676                Page **2**

**Part III** | **Continuation of Grants and Other Assistance to Domestic Individuals** (Schedule I (Form 990), Part III.)

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| CANCER-RELATED BEHAVIORAL HEALTH | 125. | 85,839. | 0. | | |
| CHEMOTHERAPY INDUCED NEUTROPENIA - MEDICARE ACCESS | 77. | 78,399. | 0. | | |
| OVARIAN CANCER - MEDICARE ACCESS | 43. | 64,138. | 0. | | |
| PORPHYRIAS | 19. | 53,642. | 0. | | |
| HEAD AND NECK CANCER - MEDICARE ACCESS | 20. | 49,149. | 0. | | |
| COVID-19 FRONTLINE HEALTH CARE WORKERS BEHAVIORAL HEALTH | 53. | 35,937. | 0. | | |
| GASTRIC CANCER - MEDICARE ACCESS | 17. | 33,923. | 0. | | |
| HYPEROXALURIA | 19. | 23,585. | 0. | | |
| HOMOCYSTINURIA | 11. | 17,996. | 0. | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)    HEALTHWELL FOUNDATION    20-0413676    Page **2**

| Part III | Continuation of Grants and Other Assistance to Domestic Individuals (Schedule I (Form 990), Part III.) |

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of non-cash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| GOUT TRAVEL FUND | 24. | 15,125. | 0. | | |
| UREA CYCLE DISORDERS | 6. | 14,638. | 0. | | |
| ACROMEGALY | 5. | 14,179. | 0. | | |
| WILMS' TUMOR | 1. | 2,761. | 0. | | |
| ALAGILLE SYNDROME VITAMINS AND SUPPLEMENTS | 4. | 2,386. | 0. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Schedule I (Form 990)

332242
04-01-23

Schedule I (Form 990)                    HEALTHWELL FOUNDATION                    20-0413676   Page **2**

**Part IV** | **Supplemental Information**

ASSISTANCE; THAT TREATMENT MUST BE AN ELIGIBLE TREATMENT UNDER THE

HEALTHWELL FUND; AND THE TREATMENT MUST BE DISPENSED IN THE UNITED STATES.

IN ADDITION, DURING THE APPROVAL PROCESS, A SOFT CREDIT CHECK IS RUN ON THE

APPLICANT TO DETERMINE THAT THEY MEET THE INCOME REQUIREMENTS FOR THE

PROGRAM.  IF THE SOFT CREDIT CHECK DOES NOT RETURN A SATISFACTORY RESULT,

THE PATIENT IS REQUIRED TO SUBMIT A FULL INCOME DOCUMENT REVIEW IN ORDER TO

RECEIVE ASSISTANCE  THROUGH THE PROGRAM.  OTHERWISE, PATIENTS ARE APPROVED

IF ALL CRITERIA ARE MET DURING SCREENING.


PATIENTS RECEIVE A PHARMACY CARD TO USE AT THE LOCAL RETAIL PHARMACY,

THROUGH MAIL ORDER PHARMACY, OR THROUGH SPECIALTY PHARMACY. THE PHARMACY

CARD CANNOT BE USED FOR PRIMARY PAYMENT AND PROVIDES ELECTRONIC POINT OF

SALE REIMBURSEMENT FOR THE PHARMACY.


IN CASES WHERE THE PHARMACY CARD CANNOT BE USED, THE FOUNDATION REQUIRES

THE SUBMISSION OF A COMPLETED REIMBURSEMENT REQUEST FORM ALONG WITH

ADDITIONAL INFORMATION AS OUTLINED ON THE FORM. UPON RECEIPT, THE REQUEST

IS REVIEWED: A FOUNDATION PAYMENT SPECIALIST ENTERS THE RECEIVED

INFORMATION INTO THE SYSTEM AND THE SYSTEM VALIDATES THE DATE OF SERVICE,

AN INSURER PAID FIRST, THE PRODUCT IS AN ELIGIBLE TREATMENT UNDER THE

HEALTHWELL FUND, AND THE PATIENT HAS AN ACTIVE, FULLY APPROVED GRANT. ONLY

IF ALL SYSTEMATIC CHECKS PASS, THE PAYMENT SPECIALIST PROCESSES THE

PAYMENT.

**Schedule I (Form 990)**

**SCHEDULE J**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**Attach to Form 990.**
**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public Inspection**

Name of the organization: **HEALTHWELL FOUNDATION**

Employer identification number: **20-0413676**

| Part I | Questions Regarding Compensation |
|---|---|

| | | Yes | No |
|---|---|---|---|
| **1a** Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | | |

☐ First-class or charter travel             ☐ Housing allowance or residence for personal use
☐ Travel for companions                   ☐ Payments for business use of personal residence
☐ Tax indemnification and gross-up payments    ☐ Health or social club dues or initiation fees
☐ Discretionary spending account          ☐ Personal services (such as maid, chauffeur, chef)

| | | Yes | No |
|---|---|---|---|
| **b** If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain ..... | **1b** | | |
| **2** Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked on line 1a? ..... | **2** | | |

**3** Indicate which, if any, of the following the organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.

☒ Compensation committee              ☐ Written employment contract
☒ Independent compensation consultant       ☒ Compensation survey or study
☒ Form 990 of other organizations          ☒ Approval by the board or compensation committee

| | | Yes | No |
|---|---|---|---|
| **4** During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** Receive a severance payment or change-of-control payment? ..... | **4a** | | X |
| **b** Participate in or receive payment from a supplemental nonqualified retirement plan? ..... | **4b** | | X |
| **c** Participate in or receive payment from an equity-based compensation arrangement? ..... | **4c** | | X |
| If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| **Only section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** The organization? ..... | **5a** | | X |
| **b** Any related organization? ..... | **5b** | | X |
| If "Yes" on line 5a or 5b, describe in Part III. | | | |
| **6** For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** The organization? ..... | **6a** | | X |
| **b** Any related organization? ..... | **6b** | | X |
| If "Yes" on line 6a or 6b, describe in Part III. | | | |
| **7** For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described on lines 5 and 6? If "Yes," describe in Part III ..... | **7** | X | |
| **8** Were any amounts reported on Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III ..... | **8** | | X |
| **9** If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? ..... | **9** | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

**Schedule J (Form 990) 2023**

LHA  332111 11-06-23

18261020 150872 192879        2023.04030 HEALTHWELL FOUNDATION      192879_1

Schedule J (Form 990) 2023     HEALTHWELL FOUNDATION     20-0413676     Page **2**

| **Part II** | **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed. |

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii).
Do not list any individuals that aren't listed on Form 990, Part VII.

**Note:** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC and/or 1099-NEC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| (1) KRISTA ZODET | (i) | 369,804. | 0. | 0. | 21,599. | 3,814. | 395,217. | 0. |
| PRESIDENT & CEO | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (2) ALAN KLEIN | (i) | 286,870. | 61,152. | 0. | 22,979. | 2,724. | 373,725. | 0. |
| CHIEF DEVELOPMENT OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (3) FRED ASIEDU LARBI | (i) | 227,166. | 22,460. | 0. | 17,457. | 42,110. | 309,193. | 0. |
| CHIEF OPERATIONS OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (4) SHELA HALPER | (i) | 224,188. | 22,170. | 0. | 16,026. | 21,300. | 283,684. | 0. |
| CHIEF FOUNDATION PROGRAM OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (5) ERICA MATA | (i) | 140,292. | 17,078. | 0. | 10,860. | 49,295. | 217,525. | 0. |
| DIRECTOR, OPERATIONS | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (6) TIMOTHY VAWTER | (i) | 134,360. | 13,465. | 0. | 10,754. | 29,414. | 187,993. | 0. |
| ASSOCIATE DIRECTOR, INFO. TECH. | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (7) CESAR MARTINEZ | (i) | 134,978. | 13,155. | 0. | 10,500. | 27,982. | 186,615. | 0. |
| DIRECTOR, ARCHITECT SOLUTIONS | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (8) VIRGINIA DUNN | (i) | 126,659. | 13,776. | 0. | 9,988. | 31,311. | 181,734. | 0. |
| DIRECTOR, COMM. AND MKTG | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (9) LORI MARTIN | (i) | 125,781. | 13,000. | 0. | 8,178. | 33,775. | 180,734. | 0. |
| DIRECTOR, HUMAN RESOURCES | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (10) COLLIN ALEXANDER, CHIEF | (i) | 144,359. | 0. | 0. | 8,689. | 19,641. | 172,689. | 0. |
| FINANCIAL OFFICER THRU 6/23 | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |

332112 11-06-23

Schedule J (Form 990) 2023

Schedule J (Form 990) 2023      HEALTHWELL FOUNDATION                                      20-0413676                    Page **3**

**Part III** | **Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

PART I, LINE 3:

DATE OF LAST STUDY 12/31/2022

PART I, LINE 7:

ALL BONUS PAYMENTS RECEIVED BY OFFICERS, KEY EMPLOYEES AND HIGHEST

COMPENSATED EMPLOYEES LISTED IN FORM 990, PART VII ARE BASED ON AN

APPRAISAL OF THEIR PERFORMANCE.

Schedule J (Form 990) 2023

332113 11-06-23

**SCHEDULE L**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Transactions With Interested Persons

Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a,
28b, or 28c; or Form 990-EZ, Part V, line 38a or 40b.
**Attach to Form 990 or Form 990-EZ.**
Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

## 2023

Open to Public
Inspection

Name of the organization
HEALTHWELL FOUNDATION

Employer identification number
20-0413676

| Part I | **Excess Benefit Transactions** (section 501(c)(3), section 501(c)(4), and section 501(c)(29) organizations only) |

Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b; or Form 990-EZ, Part V, line 40b.

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year under
section 4958 ................................................................................................................ $ _____

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization ................................ $ _____

| Part II | **Loans to and/or From Interested Persons** |

Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26; or if the organization
reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To | From | (e) Original principal amount | (f) Balance due | (g) In default? Yes | No | (h) Approved by board or committee? Yes | No | (i) Written agreement? Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (1) COLLIN ALEXAN | OFFICER | EMPLOYEE | | X | 3,220. | 3,220. | | X | | X | | X |
| (2) | | | | | | | | | | | | |
| (3) | | | | | | | | | | | | |
| (4) | | | | | | | | | | | | |
| (5) | | | | | | | | | | | | |
| (6) | | | | | | | | | | | | |
| (7) | | | | | | | | | | | | |
| (8) | | | | | | | | | | | | |
| (9) | | | | | | | | | | | | |
| (10) | | | | | | | | | | | | |
| **Total** | | | | | $ | 3,220. | | | | | | |

| Part III | **Grants or Assistance Benefiting Interested Persons** |

Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.            Schedule L (Form 990) 2023

SEE PART V FOR CONTINUATIONS

LHA    332131  11-06-23

Schedule L (Form 990) 2023          HEALTHWELL FOUNDATION                                    20-0413676    Page **2**

| **Part IV** | **Business Transactions Involving Interested Persons** | | | | | |

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| **(a)** Name of interested person | **(b)** Relationship between interested person and the organization | **(c)** Amount of transaction | **(d)** Description of transaction | **(e)** Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |
| (8) | | | | | |
| (9) | | | | | |
| (10) | | | | | |

| **Part V** | **Supplemental Information** |

Provide additional information for responses to questions on Schedule L. See instructions.

SCHEDULE L, PART II, LOANS TO AND FROM INTERESTED PERSONS:

(A) NAME OF PERSON: COLLIN ALEXANDER

(C) PURPOSE OF LOAN: EMPLOYEE LOAN

Schedule L (Form 990) 2023

332132  11-30-23

58

18261020 150872 192879                   2023.04030 HEALTHWELL FOUNDATION         192879_1

**SCHEDULE O**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
**Attach to Form 990 or Form 990-EZ.**
Go to www.irs.gov/Form990 for the latest information.

OMB No. 1545-0047

**2023**

**Open to Public
Inspection**

Name of the organization
HEALTHWELL FOUNDATION

Employer identification number
20-0413676

FORM 990, PART III, LINE 4D, OTHER PROGRAM SERVICES:

THE HEALTHWELL FOUNDATION PROVIDED DEDUCTIBLE, COINSURANCE, COPAYMENT,

AND PREMIUM ASSISTANCE TO 125,790 ELIGIBLE PATIENTS TREATED FOR

HEPATITIS C, TARDIVE DYSKINESIA, PROSTATE CANCER, PULMONARY

HYPERTENSION, CARDIOMYOPATHY, CHRONIC LYMPHOCYTIC LEUKEMIA, ACUTE

MYELOID LEUKEMIA, CYSTIC FIBROSIS, PULMONARY FIBROSIS, MYELODYSPLASTIC

SYNDROMES, NEUROCOGNITIVE DISEASE WITH PSYCHOSIS, AMYOTROPHIC LATERAL

SCLEROSIS, BREAST CANCER, MULTIPLE SCLEROSIS, PEYRONIE'S DISEASE,

CYSTIC FIBROSIS VITAMINS AND SUPPLEMENTS, MANTLE CELL LYMPHOMA,

CONGENITAL SUCRASE-ISOMALTASE DEFICIENCY, PEDIATRIC ASSISTANCE,

DUPUYTREN'S DISEASE, AMYLOIDOSIS, GOUT, NON-SMALL CELL LUNG CANCER,

NON-HODGKIN'S LYMPHOMA, SMALL CELL LUNG CANCER, SYSTEMIC SCLEROSIS WITH

INTERSTITIAL LUNG DISEASE, WALDENSTROM MACROGLOBULINEMIA, URTICARIA,

SICKLE CELL DISEASE, TYPE 2 DIABETES, MELANOMA, COLORECTAL CARCINOMA,

CUSHING'S DISEASE, PANCREATIC CANCER, POST MENOPAUSAL OSTEOPOROSIS, IGA

NEPHROPATHY, BLEPHARITIS, LAMBERT-EATON MYASTHENIC SYNDROME, GIANT CELL

ARTERITIS OR TEMPORAL ARTERITIS, CHRONIC MYELOID LEUKEMIA, BLADDER AND

UROTHELIAL CANCER, AAV & GPA, HEALTH ACCESS, BONE METASTASES, B-CELL

LYMPHOMA, ANCA-ASSOC VASCULITIS, AND GRANULOMATOSIS WITH POLYANGIITIS

(FORMERLY WEGENERS), NONTUBERCULOUS MYCOBACTERIUM, CANCER-RELATED

BEHAVIORAL HEALTH, CHEMOTHERAPY INDUCED NEUTROPENIA, OVARIAN CANCER,

PORPHYRIAS, HEAD AND NECK CANCER, COVID-19 FRONTLINE HEALTH CARE

WORKERS BEHAVIORAL HEALTH, GASTRIC CANCER, HYPEROXALURIA,

HOMOCYSTINURIA, GOUT TRAVEL FUND, UREA CYCLE DISORDERS, ACROMEGALY,

WILMS' TUMOR, AND ALAGILLE SYNDROME VITAMINS AND SUPPLEMENTS.

EXPENSES $ 426,050,804.   INCLUDING GRANTS OF $ 414,141,198.   REVENUE $ 0.

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.

Schedule O (Form 990) 2023

LHA    332211 11-14-23

| Name of the organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

SCHEDULE L PART II

THE LOAN REFERENCED ON SCHEDULE L WAS MADE IN 2023 IN CONNECTION WITH

AN EMPLOYEE BENEFIT PROGRAM, AND IS IN THE PROCESS OF CORRECTION.  IN

ADDITION, A SMALL LOAN TO THE SAME INTERESTED PERSON WAS MADE UNDER THE

PROGRAM IN 2022, AND THAT LOAN WAS CORRECTED IN 2023.


FORM 990, PART VI, SECTION B, LINE 11B:

UPON COMPLETION OF THE INTERNAL REVIEWS, THE FOUNDATION'S FINANCE

DEPARTMENT PROVIDES EACH BOARD MEMBER A COPY FOR REVIEW PRIOR TO FILING

WITH THE INTERNAL REVENUE SERVICE. ONCE THE BOARD HAS REVIEWED AND APPROVED

THE FILING, THE BOARD CHAIR AUTHORIZES THE FEDERAL FORM 990 TO BE E-FILED.


FORM 990, PART VI, SECTION B, LINE 12C:

THE FOUNDATION'S PRESIDENT & CHIEF EXECUTIVE OFFICER AND THE CHIEF

COMPLIANCE OFFICER WORK TOGETHER TO ENSURE ADHERENCE TO THE FOUNDATION'S

COMPLIANCE PROGRAM. INCLUDED IN THIS COMPLIANCE PROGRAM ARE THE FOLLOWING

ELEMENTS: STAFF AND BOARD OF DIRECTORS ARE REQUIRED TO FOLLOW A CODE OF

CONDUCT; STAFF MUST SIGN A CONFIDENTIALITY AGREEMENT UPON HIRE; MEMBERS OF

THE BOARD OF DIRECTORS AND SENIOR STAFF MUST SIGN A CONFLICT OF INTEREST

DISCLOSURE ANNUALLY (BOARD MEMBERS THAT ARE DEEMED TO HAVE A CONFLICT OF

INTEREST BASED ON THIS DISCLOSURE ARE RECUSED FROM PARTICIPATING IN A VOTE

WITHIN THAT AREA OF CONFLICT); AND SENIOR STAFF AND BOARD ALSO ATTEST TO

UNDERSTANDING AND ADHERING TO THE POLICIES AND PRACTICES OF THE HEALTHWELL

FOUNDATION. THE SENIOR STAFF AND BOARD CANNOT REFER PATIENTS TO APPLY FOR

ASSISTANCE FROM THE FOUNDATION, OR RECOMMEND A PARTICULAR PROVIDER,

SUPPLIER, OR PRODUCT FOR AN APPLICANT OR PATIENT, OR DISCLOSE THE IDENTITY

OF ANY PROGRAM DONOR. THE CHIEF COMPLIANCE OFFICER PROVIDES ANNUAL

| Name of the organization | Employer identification number |
|---|---|
| HEALTHWELL FOUNDATION | 20-0413676 |

COMPLIANCE TRAINING TO THE BOARD AND CORPORATE STAFF; THE PRESIDENT AND

CHIEF EXECUTIVE OFFICER PROVIDES ANNUAL COMPLIANCE TRAINING TO THE CONTACT

CENTER STAFF.


FORM 990, PART VI, SECTION B, LINE 15:

HEALTHWELL BOARD OF DIRECTORS CONDUCTED A COMPENSATION REVIEW IN 2021 FOR

THE PRESIDENT. THE BOARD ENGAGED AN INDEPENDENT CONSULTANT, MARSH MCLENNAN,

TO CONDUCT THE ANALYSIS. THE BOARD CHAIR, TREASURER, AND A BOARD DIRECTOR

REVIEWED AND APPROVED THE PRESIDENT'S COMPENSATION.


HEALTHWELL ENGAGED MARSH MCLENNAN TO CONDUCT A COMPENSATION REVIEW FOR ALL

POSITIONS AT HEALTHWELL BASED ON UPDATED JOB DESCRIPTIONS IN 2022 (THE LAST

PRIOR ONE WAS UNDERTAKEN IN 2018). THE BOARD CHAIR, TREASURER, A BOARD

DIRECTOR, AND THE PRESIDENT & CHIEF EXECUTIVE OFFICER REVIEWED AND APPROVED

ALL COMPENSATION FOR THE REMAINING FOUNDATION STAFF.


FORM 990, PART VI, LINE 17, LIST OF STATES RECEIVING COPY OF FORM 990:

AL,AK,AZ,AR,CA,CT,FL,GA,HI,IL,KS,KY,LA,ME,MD,MA,MI,MN,MS,NH,NJ,NM,NY,NC,ND

OH,OK,OR,PA,RI,SC,TN,UT,VT,VA,WA,WV,WI,CO,DE,ID,IN,IA,MO,MT,NE,NV,SD,TX,WY


FORM 990, PART VI, SECTION C, LINE 19:

THE FOUNDATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY,

FINANCIAL STATEMENTS AND THE FEDERAL FORM 990 ARE AVAILABLE TO THE PUBLIC

UPON REQUEST. THE FEDERAL FORM 990, THE FOUNDATION'S FINANCIALS, AND ANNUAL

REPORT ARE ALSO AVAILABLE AT WWW.HEALTHWELLFOUNDATION.ORG.


FORM 990, PART XI, LINE 9, CHANGES IN NET ASSETS:

GRANT REFUND                                                                       10,449.

**SCHEDULE R**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**

**Attach to Form 990.**

**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

## 2023

**Open to Public Inspection**

Name of the organization
**HEALTHWELL FOUNDATION**

**Employer identification number**
20-0413676

**Part I** | **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| HWF DIRECT, LLC - 83-2192839 5280 CORPORATE DRIVE, SUITE 250B FREDERICK, MD 21073 | CONTACT CENTER | VIRGINIA | 16,522,745. | 65,303,939. | HEALTHWELL FOUNDATION |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** | **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|
| | | | | | | Yes | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

**Schedule R (Form 990) 2023**

332161 09-28-23    LHA

62

**Part III** | **Identification of Related Organizations Taxable as a Partnership.**  Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV** | **Identification of Related Organizations Taxable as a Corporation or Trust.**  Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Schedule R (Form 990) 2023    HEALTHWELL FOUNDATION                                    20-0413676    Page **3**

| Part V | Transactions With Related Organizations. Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36. |
|---|---|

| | | Yes | No |
|---|---|---|---|
| **Note:** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | |
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | |
| **b** Gift, grant, or capital contribution to related organization(s) | **1b** | | |
| **c** Gift, grant, or capital contribution from related organization(s) | **1c** | | |
| **d** Loans or loan guarantees to or for related organization(s) | **1d** | | |
| **e** Loans or loan guarantees by related organization(s) | **1e** | | |
| **f** Dividends from related organization(s) | **1f** | | |
| **g** Sale of assets to related organization(s) | **1g** | | |
| **h** Purchase of assets from related organization(s) | **1h** | | |
| **i** Exchange of assets with related organization(s) | **1i** | | |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | **1k** | | |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | | |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | | |
| **o** Sharing of paid employees with related organization(s) | **1o** | | |
| **p** Reimbursement paid to related organization(s) for expenses | **1p** | | |
| **q** Reimbursement paid by related organization(s) for expenses | **1q** | | |
| **r** Other transfer of cash or property to related organization(s) | **1r** | | |
| **s** Other transfer of cash or property from related organization(s) | **1s** | | |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a)<br>Name of related organization | (b)<br>Transaction<br>type (a-s) | (c)<br>Amount involved | (d)<br>Method of determining amount involved |
|---|---|---|---|
| **(1)** | | | |
| **(2)** | | | |
| **(3)** | | | |
| **(4)** | | | |
| **(5)** | | | |
| **(6)** | | | |

332163  09-28-23                                                                    Schedule R (Form 990) 2023

Schedule R (Form 990) 2023    HEALTHWELL FOUNDATION                                         20-0413676      Page **4**

| Part VI | **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37. |

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners sec. 501(c)(3) orgs.? Yes / No | (f) Share of total income | (g) Share of end-of-year assets | (h) Dispropor- tionate allocations? Yes / No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes / No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Schedule R (Form 990) 2023

332164 09-28-23

Schedule R (Form 990) 2023    HEALTHWELL FOUNDATION      20-0413676   Page **5**

**Part VII** | **Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

332165 09-28-23

18261020 150872 192879      2023.04030 HEALTHWELL FOUNDATION      192879_1

E-FILED; Montgomery Circuit Court
Docket: 1/3/2025 4:03 PM; Submission: 1/3/2025 4:03 PM
Envelope: 19407415

# EXHIBIT B

HEALTHWELL
FOUNDATION®
When health insurance is not enough.®

August 8, 2018

Mr. Alan Klein
11602 Georgetowne Court
Potomac, Maryland 20854

Stephen M. Weiner
BOARD CHAIR

Jerri Scarzella, BSN
VICE CHAIR & TREASURER

David L. Knowlton
VICE CHAIR & SECRETARY

Nancy Carteron, MD, FACR
BOARD MEMBER

Don Liss, MD
BOARD MEMBER

Suzanne M. Miller, PhD
BOARD MEMBER

Krista Zodet
PRESIDENT

**Re:    Confirmation of Terms and Conditions of Employment**

Dear Alan:

This letter agreement memorializes the terms and condition of your employment as the Chief Development Officer of The HealthWell Foundation (the "Foundation"). At the bottom corner of each page of this letter agreement is a line for your initials. By initialing the page, you acknowledge that you have reviewed that page and agree to be bound by the terms set forth on that page.

**Position, Duties and Responsibilities**.  This will confirm that you are employed as the Foundation's Chief Development Officer, with such duties, functions, responsibilities and authority as are typically consistent with such position, as the Foundation may from time to time determine.  You are to devote your best efforts and your full time and attention to the performance of your duties for the Foundation, and are to perform such duties in an efficient, trustworthy and businesslike manner, and in a manner that complies with law and all policies, procedures, practices and other requirements of the Foundation as set forth in the Foundation's employee handbook, as it may be modified or amended from time to time by the Foundation in its sole discretion (the "Employee Handbook").  You hereby acknowledge receipt of the Employee Handbook.  You report directly to, and are subject to the supervision of, the Foundation's President.

**Employment**.  In all respects, your right and obligations with respect to the Foundation and its affairs are those of a person employed at will, for a period of no definite term or duration, to perform services on behalf of the Foundation.  At any time and for any reason, with or without cause, either you or the Foundation may terminate your employment.  In the event you should decide to terminate your employment, you agree to give the Foundation not less than thirty (30) days' prior written notice of such termination.  In the event the Foundation should decide to terminate your employment, the Foundation will provide you with not less than thirty (30) days' prior written notice; provided, however, that if termination is for cause, as the Foundation may define in its sole discretion, termination will be immediate upon written notice to you from the Foundation.  Except as otherwise expressly provided herein, your salary and other benefits will automatically cease upon your termination date, whether the termination is initiated by you or by the Foundation.

_AK_
_____
Initials

20440 Century Blvd., Suite 250    Germantown, MD 20874    240-632-5300                    www.HealthWellFoundation.org



**Compensation**.  Your compensation package includes an annual base salary and annual bonus potential.  Commencing on January 1, 2018 and for each year during your employment, you will be paid an annual base salary of not less than $220,000 (the "Base Salary"), less withholdings and deductions required by law, and payable in accordance with the Foundation's normal payroll practices and procedures.  Your Base Salary is subject to annual increases at the sole discretion of the Foundation's President.

You are eligible to receive bonus compensation in respect of each fiscal year (or portion thereof) occurring during the term of your employment in an amount that will not exceed 50% of your Base Salary for such fiscal year.  The amount of your bonus with respect to each fiscal year or portion thereof, if any, will be determined by the President, in its sole discretion, using, among other factors, performance-based criteria applicable to you that the Foundation President develops in consultation with you, as well as the financial results of the Foundation with respect to the fiscal year in question (see Attachment A).  In order to be eligible to receive any bonus payment, you must be an employee of the Foundation on the date any such bonus payment is actually paid by the Foundation.

**Benefits**.  You are entitled to participate in any health, accident, disability and life insurance programs, and any other benefit program that are applicable to the Foundation's employees (as the Foundation may modify or amend any such program from time to time in its sole discretion).  During your employment, you are permitted to take, in addition to Foundation holidays applicable to all employees, paid time off in accordance with the Foundation's Employee Handbook, so long as your absence does not interfere in any material respect with the performance of your duties.

**Expenses**.  Except as otherwise specifically provided herein, you are entitled to be paid or reimbursed for all reasonable business expenses incurred by you in the performance of your duties for the Foundation in accordance with the Employee Handbook.  You must furnish appropriate documentation of all expenses for which you are to be reimbursed, including documentation required by the Internal Revenue Service.

**Confidential and Proprietary Information**.  You recognize and acknowledge that: (i) in the course of your employment you have access to and acquire certain Confidential Information (as defined below) relating to the business and operation of the Foundation, (ii) the Confidential Information is the property of the Foundation; (iii) the use, misappropriation or disclosure of the Confidential Information would constitute a breach of trust and could cause irreparable injury to the Foundation, and (iv) it is essential to the protection of the Foundation's good will and to the maintenance of the Foundation's competitive position that the Confidential Information be kept secret and that the Confidential Information not

_A.R._
Initials

20440 Century Blvd., Suite 250   Germantown, MD 20874   240-632-5300                    www.HealthWellFoundation.org

be disclosed by you to others or be used by you to your own advantage or the advantage of others.

You are to hold and safeguard the Confidential Information in trust for the Foundation, its successors and assigns and shall not, without the prior written consent of the Foundation, misappropriate or disclose or make available to anyone for use outside the Foundation's organization at my time, either during your employment or subsequent to the termination of your employment for any reason whatsoever, any of the Confidential Information, whether or not developed by you, except as required in the performance of your duties for the Foundation; provided, however, that the foregoing does not apply to (i) any information generally available to the public or that becomes generally available to the public through no fault of your own, but only from and after the date such information becomes so available, (ii) any information obtained by you from a third party that you have no reason to believe is violating any obligation of confidentiality to the Foundation, or (iii) any information you are required by judicial process to disclose.

For purposes hereof, the term "Confidential Information" means, without limitation, all information with respect to the Foundation and its business and operations (including, without limitation, proposals, business and operational plans, financial information, customer and prospect lists and information, donor and prospective donor lists and information, donations and grants, individual grant recipients, providers, including specialty pharmacies, vendor information personnel information and contract information), governance, structure, properties, methods of operation, software (including, without limitation, source code, specifications, data, works in process, alpha and beta versions, design documents and documentation), trade secrets, inventions, discoveries, know-how and other intellectual property.

You are to disclose promptly to the Foundation any and all works, inventions, discoveries and improvements authored, conceived or made by you during your employment and related to the business or activities of the Foundation, and you hereby assign and agree to assign all your interest therein to the Foundation. Whenever requested to do so by the Foundation, you are to execute any and all applications, assignments or other instruments that the Foundation deems necessary to apply for and obtain Letters Patent or Copyrights of the United States or any foreign country or otherwise to protect the Foundation's interest therein.  You obligations as described in the paragraph continue beyond the termination of employment with respect to works, inventions, discoveries and improvements authored, conceived or made by you during the term of your employment, and are binding upon your assigns, executors, administrators and other legal representatives.

Upon the termination of your employment for any reason, you are to promptly

_____

Initials

20440 Century Blvd., Suite 250    Germantown, MD 20874    240-632-5300                     www.HealthWellFoundation.org



deliver to the Foundation all correspondence, drawings, blueprints, manuals, letters, notes, notebooks, reports, flowcharts, programs, proposals and any documents concerning the Foundation's individual grant recipients or donors, or concerning products, services, programs or processes used by the Foundation and, without limiting the foregoing, you are to promptly deliver to the Foundation any and all other documents or materials containing or constituting Confidential Information.

In addition, upon the termination of your employment for any reason, you are to promptly return to the Foundation, in good operating condition (reasonable wear and tear in ordinary usage excepted), all tangible assets and property in your possession but that belong to the Foundation, including but not limited to any all computers (including but not limited to laptops) and computer equipment, cellular phones, personal electronic devices, furniture, and any and all other tangible assets and property belonging to the Foundation.

**<u>Non-Competition; Non-Solicitation</u>**.  It is hereby acknowledged that prior to the date of this letter agreement your bonus compensation could not exceed 20% of your then current Base Salary.  However, in exchange for your agreement to enter into and comply with the non-competition and non-solicitation provisions set forth below, the Foundation has agreed to materially enhance the bonus compensation available to you so that your potential maximum bonus compensation now up to 50%, rather 20%, of your then current Base Salary all as set forth on Attachment A; and you hereby expressly acknowledge and agree that, among other consideration, such increase in potential bonus compensation is good and valuable consideration for your agreement to enter into and comply with the non-competition and non-solicitation provisions set forth below.

During the term of your employment and for a period of one (I) year following the termination of your employment for any reason whatsoever you will not, directly or indirectly, whether as principal or as agent, officer, director, employee, member, manager, consultant, shareholder, or otherwise, alone or in association with any other person, corporation or other entity, (i) engage in a Restricted Business (as defined below) in the geographic area constituting the United States of America, (ii) solicit the trade of, or trade with, any customer, prospective customer, donor, prospective donor, supplier, or prospective supplier of the Foundation in any business, organization or enterprise competitive with that of the Foundation to the Foundation's disadvantage, or (iii) solicit or induce, or attempt to solicit or induce, any employee of the Foundation to leave the Foundation for any reason whatsoever, or hire any employee of the Foundation (it being conclusively presumed so as to avoid any disputes under this paragraph that the hiring of any employee or former employee of the Foundation within six (6) months following the termination of his/her employment with the Foundation is in violation of this paragraph). For purposes of this paragraph, the term "Restricted Business" shall mean and include any business, enterprise or organization that (i) is operated as an independent,

_AK_

Initials

charitable patient assistance program or organization or (ii) has as its primary business operation a patient assistance program or organization. For example, the foregoing shall not restrict you from acting as an employee, consultant or the like for (i) a charitable organization that operates a patient assistance program as an ancillary, but not primary, part of its overall operations or (ii) a for-profit pharmaceutical manufacturer that operates a commercial patient assistance program as an ancillary, but not primary, part of its overall operations.

**Severance Eligibility**.   In the event your employment is terminated by the Foundation without cause, and you are otherwise in compliance with the terms and conditions of this Agreement, including, without limitation, your obligations under the paragraphs herein entitled "Confidential and Proprietary Information" and "Non-Competition; Non-Solicitation," and so long as you have executed and delivered to the Foundation such documents and instruments as the Foundation may request, including, without limitation, a release in favor of the Foundation and its directors, managers, officers, employees, agents, successors and assigns, of all claims relating to or arising out of your employment with the Foundation in form and substance acceptable to the Foundation in its sole discretion (the "Release"), you are entitled to a severance payment (the "Severance Payment") in the amount equal to fifty percent (50%) of your then current Base Salary as of the date of the Foundation's termination of your employment without cause.

Any such Severance Payment will be payable by the Foundation within thirty (30) days following termination of your employment; provided, however, that if you fail to execute and deliver the Release within thirty (30) days following your termination without cause, no Severance Payment will be paid.  Upon termination of your employment, and except as expressly provided above in this paragraph on "Severance Eligibility," you are not entitled to receive any further compensation pursuant to this Agreement (except as specifically required by law).  In the event of your termination by the Foundation without cause, you acknowledge that the Foundation has no liability to you whatsoever with respect to your employment with the Foundation pursuant to this Agreement other than its obligations set forth in this paragraph.

**No Conflicting Obligations**.  You represent that you have no interest or obligation that is inconsistent with or in conflict with this letter agreement or that prevents, limits or impairs your performance as an employee of the Foundation.  You agree to notify the Foundation's President immediately if any such interest or obligation arises.

**Compliance with Code § 409A.**  This letter agreement shall be interpreted and administered in accordance with the applicable requirements of, and exemptions from, Section 409A of the Internal Revenue Code of 1986, as amended (the "Code"), and in a manner consistent with Treas. Reg. § l.409A-l et. seq.  To the

_AR_
Initials

20440 Century Blvd., Suite 250    Germantown, MD 20874    240-632-5300                www.HealthWellFoundation.org



extent any payments or benefits are subject to Code § 409A, this letter agreement will be interpreted, construed and administered in a manner that satisfies the requirements of (i) Code § 409A(a)(2), (3) and (4), (ii) Treas. Reg. § 1.409A·l et seq., and (iii) other applicable authority issued by the Internal Revenue Service and the U.S. Department of the Treasury.

When used in this letter agreement, the terms "termination of employment," "terminate employment," and words of similar import mean and refer to "separation from service" within the meaning of Code § 409A(a)(2)(A)(i) and Treas. Reg. § l.409A-l (h).

If any amount is to be paid to you as a result of the termination of your employment at a time when you are the "specified employee" (within the meaning of Treas. Reg.§l.409A-l (i)), then, only to the extent necessary to avoid the imposition of excise taxes or other penalties under Code § 409A, payments scheduled to be paid to you during the first six (6) month period following the date of a termination of employment will not be paid until the date that is the first business day after six months have elapsed following the termination of your employment.  If you die during the delay period set forth in this paragraph, your entire benefit will be paid to your beneficiary, in cash, in a single lump sum, within sixty (60) days of death.

Any series of payments made to you pursuant to the terms of this letter agreement will be deemed to be a series of separate payments for purposes of the distribution requirements of Code § 409A.

**Entire Understanding:**  This letter agreement constitutes the entire understanding between the Foundation and you with respect to the subject matter hereof and supersedes any and all other prior understandings and agreements, whether verbal or written.  The agreements set forth in this letter agreement are to be construed under the laws of the State of Maryland.

Kindly sign below indicating that you agree to the provisions set forth in this letter and return your fully initialed and executed original to the undersigned as soon as possible.  Your signature below will also evidence that this letter agreement was not the product of coercion and that you have entered into it knowingly and voluntarily.

Sincerely,

Krista Zodet
President
The HealthWell Foundation


_____
Initials

**Agreed and Accepted**:

_____

Alan Klein

Date: _____

_____
Initials

HEALTHWELL
FOUNDATION®
When health insurance is not enough.®

**Attachment A**

| Effort | Maximum % | Notes |
|---|---|---|
| BASE | | |
| Target Annual Budget Met | 14% | Based on current circumstances. Minimum of $150M may change if fund efficiencies change or if investments changes. |
| Contributions as Senior Staff | 2% | |
| Management of Department and Staff | 2% | |
| Contributions to Positive Workplace Environment | 2% | |
| | | |
| CURRENT DONORS | | |
| >50% were active in the current and previous year | 1.75% | |
| >50% gave more in current year than previous year | 1.75% | |
| >25% opened 1 or more new funds or a fund that has been dormant for 2+ years | 1.5% | |
| | | |
| NEW DONORS | Not cumulative | |
| Average donations of all new donors <$1M | 1% | |
| Average donations of all new donors $1M-$4.99M | 2% | |
| Average donations of all new donors $5M-$9.99M | 4% | |
| Average donations of all new donors $10M+ | 5% | |
| | | |
| OTHER | | |
| Secure a high net worth individual donor >$1M | 2% | |
| Secure donations from other new non-profits totaling >$1M | 2% | |
| Secure donations from non-pharma, non-bio corporations totaling >$1M | 2% | |


Initials

Page 8 of 9

| | | |
|---|---|---|
| Donor move from another foundation >$2M | 1% | |
| For each $75M over target annual budget considering corporate donations only | 1.5% | |
| Achieve full public charity status 34% + | 3% | One-time only |
| Maintain full public charity status 34%+ | 1% | For each subsequent year or return after a drop |

Initials

20440 Century Blvd., Suite 250    Germantown, MD 20874    240-632-5300    www.HealthWellFoundation.org

DocuSign Envelope ID: 60B411A1-4EA0-4005-A6DC-723D59D0DB4A



December 26, 2022

Mr. Alan Klein
11602 Georgetowne Court
Potomac, Maryland 20854

Stephen M. Weiner
BOARD CHAIR

Jerri Scarzella, BSN
VICE CHAIR & TREASURER

David L. Knowlton
VICE CHAIR, SECRETARY &
CHIEF COMPLIANCE OFFICER

Cathleen D. Bennett, Esq.,
BOARD MEMBER

Nancy Carteron, MD, FACR
BOARD MEMBER

David F. Ertel
BOARD MEMBER

Don Liss, MD
BOARD MEMBER

Suzanne M. Miller, PhD
BOARD MEMBER

Jeffrey Peppercorn, MD, MPH
SCIENTIFIC & ETHICS ADVISOR

Krista Zodet
PRESIDENT

**Re:** **Amendment to Employment Agreement**

Dear Alan:

This letter agreement ("Amendment Letter") memorializes the mutually agreeable amendments to your employment letter agreement dated August 18, 2018 (the "Employment Agreement") with The HealthWell Foundation (the "Foundation"). Specifically, it is hereby agreed as follows:

1. **Amendments**. Your Employment Agreement is amended as follows:

   A. The section of your Employment Agreement entitled "Compensation" is hereby amended by deleting that section in its entirety and by replacing it with the following new section:

   "**Compensation**. Your compensation package includes an annual base salary and annual bonus potential. Commencing on January 1, 2022, and for each year during your employment, you will be paid an annual base salary of not less than $271,650 (the "Base Salary"), less withholdings and deductions required by law, and payable in accordance with the Foundation's normal payroll practices and procedures. Your Base Salary is subject to annual increases at the sole discretion of the Foundation's President.

   You are eligible to receive bonus compensation in respect of each fiscal year (or portion thereof) occurring during the term of your employment in an amount that will not exceed 30% of your Base Salary for such fiscal year. The amount of your bonus with respect to each fiscal year or portion thereof, if any, will be determined by the President, in its sole discretion, using, among other factors, performance-based criteria applicable to you that the Foundation President develops in consultation with you, as well as the financial results of the Foundation with respect to the fiscal year in question (see Attachment A). In order to be eligible to receive any bonus payment, you must be an employee of the Foundation on the date any such bonus payment is actually paid by the Foundation."

   B. The section of your Employment Agreement entitled "Non-Competition; Non-Solicitation" is hereby amended by deleting the first paragraph of that section in its entirety and by replacing it with the following new sentence:

   "For good and valuable consideration, the receipt and sufficiency of which is acknowledged, you hereby agree to the non-competition and non-solicitation provisions set forth below:"

**2.    Remaining Provisions of Employment Agreement**.    All other sections and provisions of the Employment Agreement remain in full force and effect unless further amended by the mutual written agreement of you and HealthWell.

**3.    Counterparts**.  This Amendment Letter may be executed in counterparts, each of which shall be an original and both of which together shall constitute one and the same instrument.

Kindly sign below indicating that you agree to the provisions set forth in this Amendment Letter and return your fully executed original to the undersigned as soon as possible.  Your signature below will also evidence that this Amendment Letter was not the product of coercion and that you have entered into it knowingly and voluntarily.

Sincerely,

*Krista Zodet*

Krista Zodet
President & Chief Executive Officer
The HealthWell Foundation

**Agreed and Accepted**:

DocuSigned by:

Alan Klein

Date: 12/26/2022

HealthWell Foundation®
When health insurance is not enough.®

**Attachment A**

| New Structure effective for 2022 | Cap: 30% | | POTENTIAL |
|---|---|---|---|
| Met minimum budget target needed to operations continues without Staffing Reductions (i.e., layoffs due to lack of work/volume) | | | 6.00% |
| TBD by Finance annually | | | |
| Contributions as Senior Staff | | | 4.00% |
| Management of Department and Staff | | | 4.00% |
| Contributions to Workplace Environment | | | 4.00% |
| Current Donors | 4.00% | max additional | |
| cumulative | 1.25% | >25% were active in the current and previous year | 1.25% |
| | 1.50% | >50% were active in the current and previous year | 1.50% |
| | 1.25% | >75% were active in the current and previous year | 1.25% |
| Special Initiative Donors | | | |
| cumulative | 1% | 1-2 new special initiative donors (non-individual) | 1.00% |
| | 1% | 3-4 new special initiative donors (non-individual) | 1.00% |
| | 1% | 5+ new special initiative donors (non-individual) | 1.00% |
| | 0.25% | for each returning special initiative donors in subsequent year | |
| special initiative = non-disease specific: PAF, behavioral health, caregiver, oncology radiation, travel, etc. | | | |
| disease fund donors that become special initiative donors count here | | | |
| Public Charity % | 2.00% | End year at target % | 2.00% |
| TBD by Finance annually in Q1 | | for 2022, target is 30% | |
| Reach targets | max additional | | |
| | 3% | achieve full public charity status 34% + | 3.00% |
| | 2% | maintain full public charity status 34%+ | 2.00% |
| | 1% | >50% of donors gave more in current year than previous year | 1.00% |
| | 1% | >25% donors opened 1 or more new funds or fund that has been dormant for 2+ years | 1.00% |

E-FILED; Montgomery Circuit Court
Docket: 1/3/2025 4:03 PM; Submission: 1/3/2025 4:03 PM
Envelope: 19407415

# EXHIBIT C

PUBLIC DISCLOSURE COPY

**\* PUBLIC DISCLOSURE COPY \***

| Form **990** | **Return of Organization Exempt From Income Tax** | OMB No. 1545-0047 |
|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations) | **2023** |
| Department of the Treasury<br>Internal Revenue Service | Do not enter social security numbers on this form as it may be made public.<br>Go to www.irs.gov/Form990 for instructions and the latest information. | **Open to Public<br>Inspection** |

**A** For the 2023 calendar year, or tax year beginning _____ and ending _____

| **B** Check if applicable: | **C** Name of organization | **D** Employer identification number |
|---|---|---|
| [X] Address change | PATIENT ACCESS NETWORK FOUNDATION | |
| [ ] Name change | Doing business as | 20-1184743 |
| [ ] Initial return | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | **E** Telephone number |
| [ ] Final return/terminated | 1032 15TH ST NW                                           413 | 202-347-9272 |
| [ ] Amended return | City or town, state or province, country, and ZIP or foreign postal code | **G** Gross receipts $   829,269,779. |
| [ ] Application pending | WASHINGTON, DC  20005 | **H(a)** Is this a group return |
| | **F** Name and address of principal officer: KEVIN HAGAN | for subordinates? [ ] Yes [X] No |
| | SAME AS C ABOVE | **H(b)** Are all subordinates included? [ ] Yes [ ] No |

**I** Tax-exempt status: [X] 501(c)(3)  [ ] 501(c) ( ) (insert no.)  [ ] 4947(a)(1) or  [ ] 527       If "No," attach a list. See instructions

**J** Website: ▶ WWW.PANFOUNDATION.ORG       **H(c)** Group exemption number ▶

**K** Form of organization: [X] Corporation [ ] Trust [ ] Association [ ] Other ▶       **L** Year of formation: 2004  **M** State of legal domicile: DC

## Part I | Summary

| | | |
|---|---|---|
| **1** | Briefly describe the organization's mission or most significant activities: TO HELP UNDERINSURED PEOPLE WITH LIFE-THREATENING, CHRONIC AND RARE DISEASES GET THE MEDICATIONS AND | |
| **2** | Check this box ▶ [ ] if the organization discontinued its operations or disposed of more than 25% of its net assets. | |
| **3** | Number of voting members of the governing body (Part VI, line 1a) | **3** | 14 |
| **4** | Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 14 |
| **5** | Total number of individuals employed in calendar year 2023 (Part V, line 2a) | **5** | 199 |
| **6** | Total number of volunteers (estimate if necessary) | **6** | 1 |
| **7 a** | Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 0. |
| **b** | Net unrelated business taxable income from Form 990-T, Part I, line 11 | **7b** | 0. |

| | | **Prior Year** | **Current Year** |
|---|---|---|---|
| **8** | Contributions and grants (Part VIII, line 1h) | 277,827,701. | 364,186,196. |
| **9** | Program service revenue (Part VIII, line 2g) | 0. | 0. |
| **10** | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 6,373,322. | 10,175,747. |
| **11** | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0. | 62,428. |
| **12** | Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 284,201,023. | 374,424,371. |
| **13** | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 298,040,691. | 255,391,522. |
| **14** | Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| **15** | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 8,809,880. | 12,917,672. |
| **16a** | Professional fundraising fees (Part IX, column (A), line 11e) | 606,117. | 577,705. |
| **b** | Total fundraising expenses (Part IX, column (D), line 25) ▶ 3,850,238. | | |
| **17** | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 23,330,880. | 19,246,239. |
| **18** | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 330,787,568. | 288,133,138. |
| **19** | Revenue less expenses. Subtract line 18 from line 12 | -46,586,545. | 86,291,233. |

| | | **Beginning of Current Year** | **End of Year** |
|---|---|---|---|
| **20** | Total assets (Part X, line 16) | 405,191,661. | 468,568,076. |
| **21** | Total liabilities (Part X, line 26) | 137,766,552. | 107,379,690. |
| **22** | Net assets or fund balances. Subtract line 21 from line 20 | 267,425,109. | 361,188,386. |

## Part II | Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | Signature of officer | Date |
|---|---|---|
| | KEVIN HAGAN, PRESIDENT & CEO | |
| | Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check [ ] if self-employed | PTIN |
|---|---|---|---|---|---|
| | AMY DOSIK | | | | P00890743 |
| | Firm's name ▶ CHERRY BEKAERT ADVISORY LLC | | | Firm's EIN ▶ 88-2730877 | |
| | Firm's address ▶ 1111 METROPOLITAN AVE. STE. 900<br>CHARLOTTE, NC 28204 | | | Phone no. 704-377-1678 | |

May the IRS discuss this return with the preparer shown above? See instructions [X] Yes [ ] No

LHA **For Paperwork Reduction Act Notice, see the separate instructions.**  332001 12-21-23       Form **990** (2023)

SEE SCHEDULE O FOR ORGANIZATION MISSION STATEMENT CONTINUATION

Form 990 (2023)    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

| Part III | Statement of Program Service Accomplishments |

Check if Schedule O contains a response or note to any line in this Part III ........................................................................... [X]

1    Briefly describe the organization's mission:

TO HELP UNDERINSURED PEOPLE WITH LIFE-THREATENING, CHRONIC AND RARE
DISEASES GET THE MEDICATIONS AND TREATMENT THEY NEED BY PAYING FOR
THEIR OUT-OF-POCKET COSTS AND ADVOCATING FOR IMPROVED ACCESS, EQUITY,
AND AFFORDABILITY.

2    Did the organization undertake any significant program services during the year which were not listed on the
     prior Form 990 or 990-EZ? .................................................................................................... ☐ Yes [X] No
     If "Yes," describe these new services on Schedule O.

3    Did the organization cease conducting, or make significant changes in how it conducts, any program services? .............. ☐ Yes [X] No
     If "Yes," describe these changes on Schedule O.

4    Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
     Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and
     revenue, if any, for each program service reported.

4a   (Code: _____ ) (Expenses $    268,960,814. including grants of $    255,391,522. ) (Revenue $ _____ )
AT THE PAN FOUNDATION, WE ENVISION A NATION IN WHICH EVERYONE CAN GET
ACCESS TO THE TREATMENT THEY NEED. WITH THE SUPPORT OF OUR GENEROUS
DONORS AND IN COLLABORATION WITH HEALTHCARE PROVIDERS AND PHARMACIES
THROUGHOUT THE U.S., PAN COVERS THE PREMIUMS, DEDUCTIBLES, CO-PAYMENTS
AND COINSURANCE FOR THOUSANDS OF UNDERINSURED PATIENTS. AS A RESULT,
THESE PATIENTS ARE ABLE TO OBTAIN THE TREATMENTS THEY NEED TO BEST
MANAGE THEIR CONDITIONS AND IMPROVE THEIR QUALITY OF LIFE. IN 2023, THE
PAN FOUNDATION ASSISTED 110,520 PATIENTS, AND PAID OVER 636,000 CLAIMS
FOR PATIENTS' OUT-OF-POCKET COSTS FOR THEIR CRITICAL MEDICATIONS. IN
ADDITION, THE PAN FOUNDATION CONTINUES TO ADVOCATE FOR GREATER
HEALTHCARE ACCESS, EQUITY, AND AFFORDABILITY. THE PAN FOUNDATION
OPERATES UNDER AN ADVISORY OPINION ISSUED BY THE U.S. DEPARTMENT OF

4b   (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c   (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d   Other program services (Describe on Schedule O.)
     (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e   Total program service expenses ▶    268,960,814.

Form **990** (2023)

332002  12-21-23

SEE SCHEDULE O FOR CONTINUATION(S)

Form 990 (2023)  PATIENT ACCESS NETWORK FOUNDATION  20-1184743  Page **3**

| **Part IV** | **Checklist of Required Schedules** | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | X | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions | **2** | X | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | X |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | X |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | X |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | **6** | | X |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | X |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | **8** | | X |
| **9** | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | X |
| **10** | Did the organization, directly or through a related organization, hold assets in donor-restricted endowments or in quasi-endowments? *If "Yes," complete Schedule D, Part V* | **10** | | X |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* | **11a** | X | |
| **b** | Did the organization report an amount for investments - other securities in Part X, line 12, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | X |
| **c** | Did the organization report an amount for investments - program related in Part X, line 13, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | X |
| **d** | Did the organization report an amount for other assets in Part X, line 15, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | | X |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | X | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | X | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | X | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | X |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | X |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | X |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | X |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | X |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | X |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions | **17** | X | |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | X |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | X |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | X |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | X |

332003 12-21-23

Form **990** (2023)

Form 990 (2023)        PATIENT ACCESS NETWORK FOUNDATION                    20-1184743        Page **4**

| **Part IV** | **Checklist of Required Schedules** *(continued)* | | | |
|---|---|---|---|---|
| | | | Yes | No |
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | **22** | X | |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | **23** | X | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | **24a** | | X |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | **25a** | | X |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | **25b** | | X |
| **26** | Did the organization report any amount on Part X, line 5 or 22, for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | **26** | | X |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | **27** | | X |
| **28** | Was the organization a party to a business transaction with one of the following parties? (See the Schedule L, Part IV, instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | **28a** | | X |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | **28b** | | X |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | **28c** | | X |
| **29** | Did the organization receive more than $25,000 in noncash contributions? *If "Yes," complete Schedule M* | **29** | | X |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | **30** | | X |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | X |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | **32** | | X |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | **33** | X | |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | **34** | | X |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | X |
| **b** | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | **36** | | X |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | X |
| **38** | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note:** All Form 990 filers are required to complete Schedule O | **38** | X | |

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** | | | |
|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part V | | | ☐ |
| | | | Yes | No |
| **1a** | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | **1a** | 68 | |
| **b** | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | **1b** | 0 | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | **1c** | X | |

Form **990** (2023)

Form 990 (2023)    PATIENT ACCESS NETWORK FOUNDATION                    20-1184743        Page **5**

**Part V**  **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **2a** Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return ... **2a** | 199 |  |  |  |
| **b** If at least one is reported on line 2a, did the organization file all required federal employment tax returns? ... | **2b** | X |  |  |
| **3a** Did the organization have unrelated business gross income of $1,000 or more during the year? ... | **3a** |  |  | X |
| **b** If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation on Schedule O* ... | **3b** |  |  |  |
| **4a** At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? ... | **4a** |  |  | X |
| **b** If "Yes," enter the name of the foreign country See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). |  |  |  |  |
| **5a** Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? ... | **5a** |  |  | X |
| **b** Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? ... | **5b** |  |  | X |
| **c** If "Yes" to line 5a or 5b, did the organization file Form 8886-T? ... | **5c** |  |  |  |
| **6a** Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? ... | **6a** |  |  | X |
| **b** If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? ... | **6b** |  |  |  |
| **7** **Organizations that may receive deductible contributions under section 170(c).** |  |  |  |  |
| **a** Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | **7a** |  |  | X |
| **b** If "Yes," did the organization notify the donor of the value of the goods or services provided? ... | **7b** |  |  |  |
| **c** Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? ... | **7c** |  |  | X |
| **d** If "Yes," indicate the number of Forms 8282 filed during the year ... **7d** |  |  |  |  |
| **e** Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? ... | **7e** |  |  | X |
| **f** Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? ... | **7f** |  |  | X |
| **g** If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? ... | **7g** |  |  |  |
| **h** If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | **7h** |  |  |  |
| **8** **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? ... | **8** |  |  |  |
| **9** **Sponsoring organizations maintaining donor advised funds.** |  |  |  |  |
| **a** Did the sponsoring organization make any taxable distributions under section 4966? ... | **9a** |  |  |  |
| **b** Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? ... | **9b** |  |  |  |
| **10** **Section 501(c)(7) organizations.** Enter: |  |  |  |  |
| **a** Initiation fees and capital contributions included on Part VIII, line 12 ... **10a** |  |  |  |  |
| **b** Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities ... **10b** |  |  |  |  |
| **11** **Section 501(c)(12) organizations.** Enter: |  |  |  |  |
| **a** Gross income from members or shareholders ... **11a** |  |  |  |  |
| **b** Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) ... **11b** |  |  |  |  |
| **12a** **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** |  |  |  |
| **b** If "Yes," enter the amount of tax-exempt interest received or accrued during the year ... **12b** |  |  |  |  |
| **13** **Section 501(c)(29) qualified nonprofit health insurance issuers.** |  |  |  |  |
| **a** Is the organization licensed to issue qualified health plans in more than one state? ... | **13a** |  |  |  |
| **Note:** See the instructions for additional information the organization must report on Schedule O. |  |  |  |  |
| **b** Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans ... **13b** |  |  |  |  |
| **c** Enter the amount of reserves on hand ... **13c** |  |  |  |  |
| **14a** Did the organization receive any payments for indoor tanning services during the tax year? ... | **14a** |  |  | X |
| **b** If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation on Schedule O* ... | **14b** |  |  |  |
| **15** Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? ... | **15** |  |  | X |
| If "Yes," see the instructions and file Form 4720, Schedule N. |  |  |  |  |
| **16** Is the organization an educational institution subject to the section 4968 excise tax on net investment income? ... | **16** |  |  | X |
| If "Yes," complete Form 4720, Schedule O. |  |  |  |  |
| **17** **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952 or 4953? ... | **17** |  |  |  |
| If "Yes," complete Form 6069. |  |  |  |  |

332005  12-21-23

Form **990** (2023)

Form 990 (2023)    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **6**

| Part VI | Governance, Management, and Disclosure. *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes on Schedule O. See instructions.* |

Check if Schedule O contains a response or note to any line in this Part VI .................................................................... [X]

## Section A. Governing Body and Management

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year ............ **1a** | 14 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain on Schedule O. | | | |
| b | Enter the number of voting members included on line 1a, above, who are independent ............ **1b** | 14 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | | X |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, trustees, or key employees to a management company or other person? | **3** | | X |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** | | X |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | **5** | | X |
| 6 | Did the organization have members or stockholders? | **6** | | X |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | **7a** | | X |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | **7b** | | X |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? | **8a** | X | |
| b | Each committee with authority to act on behalf of the governing body? | **8b** | X | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses on Schedule O* | **9** | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | **10a** | | X |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | X | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | X | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | X | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | **12c** | X | |
| 13 | Did the organization have a written whistleblower policy? | **13** | X | |
| 14 | Did the organization have a written document retention and destruction policy? | **14** | X | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | **15a** | X | |
| b | Other officers or key employees of the organization | **15b** | X | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | X |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | |

## Section C. Disclosure

| | |
|---|---|
| 17 | List the states with which a copy of this Form 990 is required to be filed ▶ AL,AR,CA,DC,FL,GA,HI,IL,KS,KY,MD,MA |
| 18 | Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply. |
| | [X] Own website    [ ] Another's website    [X] Upon request    [ ] Other *(explain on Schedule O)* |
| 19 | Describe on Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year. |
| 20 | State the name, address, and telephone number of the person who possesses the organization's books and records ▶ |
| | SCOTT SCHLENOFF - 202-661-8080 |
| | 1032 15TH ST NW, 413, WASHINGTON, DC  20005 |

SEE SCHEDULE O FOR FULL LIST OF STATES    Form **990** (2023)

Form 990 (2023)    PATIENT ACCESS NETWORK FOUNDATION      20-1184743    Page **7**

## Part VII   Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors

Check if Schedule O contains a response or note to any line in this Part VII .................................................. ☐

**Section A.   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.
- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.
See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week<br>(list any hours for related organizations below line) | (C) Position<br>Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | (D)<br>Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) KEVIN HAGAN<br>PRESIDENT & CEO | 40.00 | | | X | | | | 529,372. | 0. | 38,816. |
| (2) NECHUMAH GETZ<br>CHIEF STRATEGY & OPERATION | 40.00 | | | | X | | | 502,091. | 0. | 14,432. |
| (3) SCOTT SCHLENOFF<br>CFO & TREASURER | 40.00 | | | X | | | | 452,688. | 0. | 37,945. |
| (4) AMY NILES<br>CHIEF ADVOCACY & ENGAGEMENT OFFICER | 40.00 | | | | X | | | 422,914. | 0. | 22,627. |
| (5) LEENA PATEL<br>VICE PRESIDENT OF DEVELOPMENT | 40.00 | | | | | X | | 359,370. | 0. | 28,421. |
| (6) KISHORE BALASUBRAMANYA<br>CHIEF TECHNOLOGY OFFICER | 40.00 | | | | | X | | 347,330. | 0. | 38,816. |
| (7) RICHARD CITRENBAUM<br>VICE PRESIDENT OF OPERATIONS | 40.00 | | | | | X | | 255,000. | 0. | 35,239. |
| (8) ANDRE HARRELL<br>CHIEF GROWTH OFFICER | 40.00 | | | | X | | | 261,423. | 0. | 16,044. |
| (9) KIM BAICH<br>CHIEF DIVERSITY & HEALTH EQUITY OFFI | 40.00 | | | | | X | | 239,717. | 0. | 26,206. |
| (10) MIA HARMON<br>CHIEF COMPLIANCE AND PRIVACY OFFICER | 40.00 | | | | | X | | 231,540. | 0. | 24,752. |
| (11) DEANNA BANKS<br>CHAIR | 3.00 | X | | X | | | | 16,000. | 0. | 0. |
| (12) NANCY MCGEE<br>VICE CHAIR | 3.00 | X | | X | | | | 12,000. | 0. | 0. |
| (13) JENNIFER BROWN<br>DIRECTOR | 3.00 | X | | | | | | 12,000. | 0. | 0. |
| (14) WENDY BULLINGTON<br>DIRECTOR | 3.00 | X | | | | | | 12,000. | 0. | 0. |
| (15) JOSEPH D'AVELLA<br>DIRECTOR | 3.00 | X | | | | | | 12,000. | 0. | 0. |
| (16) MARY FINDLEY<br>DIRECTOR | 3.00 | X | | | | | | 12,000. | 0. | 0. |
| (17) JEFFREY KING<br>DIRECTOR | 3.00 | X | | | | | | 12,000. | 0. | 0. |

Form 990 (2023)  PATIENT ACCESS NETWORK FOUNDATION  20-1184743  Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/ 1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/ 1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (18) NICHOLAS LAROCHELLE | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 12,000. | 0. | 0. |
| (19) ANNA MCKEAN | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 12,000. | 0. | 0. |
| (20) WINFRED PARNELL | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 12,000. | 0. | 0. |
| (21) HOWARD WEINBERG | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 12,000. | 0. | 0. |
| (22) JAMES DUNLOP | 3.00 | | | | | | | | | |
| SECRETARY | | X | | X | | | | 8,000. | 0. | 0. |
| (23) MARY BLUNT | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 8,000. | 0. | 0. |
| (24) CHASE BICE | 3.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Subtotal** | | | | | | | | 3,753,445. | 0. | 283,298. |
| **c Total from continuation sheets to Part VII, Section A** | | | | | | | | 0. | 0. | 0. |
| **d Total (add lines 1b and 1c)** | | | | | | | | 3,753,445. | 0. | 283,298. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▸ **30**

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any *former* officer, director, trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* ............ **3** | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* ............ **4** | X | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* ............ **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| ERNST & YOUNG LLP 200 PLAZA DRIVE, SECAUCUS, NJ 07094 | STRATEGIC CONSULTANT | 5,151,688. |
| AD HOC, 1350 I ST NW SUITE 500, WASHINGTON, DC 20005 | SOFTWARE DEVELOPMENT AND IT SUPPORT | 3,711,386. |
| FAEGRE DRINKER BIDDLE & REATH LLP, 1500 K ST NW SUITE 1100, WASHINGTON, DC 20005 | LEGAL SERVICES | 1,716,604. |
| SIEGEL & GALE LLC 195 BROADWAY, NEW YORK, NY 10007 | STRATEGIC COMMUNICATIONS SERVI | 1,690,966. |
| SS&C HEALTH 13804 COLLECTIONS DRIVE, CHICAGO, IL 60693 | CLAIM ADMINISTRATION | 1,112,245. |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▸ **17**

Form **990** (2023)

332008 12-21-23

Form 990 (2023)   PATIENT ACCESS NETWORK FOUNDATION              20-1184743   Page **9**

| Part VIII | Statement of Revenue |

Check if Schedule O contains a response or note to any line in this Part VIII .......................... ☐

| | | | **(A)** Total revenue | **(B)** Related or exempt function revenue | **(C)** Unrelated business revenue | **(D)** Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1 a** Federated campaigns | **1a** | | | | |
| | **b** Membership dues | **1b** | | | | |
| | **c** Fundraising events | **1c** | | | | |
| | **d** Related organizations | **1d** | | | | |
| | **e** Government grants (contributions) | **1e** | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 364,186,196. | | | |
| | **g** Noncash contributions included in lines 1a-1f | **1g** $ | | | | |
| | **h Total.** Add lines 1a-1f ....................... ▶ | | 364186196. | | | |
| **Program Service Revenue** | **2 a** | **Business Code** | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** | | | | | |
| | **e** | | | | | |
| | **f** All other program service revenue ............. | | | | | |
| | **g Total.** Add lines 2a-2f ....................... ▶ | | | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) ....................... ▶ | | 14,513,052. | | | 14513052. |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | **5** Royalties ....................... ▶ | | | | | |
| | | **(i) Real** | **(ii) Personal** | | | | |
| | **6 a** Gross rents | **6a** | 62,428. | | | | |
| | **b** Less: rental expenses | **6b** | 0. | | | | |
| | **c** Rental income or (loss) | **6c** | 62,428. | | | | |
| | **d** Net rental income or (loss) ....................... ▶ | | 62,428. | | | 62,428. |
| | | **(i) Securities** | **(ii) Other** | | | | |
| | **7 a** Gross amount from sales of assets other than inventory | **7a** | 450,508,103. | | | | |
| | **b** Less: cost or other basis and sales expenses | **7b** | 454,840,729. | 4,679. | | | |
| | **c** Gain or (loss) | **7c** | -4,332,626. | -4,679. | | | |
| | **d** Net gain or (loss) ....................... ▶ | | -4,337,305. | | | -4337305. |
| | **8 a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 ....................... | **8a** | | | | |
| | **b** Less: direct expenses ....................... | **8b** | | | | |
| | **c** Net income or (loss) from fundraising events ▶ | | | | | |
| | **9 a** Gross income from gaming activities. See Part IV, line 19 ....................... | **9a** | | | | |
| | **b** Less: direct expenses ....................... | **9b** | | | | |
| | **c** Net income or (loss) from gaming activities ▶ | | | | | |
| | **10 a** Gross sales of inventory, less returns and allowances ....................... | **10a** | | | | |
| | **b** Less: cost of goods sold ....................... | **10b** | | | | |
| | **c** Net income or (loss) from sales of inventory ▶ | | | | | |
| **Miscellaneous Revenue** | **11 a** | **Business Code** | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** All other revenue ....................... | | | | | |
| | **e Total.** Add lines 11a-11d ....................... ▶ | | | | | |
| | **12 Total revenue.** See instructions ............... ▶ | | 374424371. | 0. | 0. | 10238175. |

332009  12-21-23                                                                 Form **990** (2023)

Form 990 (2023)    PATIENT ACCESS NETWORK FOUNDATION                    20-1184743    Page **10**

| Part IX | Statement of Functional Expenses |
|---|---|

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX ............................................. ☐

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | | | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 | 255,391,522. | 255,391,522. | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | 2,907,962. | 1,267,137. | 1,363,358. | 277,467. |
| **6** Compensation not included above to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages | 8,129,379. | 3,187,160. | 4,431,116. | 511,103. |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 407,986. | 113,591. | 276,209. | 18,186. |
| **9** Other employee benefits | 746,959. | 317,401. | 381,931. | 47,627. |
| **10** Payroll taxes | 725,386. | 294,322. | 379,590. | 51,474. |
| **11** Fees for services (nonemployees): | | | | |
| **a** Management | | | | |
| **b** Legal | 1,992,842. | | 1,992,842. | |
| **c** Accounting | 472,339. | | 472,339. | |
| **d** Lobbying | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | 577,705. | | | 577,705. |
| **f** Investment management fees | 276,333. | | 276,333. | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A), amount, list line 11g expenses on Sch O.) | 12,893,410. | 7,030,824. | 3,546,641. | 2,315,945. |
| **12** Advertising and promotion | | | | |
| **13** Office expenses | 383,825. | 58,060. | 316,199. | 9,566. |
| **14** Information technology | 1,109,916. | 615,182. | 493,004. | 1,730. |
| **15** Royalties | | | | |
| **16** Occupancy | 414,442. | | 414,442. | |
| **17** Travel | 430,500. | 72,061. | 323,455. | 34,984. |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings | 330,172. | 13,777. | 311,944. | 4,451. |
| **20** Interest | | | | |
| **21** Payments to affiliates | | | | |
| **22** Depreciation, depletion, and amortization | 387,032. | 375,000. | 12,032. | |
| **23** Insurance | 330,651. | | 330,651. | |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses on line 24e. If line 24e amount exceeds 10% of line 25, column (A), amount, list line 24e expenses on Schedule O.) | | | | |
| **a** ALLIANCE EXPENSES | 224,777. | 224,777. | | |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 288,133,138. | 268,960,814. | 15,322,086. | 3,850,238. |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ☐ if following SOP 98-2 (ASC 958-720) | | | | |

332010 12-21-23

Form **990** (2023)

Form 990 (2023)  PATIENT ACCESS NETWORK FOUNDATION  20-1184743  Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X ........................................ ☐

| | | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash - non-interest-bearing | | **1** | |
| | **2** | Savings and temporary cash investments | 110,719,572. | **2** | 208,642,205. |
| | **3** | Pledges and grants receivable, net | 12,959,999. | **3** | 58,339,999. |
| | **4** | Accounts receivable, net | | **4** | |
| | **5** | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | **6** | |
| | **7** | Notes and loans receivable, net | | **7** | |
| | **8** | Inventories for sale or use | | **8** | |
| | **9** | Prepaid expenses and deferred charges | 1,680,327. | **9** | 1,011,968. |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D ... **10a** 20,125,926. | | | |
| | **b** | Less: accumulated depreciation ........ **10b** 11,011,381. | 6,987,864. | **10c** | 9,114,545. |
| | **11** | Investments - publicly traded securities | 270,324,530. | **11** | 189,307,506. |
| | **12** | Investments - other securities. See Part IV, line 11 | | **12** | |
| | **13** | Investments - program-related. See Part IV, line 11 | | **13** | |
| | **14** | Intangible assets | | **14** | |
| | **15** | Other assets. See Part IV, line 11 | 2,519,369. | **15** | 2,151,853. |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 33) | 405,191,661. | **16** | 468,568,076. |
| **Liabilities** | **17** | Accounts payable and accrued expenses | 12,484,058. | **17** | 9,898,236. |
| | **18** | Grants payable | | **18** | |
| | **19** | Deferred revenue | | **19** | |
| | **20** | Tax-exempt bond liabilities | | **20** | |
| | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D | | **21** | |
| | **22** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | **22** | |
| | **23** | Secured mortgages and notes payable to unrelated third parties | | **23** | |
| | **24** | Unsecured notes and loans payable to unrelated third parties | | **24** | |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 125,282,494. | **25** | 97,481,454. |
| | **26** | **Total liabilities.** Add lines 17 through 25 | 137,766,552. | **26** | 107,379,690. |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here** ☒ **and complete lines 27, 28, 32, and 33.** | | | |
| | **27** | Net assets without donor restrictions | 20,867,456. | **27** | 32,903,735. |
| | **28** | Net assets with donor restrictions | 246,557,653. | **28** | 328,284,651. |
| | | **Organizations that do not follow FASB ASC 958, check here** ☐ **and complete lines 29 through 33.** | | | |
| | **29** | Capital stock or trust principal, or current funds | | **29** | |
| | **30** | Paid-in or capital surplus, or land, building, or equipment fund | | **30** | |
| | **31** | Retained earnings, endowment, accumulated income, or other funds | | **31** | |
| | **32** | Total net assets or fund balances | 267,425,109. | **32** | 361,188,386. |
| | **33** | Total liabilities and net assets/fund balances | 405,191,661. | **33** | 468,568,076. |

Form **990** (2023)

332011 12-21-23

Form 990 (2023)      PATIENT ACCESS NETWORK FOUNDATION                    20-1184743      Page **12**

| **Part XI** | **Reconciliation of Net Assets** | | |
|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XI ................................................... ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) ................................................ | **1** | 374,424,371. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) .............................................. | **2** | 288,133,138. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 .................................................... | **3** | 86,291,233. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) .......... | **4** | 267,425,109. |
| 5 | Net unrealized gains (losses) on investments ............................................................. | **5** | 7,472,044. |
| 6 | Donated services and use of facilities ...................................................................... | **6** | |
| 7 | Investment expenses ........................................................................................ | **7** | |
| 8 | Prior period adjustments .................................................................................... | **8** | |
| 9 | Other changes in net assets or fund balances (explain on Schedule O) ................................. | **9** | 0. |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) ..................................................................................................... | **10** | 361,188,386. |

| **Part XII** | **Financial Statements and Reporting** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII ................................................... ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990:  ☐ Cash  ☒ Accrual  ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? ............... | **2a** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? ............................. | **2b** | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | ☒ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? .................. | **2c** | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain on Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? ........................................................................ | **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why on Schedule O and describe any steps taken to undergo such audits .................... | **3b** | | |

Form **990** (2023)

332012 12-21-23

**SCHEDULE A**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**Attach to Form 990 or Form 990-EZ.**
**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

# 2023

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

| **Part I** | **Reason for Public Charity Status.** (All organizations must complete this part.) See instructions. |
|---|---|

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **section 170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land-grant college of agriculture (see instructions). Enter the name, city, and state of the college or university: _____

10 ☐ An organization that normally receives (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions, subject to certain exceptions; and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations ........................................................................ ☐

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1-10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? Yes | No | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| **Total** | | | | | | |

LHA **For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**    332021  12-21-23    **Schedule A (Form 990) 2023**

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

| **Part II** | Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi) |
|---|---|

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 434035433 | 439121644 | 297101560 | 277827701 | 364186196 | 1812272534. |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 **Total.** Add lines 1 through 3 | 434035433 | 439121644 | 297101560 | 277827701 | 364186196 | 1812272534. |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 1297936295. |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | 514336239 |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | 434035433 | 439121644 | 297101560 | 277827701 | 364186196 | 1812272534. |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | 13565060. | 9824200. | 9266883. | 7890347. | 14575480. | 55121970. |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | 1867394504. |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | **12** | |
| 13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** | | | | | | ☐ |

## Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| 14 Public support percentage for 2023 (line 6, column (f), divided by line 11, column (f)) | | **14** | 27.54 % |
| 15 Public support percentage from 2022 Schedule A, Part II, line 14 | | **15** | 25.82 % |

**16a 33 1/3% support test - 2023.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ☐

**b 33 1/3% support test - 2022.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ☐

**17a 10% -facts-and-circumstances test - 2023.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization ☒

**b 10% -facts-and-circumstances test - 2022.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization ☐

**18 Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ☐

**Schedule A (Form 990) 2023**

332022 12-21-23

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **3**

| **Part III** | Support Schedule for Organizations Described in Section 509(a)(2) |
|---|---|

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6 Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8  Public support.** (Subtract line 7c from line 6.) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| **13  Total support.** (Add lines 9, 10c, 11, and 12.) | | | | | | |

**14  First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ............................................................................................................................................................. ☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15**  Public support percentage for 2023 (line 8, column (f), divided by line 13, column (f)) | **15** | % |
| **16**  Public support percentage from 2022 Schedule A, Part III, line 15 | **16** | % |

## Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17**  Investment income percentage for **2023** (line 10c, column (f), divided by line 13, column (f)) | **17** | % |
| **18**  Investment income percentage from **2022** Schedule A, Part III, line 17 | **18** | % |

**19a 33 1/3% support tests - 2023.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ..................... ☐

**b 33 1/3% support tests - 2022.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ..................... ☐

**20  Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ....................... ☐

332023  12-21-23    **Schedule A (Form 990) 2023**

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **4**

| **Part IV** | **Supporting Organizations** |
|---|---|

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, Part I, complete Sections A and B. If you checked box 12b, Part I, complete Sections A and C. If you checked box 12c, Part I, complete Sections A, D, and E. If you checked box 12d, Part I, complete Sections A and D, and complete Part V.)

## Section A. All Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain. | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2). | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? If "Yes," answer lines 3b and 3c below. | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? If "Yes," describe in **Part VI** when and how the organization made the determination. | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use. | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? If "Yes," and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below. | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations. | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes. | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document). | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? If "Yes," provide detail in **Part VI.** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (as defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? If "Yes," complete Part I of Schedule L (Form 990). | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? If "Yes," complete Part I of Schedule L (Form 990). | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? If "Yes," provide detail in **Part VI.** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? If "Yes," provide detail in **Part VI.** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? If "Yes," provide detail in **Part VI.** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? If "Yes," answer line 10b below. | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? (Use Schedule C, Form 4720, to determine whether the organization had excess business holdings.) | **10b** | | |

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743   Page **5**

**Part IV** | **Supporting Organizations** *(continued)*

| | | Yes | No |
|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and | | |
| | 11c below, the governing body of a supported organization? | **11a** | |
| **b** | A family member of a person described on line 11a above? | **11b** | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to line 11a, 11b, or 11c, provide* | | |
| | *detail in* **Part VI.** | **11c** | |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Did the governing body, members of the governing body, officers acting in their official capacity, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's officers, directors, or trustees at all times during the tax year? *If "No," describe in* **Part VI** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove officers, directors, or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* **Part VI** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization.* | **2** | |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* **Part VI** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | |

**Section D. All Type III Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* **Part VI** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | |
| **3** | By reason of the relationship described on line 2, above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* **Part VI** *the role the organization's supported organizations played in this regard.* | **3** | |

**Section E. Type III Functionally Integrated Supporting Organizations**

| | | | | |
|---|---|---|---|---|
| **1** | *Check the box next to the method that the organization used to satisfy the Integral Part Test during the year* **(see instructions).** | | | |
| **a** | ☐ The organization satisfied the Activities Test. *Complete* **line 2** *below.* | | | |
| **b** | ☐ The organization is the parent of each of its supported organizations. *Complete* **line 3** *below.* | | | |
| **c** | ☐ The organization supported a governmental entity. *Describe in* **Part VI** *how you supported a governmental entity (see instructions).* | | | |

| | | Yes | No |
|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* **Part VI** **identify those supported organizations and explain** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | |
| **b** | Did the activities described on line 2a, above, constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* **Part VI** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *If "Yes" or "No" provide details in* **Part VI.** | **3a** | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in* **Part VI** *the role played by the organization in this regard.* | **3b** | |

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **6**

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations |
|---|---|

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 ( *explain in* **Part VI**). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Net short-term capital gain | **1** | | |
| **2** Recoveries of prior-year distributions | **2** | | |
| **3** Other gross income (see instructions) | **3** | | |
| **4** Add lines 1 through 3. | **4** | | |
| **5** Depreciation and depletion | **5** | | |
| **6** Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** Other expenses (see instructions) | **7** | | |
| **8** **Adjusted Net Income** (subtract lines 5, 6, and 7 from line 4) | **8** | | |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | | | |
| **a** Average monthly value of securities | **1a** | | |
| **b** Average monthly cash balances | **1b** | | |
| **c** Fair market value of other non-exempt-use assets | **1c** | | |
| **d** **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** **Discount** claimed for blockage or other factors (*explain in detail in* **Part VI**): | | | |
| **2** Acquisition indebtedness applicable to non-exempt-use assets | **2** | | |
| **3** Subtract line 2 from line 1d. | **3** | | |
| **4** Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** Multiply line 5 by 0.035. | **6** | | |
| **7** Recoveries of prior-year distributions | **7** | | |
| **8** **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| Section C - Distributable Amount | | | Current Year |
|---|---|---|---|
| **1** Adjusted net income for prior year (from Section A, line 8, column A) | **1** | | |
| **2** Enter 0.85 of line 1. | **2** | | |
| **3** Minimum asset amount for prior year (from Section B, line 8, column A) | **3** | | |
| **4** Enter greater of line 2 or line 3. | **4** | | |
| **5** Income tax imposed in prior year | **5** | | |
| **6** **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions). | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally integrated Type III supporting organization (see instructions).

**Schedule A (Form 990) 2023**

332026  12-21-23

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **7**

| **Part V** | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations *(continued)* | | | |
|---|---|---|---|---|

**Section D - Distributions** | | | | **Current Year** |

| | | | | |
|---|---|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | 1 | | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | 2 | | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | 3 | | |
| 4 | Amounts paid to acquire exempt-use assets | 4 | | |
| 5 | Qualified set-aside amounts (prior IRS approval required - *provide details in* **Part VI**) | 5 | | |
| 6 | Other distributions (*describe in* **Part VI**). See instructions. | 6 | | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | 7 | | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (*provide details in* **Part VI**). See instructions. | 8 | | |
| 9 | Distributable amount for 2023 from Section C, line 6 | 9 | | |
| 10 | Line 8 amount divided by line 9 amount | 10 | | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** Excess Distributions | **(ii)** Underdistributions Pre-2023 | **(iii)** Distributable Amount for 2023 |
|---|---|---|---|
| 1 Distributable amount for 2023 from Section C, line 6 | | | |
| 2 Underdistributions, if any, for years prior to 2023 (reasonable cause required - *explain in* **Part VI**). See instructions. | | | |
| 3 Excess distributions carryover, if any, to 2023 | | | |
| **a** From 2018 | | | |
| **b** From 2019 | | | |
| **c** From 2020 | | | |
| **d** From 2021 | | | |
| **e** From 2022 | | | |
| **f** **Total** of lines 3a through 3e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2023 distributable amount | | | |
| **i** Carryover from 2018 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| 4 Distributions for 2023 from Section D, line 7:                $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2023 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| 5 Remaining underdistributions for years prior to 2023, if any. Subtract lines 3g and 4a from line 2. For result greater than zero, *explain in* **Part VI**. See instructions. | | | |
| 6 Remaining underdistributions for 2023. Subtract lines 3h and 4b from line 1. For result greater than zero, *explain in* **Part VI**. See instructions. | | | |
| 7 **Excess distributions carryover to 2024.** Add lines 3j and 4c. | | | |
| 8 Breakdown of line 7: | | | |
| **a** Excess from 2019 | | | |
| **b** Excess from 2020 | | | |
| **c** Excess from 2021 | | | |
| **d** Excess from 2022 | | | |
| **e** Excess from 2023 | | | |

**Schedule A (Form 990) 2023**

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |

PART II, SECTION C, LINE 17A, FACTS AND CIRCUMSTANCES TEST:

1. THE FOUNDATION'S PUBLIC SUPPORT PERCENTAGE IS AT LEAST 10%.

2. THE FOUNDATION MAINTAINS A CONTINUOUS AND BONA FIDE PROGRAM FOR

SOLICITATION OF FUNDS FROM THE GENERAL PUBLIC.

3. AT 27.54% THE FOUNDATION'S PUBLIC SUPPORT PERCENTAGE FOR 2023 IS WELL

ABOVE THE MINIMUM REQUIREMENT OF 10% AND NARROWLY FALLS SHORT OF THE

NORMAL REQUIREMENT OF 33 1/3%.

4. THE FOUNDATION NORMALLY RECEIVES SUPPORT FROM A LARGE NUMBER OF

UNRELATED DONORS. DURING THE PERIOD 2019-2023, THE FOUNDATION RECEIVED

SUPPORT FROM 30+ CORPORATE DONORS AND WELL OVER 1,000 INDIVIDUAL DONORS.

5. THE FOUNDATION HAS A GOVERNING BODY WHICH REPRESENTS THE BROAD

INTERESTS OF THE PUBLIC. THE BOARD OF DIRECTORS INCLUDES INDIVIDUALS FROM

THE ACADEMIC, NONPROFIT, BUSINESS, AND MEDICAL COMMUNITIES AS WELL AS

ATTORNEYS AND CPAS.

6. THE FOUNDATION'S PROGRAMS PROVIDE GREAT BENEFIT TO THE PUBLIC. SINCE

INCEPTION, THE FOUNDATION HAS PROVIDED OVER $4 BILLION IN MEDICAL SUPPORT

ASSISTANCE TO OVER 1 MILLION FINANCIALLY NEEDY PATIENTS WITH SERIOUS,

CHRONIC AND RARE DISEASES PAY FOR THEIR OUT-OF-POCKET MEDICATION COSTS.

7. THE FOUNDATION PROVIDES OTHER BENEFITS DIRECTLY TO THE PUBLIC,

INCLUDING:

- EDUCATES PATIENTS ABOUT COMPLEX HEALTHCARE TOPICS TO HELP THEM NAVIGATE

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |
|---|---|

CARE, SUCH AS MEDICARE PART D, THE LOW-INCOME SUBSIDY PROGRAM, COPAY

ACCUMULATORS, AND MORE.


- PROVIDES TRANSPORTATION FINANCIAL ASSISTANCE TO HELP ELIGIBLE PATIENTS

GET TO AND FROM THEIR MEDICAL APPOINTMENTS AND PHARMACIES.


- PROVIDES TWO MENTAL HEALTH FINANCIAL ASSISTANCE PROGRAMS TO HELP

FINANCIALLY NEEDY PATIENTS PAY FOR THEIR OUT-OF-POCKET MEDICATION COSTS

FOR BIPOLAR DISORDER AND SCHIZOPHRENIA.


- OPERATES FUNDFINDER, A DIGITAL WEBSITE AND APPLICATION THAT ALLOWS

PATIENTS AND HEALTHCARE PROFESSIONALS TO RAPIDLY DETERMINE THE

AVAILABILITY OF FINANCIAL ASSISTANCE FROM ANY PATIENT ASSISTANCE

FOUNDATION AND PROVIDES A DIRECTORY OF PATIENT SUPPORT ORGANIZATIONS.


- OFFERS PATIENTS REFERRALS TO OTHER FINANCIAL RESOURCES WHEN THEY DO NOT

QUALIFY FOR ASSISTANCE AT THE PAN FOUNDATION.


- MAINTAINS A NETWORK OF ALLIANCE PARTNERSHIPS WITH NATIONAL PATIENT

SUPPORT ORGANIZATIONS WHO PROVIDE DISEASE-RELATED EDUCATION AND SUPPORT TO

PATIENTS AND CAREGIVERS.


- EDUCATES HEALTHCARE PROFESSIONALS ON NAVIGATING PATIENT ASSISTANCE AND

SAFETY NET RESOURCES TO HELP ENROLL THEIR PATIENTS IN RELEVANT ASSISTANCE

PROGRAMS.


- CONDUCTS RESEARCH AND POLLING ON TOPICS RELATED HEALTHCARE ACCESS AND

Schedule A (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **8**

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.) |

AFFORDABILITY, INCLUDING BUT NOT LIMITED TO SOCIAL DETERMINANTS OF HEALTH,

MENTAL HEALTH, MEDICATION ADHERENCE, AND OTHER ACCESS ISSUES.


- DEVELOPS RESOURCES TO EDUCATE POLICYMAKERS AND OTHER STAKEHOLDERS ABOUT

KEY HEALTHCARE ACCESS ISSUES.

# Schedule B
(Form 990)

Department of the Treasury
Internal Revenue Service

# Schedule of Contributors

**Attach to Form 990, 990-EZ, or 990-PF.**
**Go to www.irs.gov/Form990 for the latest information.**

OMB No. 1545-0047

# 2023

Name of the organization

**PATIENT ACCESS NETWORK FOUNDATION**

Employer identification number

20-1184743

**Organization type** (check one):

| Filers of: | Section: |
|---|---|
| Form 990 or 990-EZ | [X] 501(c)( 3 ) (enter number) organization |
| | [ ] 4947(a)(1) nonexempt charitable trust **not** treated as a private foundation |
| | [ ] 527 political organization |
| Form 990-PF | [ ] 501(c)(3) exempt private foundation |
| | [ ] 4947(a)(1) nonexempt charitable trust treated as a private foundation |
| | [ ] 501(c)(3) taxable private foundation |

Check if your organization is covered by the **General Rule** or a **Special Rule.**

**Note:** Only a section 501(c)(7), (8), or (10) organization can check boxes for both the General Rule and a Special Rule. See instructions.

**General Rule**

[X] For an organization filing Form 990, 990-EZ, or 990-PF that received, during the year, contributions totaling $5,000 or more (in money or property) from any one contributor. Complete Parts I and II. See instructions for determining a contributor's total contributions.

**Special Rules**

[ ] For an organization described in section 501(c)(3) filing Form 990 or 990-EZ that met the 33 1/3% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), that checked Schedule A (Form 990), Part II, line 13, 16a, or 16b, and that received from any one contributor, during the year, total contributions of the greater of **(1)** $5,000; or **(2)** 2% of the amount on (i) Form 990, Part VIII, line 1h; or (ii) Form 990-EZ, line 1. Complete Parts I and II.

[ ] For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, total contributions of more than $1,000 *exclusively* for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. Complete Parts I (entering "N/A" in column (b) instead of the contributor name and address), II, and III.

[ ] For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, contributions *exclusively* for religious, charitable, etc., purposes, but no such contributions totaled more than $1,000. If this box is checked, enter here the total contributions that were received during the year for an *exclusively* religious, charitable, etc., purpose. Don't complete any of the parts unless the **General Rule** applies to this organization because it received *nonexclusively* religious, charitable, etc., contributions totaling $5,000 or more during the year  ................................................. $ _____

**Caution:** An organization that isn't covered by the General Rule and/or the Special Rules doesn't file Schedule B (Form 990), but it **must** answer "No" on Part IV, line 2, of its Form 990; or check the box on line H of its Form 990-EZ or on its Form 990-PF, Part I, line 2, to certify that it doesn't meet the filing requirements of Schedule B (Form 990).

**For Paperwork Reduction Act Notice, see the instructions for Form 990, 990-EZ, or 990-PF.**

**Schedule B (Form 990) (2023)**

Schedule B (Form 990) (2023)                                                                 Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**    **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 1 | | $ 99,092,749. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 2 | | $ 300,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 3 | | $ 20,000,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 4 | | $ 5,300,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 5 | | $ 1,327,500. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 6 | | $ 5,282. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |

323452  12-26-23                                                       Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                                        Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**    Contributors (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 7 | | $ 691,666. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 8 | | $ 55,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 9 | | $ 6,700. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 10 | | $ 150,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 11 | | $ 7,500,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 12 | | $ 2,220,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |

Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                                                          Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**    **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 13 | | $ 38,300,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 14 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 15 | | $ 100,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 16 | | $ 10,750. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 17 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 18 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |

Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**    **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 19 | | $ 4,050,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 20 | | $ 128,925. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 21 | | $ 5,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 22 | | $ 200,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 23 | | $ 10,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |
| 24 | | $ 7,000,000. | Person [X] Payroll [ ] Noncash [ ] (Complete Part II for noncash contributions.) |

Schedule B (Form 990) (2023)    Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**    **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 25 | | $ 6,813. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 26 | | $ 400,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 27 | | $ 100,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 28 | | $ 36,059,677. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 29 | | $ 2,046,484. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |
| 30 | | $ 5,000. | Person ☒ Payroll ☐ Noncash ☐ (Complete Part II for noncash contributions.) |

323452  12-26-23    Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                                                      Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**   Contributors (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 31 | | $ 75,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 32 | | $ 5,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 33 | | $ 76,750,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 34 | | $ 5,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 35 | | $ 98,185. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |
| 36 | | $ 30,000,000. | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II for noncash contributions.) |

323452  12-26-23                                                                           Schedule B (Form 990) (2023)

Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**   **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a)<br>No. | (b)<br>Name, address, and ZIP + 4 | (c)<br>Total contributions | (d)<br>Type of contribution |
|---|---|---|---|
| 37 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |
| 38 | | $ 100,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |
| 39 | | $ 32,622. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |
| 40 | | $ 6,245. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |
| 41 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |
| 42 | | $ 4,250,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for<br>noncash contributions.) |

Schedule B (Form 990) (2023)

Page **2**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**   **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 43 | | $ 25,366,769. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 44 | | $ 5,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 45 | | $ 10,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 46 | | $ 20,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| 47 | | $ 1,675,000. | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |
| | | $ | Person ☐<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II for noncash contributions.) |

323452  12-26-23

Schedule B (Form 990) (2023)                                                                                                    Page **3**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part II**  **Noncash Property**  (see instructions). Use duplicate copies of Part II if additional space is needed.

| (a) No. from Part I | (b) Description of noncash property given | (c) FMV (or estimate) (See instructions.) | (d) Date received |
|---|---|---|---|
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |
| _____ | | $ _____ | _____ |

323453  12-26-23                                                                                        Schedule B (Form 990) (2023)

Schedule B (Form 990) (2023)                                                                                              Page **4**

| Name of organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part III** Exclusively religious, charitable, etc., contributions to organizations described in section 501(c)(7), (8), or (10) that total more than $1,000 for the year from any one contributor. Complete columns **(a)** through **(e)** and the following line entry. For organizations completing Part III, enter the total of exclusively religious, charitable, etc., contributions of **$1,000 or less** for the year. (Enter this info. once.) ▶ $_____

Use duplicate copies of Part III if additional space is needed.

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

323454  12-26-23                                                                                      Schedule B (Form 990) (2023)

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

**Complete if the organization answered "Yes" on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
Attach to Form 990.
Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I**  **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the
organization answered "Yes" on Form 990, Part IV, line 6.

| | | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year ............................. | | |
| 2 | Aggregate value of contributions to (during year) ............ | | |
| 3 | Aggregate value of grants from (during year) ................ | | |
| 4 | Aggregate value at end of year ......................... | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds
are the organization's property, subject to the organization's exclusive legal control? .............................................. ☐ Yes ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only
for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring
impermissible private benefit? ................................................................................................ ☐ Yes ☐ No

**Part II**  **Conservation Easements.** Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).
   ☐ Preservation of land for public use (for example, recreation or education)   ☐ Preservation of a historically important land area
   ☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
   ☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last
day of the tax year.

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements ..................................................... | 2a | |
| b | Total acreage restricted by conservation easements .......................................... | 2b | |
| c | Number of conservation easements on a certified historic structure included on line 2a .......... | 2c | |
| d | Number of conservation easements included on line 2c acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax
year _____

4  Number of states where property subject to conservation easement is located _____

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? ................................................. ☐ Yes ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
_____

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
$ _____

8  Does each conservation easement reported on line 2d above satisfy the requirements of section 170(h)(4)(B)(i)
and section 170(h)(4)(B)(ii)? ................................................................................... ☐ Yes ☐ No

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement and
balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the
organization's accounting for conservation easements.

**Part III**  **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works
of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public
service, provide in Part XIII the text of the footnote to its financial statements that describes these items.

b  If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of
art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service,
provide the following amounts relating to these items.

  **(i)** Revenue included on Form 990, Part VIII, line 1 ....................................................... $ _____
  **(ii)** Assets included in Form 990, Part X ............................................................. $ _____

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide
the following amounts required to be reported under FASB ASC 958 relating to these items:

a  Revenue included on Form 990, Part VIII, line 1 ........................................................... $ _____
b  Assets included in Form 990, Part X ..................................................................... $ _____

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.**         **Schedule D (Form 990) 2023**

332051 09-28-23

Schedule D (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that make significant use of its
collection items (check all that apply).

**a** ☐ Public exhibition                   **d** ☐ Loan or exchange program

**b** ☐ Scholarly research                  **e** ☐ Other _____

**c** ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets
to be sold to raise funds rather than to be maintained as part of the organization's collection? ............................... ☐ **Yes** ☐ **No**

| Part IV | Escrow and Custodial Arrangements. Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21. |
|---|---|

**1a** Is the organization an agent, trustee, custodian, or other intermediary for contributions or other assets not included
on Form 990, Part X? ...................................................................................................................................... ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance | **1c** | |
| **d** Additions during the year | **1d** | |
| **e** Distributions during the year | **1e** | |
| **f** Ending balance | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? ............... ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII ......................... ☐

| Part V | Endowment Funds. Complete if the organization answered "Yes" on Form 990, Part IV, line 10. |
|---|---|

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance | | | | | |
| **b** Contributions | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships | | | | | |
| **e** Other expenditures for facilities and programs | | | | | |
| **f** Administrative expenses | | | | | |
| **g** End of year balance | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment _____ %

**b** Permanent endowment _____ %

**c** Term endowment _____ %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the
organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations? | **3a(i)** | | |
| **(ii)** Related organizations? | **3a(ii)** | | |
| **b** If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| Part VI | Land, Buildings, and Equipment. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land | | | | |
| **b** Buildings | | | | |
| **c** Leasehold improvements | | 584,071. | 584,071. | 0. |
| **d** Equipment | | | | |
| **e** Other | | 19,541,855. | 10,427,310. | 9,114,545. |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, line 10c, column (B))* ..................... | | | | 9,114,545. |

**Schedule D (Form 990) 2023**

332052 09-28-23

Schedule D (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION              20-1184743    Page **3**

| **Part VII** | **Investments - Other Securities** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives ......................................... | | |
| **(2)** Closely held equity interests .................................. | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Col. (b) must equal Form 990, Part X, line 12, col. (B)) | | |

| **Part VIII** | **Investments - Program Related.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| **(a)** Description of investment | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** (Col. (b) must equal Form 990, Part X, line 13, col. (B)) | | |

| **Part IX** | **Other Assets** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| **(a)** Description | **(b)** Book value |
|---|---|
| **(1)** | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** (Column (b) must equal Form 990, Part X, line 15, col. (B)) .................................................. | |

| **Part X** | **Other Liabilities** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** | **(a)** Description of liability | **(b)** Book value |
|---|---|---|
| (1) | Federal income taxes | |
| (2) | CO-PAYMENT ASSISTANCE OBLIGATION | 95,303,051. |
| (3) | OPERATING LEASE LIABILITY | 2,178,403. |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Column (b) must equal Form 990, Part X, line 25, col. (B)) ..................................................... | | 97,481,454. |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FASB ASC 740. Check here if the text of the footnote has been provided in Part XIII  ... ☒

Schedule D (Form 990) 2023

332053  09-28-23

Schedule D (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION        20-1184743   Page **4**

**Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return**

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | **1** | 381,624,761. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | **2a** | 7,472,044. | | |
| b | Donated services and use of facilities | **2b** | | | |
| c | Recoveries of prior year grants | **2c** | | | |
| d | Other (Describe in Part XIII.) | **2d** | | | |
| e | Add lines **2a** through **2d** | | | **2e** | 7,472,044. |
| 3 | Subtract line **2e** from line **1** | | | **3** | 374,152,717. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | 276,333. | | |
| b | Other (Describe in Part XIII.) | **4b** | -4,679. | | |
| c | Add lines **4a** and **4b** | | | **4c** | 271,654. |
| 5 | Total revenue. Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 12.)* | | | **5** | 374,424,371. |

**Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return**

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | **1** | 287,861,484. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | **2a** | | | |
| b | Prior year adjustments | **2b** | | | |
| c | Other losses | **2c** | | | |
| d | Other (Describe in Part XIII.) | **2d** | 4,679. | | |
| e | Add lines **2a** through **2d** | | | **2e** | 4,679. |
| 3 | Subtract line **2e** from line **1** | | | **3** | 287,856,805. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | 276,333. | | |
| b | Other (Describe in Part XIII.) | **4b** | | | |
| c | Add lines **4a** and **4b** | | | **4c** | 276,333. |
| 5 | Total expenses. Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 18.)* | | | **5** | 288,133,138. |

**Part XIII** | **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

PART X, LINE 2:

THE FOUNDATION IS A NON-PROFIT, TAX-EXEMPT ORGANIZATION UNDER SECTION

501(C)(3) OF THE INTERNAL REVENUE CODE. MANAGEMENT BELIEVES THE FOUNDATION

CONTINUES TO SATISFY THE REQUIREMENTS OF A TAX-EXEMPT ORGANIZATION AND IS

NOT SUBJECT TO TAX. ACCORDINGLY, NO PROVISION FOR INCOME TAXES HAS BEEN

REFLECTED IN THE ACCOMPANYING FINANCIAL STATEMENTS.


MANAGEMENT HAS EVALUATED THE EFFECT OF FASB GUIDANCE ON ACCOUNTING FOR

UNCERTAINTY IN INCOME TAXES. THE GUIDANCE CLARIFIES THE ACCOUNTING FOR

UNCERTAINTY IN INCOME TAXES RECOGNIZED IN AN ENTITY'S FINANCIAL STATEMENTS

BY PRESCRIBING A RECOGNITION THRESHOLD AND MEASUREMENT ATTRIBUTE FOR THE

FINANCIAL STATEMENT RECOGNITION AND MEASUREMENT OF A TAX POSITION TAKEN OR

Schedule D (Form 990) 2023     PATIENT ACCESS NETWORK FOUNDATION     20-1184743   Page **5**

| **Part XIII** | **Supplemental Information** *(continued)* |

EXPECTED TO BE TAKEN IN A TAX RETURN. THE FOUNDATION'S POLICY IS TO RECORD

A LIABILITY FOR ANY TAX POSITION TAKEN THAT IS BENEFICIAL TO THE

FOUNDATION, INCLUDING ANY RELATED INTEREST AND PENALTIES, WHEN IT IS MORE

LIKELY THAN NOT THE POSITION TAKEN BY MANAGEMENT WITH RESPECT TO A

TRANSACTION OR CLASS OF TRANSACTIONS WILL BE OVERTURNED BY A TAXING

AUTHORITY UPON EXAMINATION.


PART XI, LINE 4B - OTHER ADJUSTMENTS:

LOSS ON DISPOSAL OF FA                       -4,679.


PART XII, LINE 2D - OTHER ADJUSTMENTS:

LOSS ON DISPOSAL OF FA                       4,679.

332055  09-28-23

**SCHEDULE G**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" on Form 990, Part IV, line 17, 18, or 19, or if the
organization entered more than $15,000 on Form 990-EZ, line 6a.

**Attach to Form 990 or Form 990-EZ.**

**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

**Part I** **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17. Form 990-EZ filers are not
required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

- **a** [X] Mail solicitations
- **b** [X] Internet and email solicitations
- **c** [X] Phone solicitations
- **d** [X] In-person solicitations
- **e** [X] Solicitation of non-government grants
- **f** [ ] Solicitation of government grants
- **g** [ ] Special fundraising events

**2 a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees, or
key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services? [X] **Yes** [ ] **No**

**b** If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be
compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| THE PURSUANT GROUP - 15660 N. DALLAS PKWY, #1000, DALLAS, | INDIVIDUAL GIVING CAMPAIGN | | X | 0. | 577,705. | -577,705. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | 577,705. | -577,705. |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration
or licensing.

AL,AK,AZ,AR,CA,CO,CT,DE,FL,GA,HI,ID,IL,IN,IA,KS,KY,LA,ME,MD,MA,MI,MN,MS,MO
MT,NE,NV,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,RI,SC,SD,TN,TX,UT,VT,VA,WA,WV,WI,WY

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** **Schedule G (Form 990) 2023**

SEE PART IV FOR CONTINUATIONS

Schedule G (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

**Part II** | **Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | **(a)** Event #1 | **(b)** Event #2 | **(c)** Other events | **(d)** Total events (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|
| Revenue | | (event type) | (event type) | (total number) | |
| | **1** Gross receipts | | | | |
| | **2** Less: Contributions | | | | |
| | **3** Gross income (line 1 minus line 2) | | | | |
| Direct Expenses | **4** Cash prizes | | | | |
| | **5** Noncash prizes | | | | |
| | **6** Rent/facility costs | | | | |
| | **7** Food and beverages | | | | |
| | **8** Entertainment | | | | |
| | **9** Other direct expenses | | | | |
| | **10** Direct expense summary. Add lines 4 through 9 in column (d) | | | | |
| | **11** Net income summary. Subtract line 10 from line 3, column (d) | | | | |

**Part III** | **Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | **(a)** Bingo | **(b)** Pull tabs/instant bingo/progressive bingo | **(c)** Other gaming | **(d)** Total gaming (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|
| Revenue | **1** Gross revenue | | | | |
| Direct Expenses | **2** Cash prizes | | | | |
| | **3** Noncash prizes | | | | |
| | **4** Rent/facility costs | | | | |
| | **5** Other direct expenses | | | | |
| | **6** Volunteer labor | ☐ Yes_____ % <br> ☐ No | ☐ Yes_____ % <br> ☐ No | ☐ Yes_____ % <br> ☐ No | |
| | **7** Direct expense summary. Add lines 2 through 5 in column (d) | | | | |
| | **8** Net gaming income summary. Subtract line 7 from line 1, column (d) | | | | |

**9** Enter the state(s) in which the organization conducts gaming activities: _____

**a** Is the organization licensed to conduct gaming activities in each of these states? ............................ ☐ **Yes** ☐ **No**

**b** If "No," explain: _____

**10a** Were any of the organization's gaming licenses revoked, suspended, or terminated during the tax year? .................. ☐ **Yes** ☐ **No**

**b** If "Yes," explain: _____

332082 09-13-23    **Schedule G (Form 990) 2023**

Schedule G (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743   Page **3**

| | | | |
|---|---|---|---|
| **11** | Does the organization conduct gaming activities with nonmembers? ................................................................... | ☐ Yes | ☐ No |
| **12** | Is the organization a grantor, beneficiary or trustee of a trust, or a member of a partnership or other entity formed | | |
| | to administer charitable gaming? ........................................................................................................... | ☐ Yes | ☐ No |

**13** Indicate the percentage of gaming activity conducted in:

**a** The organization's facility .................................................................................................................... **13a** | %

**b** An outside facility .............................................................................................................................. **13b** | %

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name _____

Address _____

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue? ............... ☐ Yes ☐ No

**b** If "Yes," enter the amount of gaming revenue received by the organization   $ _____   and the amount

of gaming revenue retained by the third party   $ _____

**c** If "Yes," enter name and address of the third party:

Name _____

Address _____

**16** Gaming manager information:

Name _____

Gaming manager compensation   $ _____

Description of services provided _____

_____

_____

☐ Director/officer      ☐ Employee      ☐ Independent contractor

**17** Mandatory distributions:

**a** Is the organization required under state law to make charitable distributions from the gaming proceeds to

retain the state gaming license? ............................................................................................................. ☐ Yes ☐ No

**b** Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the

organization's own exempt activities during the tax year   $ _____

| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions. |
|---|---|

SCHEDULE G, PART I, LINE 2B, LIST OF TEN HIGHEST PAID FUNDRAISERS:

(I) NAME OF FUNDRAISER: THE PURSUANT GROUP

(I) ADDRESS OF FUNDRAISER: 15660 N. DALLAS PKWY, #1000, DALLAS, TX  75248

SCHEDULE G, PART I, LINE 2B, COLUMN (IV):

NO AMOUNT HAS BEEN REPORTED IN COLUMN (IV) BECAUSE IT IS DIFFICULT TO

DETERMINE WHAT PORTION OF CONTRIBUTION REVENUE RECEIVED DURING THE YEAR

WAS ATTRIBUTABLE TO THIS FUNDRAISER'S EFFORTS.

Schedule G (Form 990)          PATIENT ACCESS NETWORK FOUNDATION            20-1184743   Page **4**

| Part IV | Supplemental Information *(continued)* |

**Schedule G (Form 990)**

**SCHEDULE I**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

**Complete if the organization answered "Yes" on Form 990, Part IV, line 21 or 22.**
**Attach to Form 990.**
**Go to www.irs.gov/Form990 for the latest information.**

OMB No. 1545-0047

## 2023

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

| Part I | General Information on Grants and Assistance |
|---|---|

**1** Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ............................................................................................................ [X] **Yes** [ ] **No**

**2** Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

| Part II | Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed. |
|---|---|

| **1 (a)** Name and address of organization or government | **(b)** EIN | **(c)** IRC section (if applicable) | **(d)** Amount of cash grant | **(e)** Amount of noncash assistance | **(f)** Method of valuation (book, FMV, appraisal, other) | **(g)** Description of noncash assistance | **(h)** Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**2** Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ............................................................

**3** Enter total number of other organizations listed in the line 1 table .........................................................................................................

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**                                         Schedule I (Form 990) 2023

LHA    332101  11-01-23

Schedule I (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION                                    20-1184743                    Page **2**

| Part III | Grants and Other Assistance to Domestic Individuals. | Complete if the organization answered "Yes" on Form 990, Part IV, line 22. |

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| MEDICATION CO-PAY ASSISTANCE | 110520 | 255,391,522. | 0. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Part IV | Supplemental Information. | Provide the information required in Part I, line 2; Part III, column (b); and any other additional information. |

PART I, LINE 2:

THESE FUNDS REPRESENT THE GRANTS MADE FOR THE BENEFIT OF PATIENTS.  THROUGH

AN APPLICATION PROCESS WHICH INCLUDES INCOME VERIFICATION AND CONFIRMATION

OF MEDICAL NEED AGAINST ELIGIBILITY CRITERIA SET BY THE BOARD,  PAN ENSURES

THAT ALL PATIENTS WHO REQUEST OUR SERVICES MEET THE CRITERIA FOR RECEIVING

A GRANT BEFORE ANY FUNDS ARE DISBURSED. THE PATIENT'S GRANT WILL PROVIDE

ASSISTANCE FOR THEIR RESPONSIBILITY (DEDUCTIBLE, CO-PAYMENT, OR

COINSURANCE) FOR COVERED MEDICATION SERVICES AFTER PAYMENT FROM THE PRIMARY

INSURANCE OR THE AMOUNT AVAILABLE TO EACH PATIENT IS LIMITED BY A CAP SET

Schedule I (Form 990)          PATIENT ACCESS NETWORK FOUNDATION          20-1184743  Page **2**

| Part IV | Supplemental Information |
|---|---|

BY THE BOARD.  FUNDS ARE DISBURSED TO THE PHARMACY OR PHYSICIAN'S OFFICE

WHEN POSSIBLE, SINCE WE WANT TO ENSURE THAT THE PATIENT DOES NOT NEED TO

PROVIDE FUNDS OUT-OF-POCKET FOR THEIR MEDICATIONS.

332291
04-01-23

**SCHEDULE J**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**Attach to Form 990.**
**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public Inspection**

Name of the organization | Employer identification number
PATIENT ACCESS NETWORK FOUNDATION | 20-1184743

| Part I | Questions Regarding Compensation |
|---|---|

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. |  |  |
|  | ☐ First-class or charter travel ☐ Housing allowance or residence for personal use |  |  |
|  | ☐ Travel for companions ☐ Payments for business use of personal residence |  |  |
|  | ☐ Tax indemnification and gross-up payments ☐ Health or social club dues or initiation fees |  |  |
|  | ☐ Discretionary spending account ☐ Personal services (such as maid, chauffeur, chef) |  |  |

| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** |  |  |
|---|---|---|---|---|
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked on line 1a? | **2** |  |  |

| **3** | Indicate which, if any, of the following the organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. |  |  |  |
|---|---|---|---|
|  | ☐ Compensation committee ☒ Written employment contract |  |  |
|  | ☒ Independent compensation consultant ☒ Compensation survey or study |  |  |
|  | ☒ Form 990 of other organizations ☒ Approval by the board or compensation committee |  |  |

| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: |  |  |  |
|---|---|---|---|
| **a** | Receive a severance payment or change-of-control payment? | **4a** | X |  |
| **b** | Participate in or receive payment from a supplemental nonqualified retirement plan? | **4b** | X |  |
| **c** | Participate in or receive payment from an equity-based compensation arrangement? | **4c** |  | X |
|  | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. |  |  |  |

|  | **Only section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** |  |  |  |
|---|---|---|---|---|
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: |  |  |  |
| **a** | The organization? | **5a** |  | X |
| **b** | Any related organization? | **5b** |  | X |
|  | If "Yes" on line 5a or 5b, describe in Part III. |  |  |  |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: |  |  |  |
| **a** | The organization? | **6a** |  | X |
| **b** | Any related organization? | **6b** |  | X |
|  | If "Yes" on line 6a or 6b, describe in Part III. |  |  |  |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described on lines 5 and 6? If "Yes," describe in Part III | **7** |  | X |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** |  | X |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** |  |  |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** **Schedule J (Form 990) 2023**

LHA  332111 11-06-23

Schedule J (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

| **Part II** | Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. | Use duplicate copies if additional space is needed. |
|---|---|---|

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii).
Do not list any individuals that aren't listed on Form 990, Part VII.

**Note:** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC and/or 1099-NEC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| (1)  KEVIN HAGAN | (i) | 469,670. | 59,150. | 552. | 13,200. | 25,616. | 568,188. | 0. |
| PRESIDENT & CEO | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (2)  NECHUMAH GETZ | (i) | 316,286. | 32,693. | 153,112. | 13,200. | 1,232. | 516,523. | 0. |
| CHIEF STRATEGY & OPERATION | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (3)  SCOTT SCHLENOFF | (i) | 271,310. | 28,266. | 153,112. | 12,329. | 25,616. | 490,633. | 0. |
| CFO & TREASURER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (4)  AMY NILES | (i) | 238,734. | 28,620. | 155,560. | 5,400. | 17,227. | 445,541. | 0. |
| CHIEF ADVOCACY & ENGAGEMENT OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (5)  LEENA PATEL | (i) | 206,498. | 21,443. | 131,429. | 9,569. | 18,852. | 387,791. | 0. |
| VICE PRESIDENT OF DEVELOPMENT | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (6)  KISHORE BALASUBRAMANYA | (i) | 329,446. | 17,314. | 570. | 13,200. | 25,616. | 386,146. | 0. |
| CHIEF TECHNOLOGY OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (7)  RICHARD CITRENBAUM | (i) | 229,076. | 25,467. | 457. | 9,658. | 25,581. | 290,239. | 0. |
| VICE PRESIDENT OF OPERATIONS | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (8)  ANDRE HARRELL | (i) | 214,447. | 0. | 46,976. | 4,933. | 11,111. | 277,467. | 0. |
| CHIEF GROWTH OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (9)  KIM BAICH | (i) | 228,423. | 10,330. | 964. | 7,354. | 18,852. | 265,923. | 0. |
| CHIEF DIVERSITY & HEALTH EQUITY OFFI | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| (10) MIA HARMON | (i) | 221,222. | 10,125. | 193. | 7,530. | 17,222. | 256,292. | 0. |
| CHIEF COMPLIANCE AND PRIVACY OFFICER | (ii) | 0. | 0. | 0. | 0. | 0. | 0. | 0. |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |
| | (i) | | | | | | | |
| | (ii) | | | | | | | |

Schedule J (Form 990) 2023

Schedule J (Form 990) 2023      PATIENT ACCESS NETWORK FOUNDATION                          20-1184743          Page **3**

**Part III**  **Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

PART I, LINES 4A-B:

PART I, LINES 4A-4B:

SEVERANCE:

ANDRE HARRELL RECEIVED SEVERANCE BENEFITS OF $46,250.  THE TERMS AND

CONDITIONS WERE CONSISTENT WITH INDUSTRY STANDARDS.

SUPPLEMENTAL NON-QUALIFIED RETIREMENT PLAN:

SCOTT SCHLENOFF, AMY NILES, NECHUMAH GETZ, AND LEENA PATEL PARTICIPATED IN

THE ORGANIZATION'S 457(F) PLAN EFFECTIVE JANUARY 1, 2020. THE BENEFIT

PAYABLE TO EACH PARTICIPANT UNDER THE PLAN IS AN AMOUNT EQUAL TO 75% OF THE

PARTICIPANT'S 2020 ANNUAL BASE SALARY.  EACH PARTICIPANT BECAME VESTED IN

HIS OR HER BENEFIT ON DECEMBER 31, 2023, AND WERE PAID OUT THE FOLLOWING

AMOUNTS FROM IT:

SCOTT SCHLENOFF: $152,537

AMY NILES: $152,537

NECHUMAH GETZ: $152,537

LEENA PATEL: $131,250

**Schedule J (Form 990) 2023**

**SCHEDULE O**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
**Attach to Form 990 or Form 990-EZ.**
Go to www.irs.gov/Form990 for the latest information.

OMB No. 1545-0047

**2023**

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

FORM 990, PART I, LINE 1, DESCRIPTION OF ORGANIZATION MISSION:

TREATMENT THEY NEED BY PAYING FOR THEIR OUT-OF-POCKET COSTS AND

ADVOCATING FOR IMPROVED ACCESS, EQUITY, AND AFFORDABILITY.


FORM 990, PART III, LINE 4A, PROGRAM SERVICE ACCOMPLISHMENTS:

HEALTH AND HUMAN SERVICES, OFFICE OF THE INSPECTOR GENERAL (OIG

ADVISORY OPINION 07-18)


FORM 990, PART VI, SECTION A, LINE 1A:

THE EXECUTIVE COMMITTEE MAKES DECISIONS ON BEHALF OF THE FULL BOARD BETWEEN

BOARD MEETINGS IN URGENT CIRCUMSTANCES AND FULFILLS ANY OTHER SPECIFIC

ACTIONS DELEGATED TO THE COMMITTEE BY THE FULL BOARD. URGENT CIRCUMSTANCES

ARE DETERMINED BY THE BOARD CHAIR IN CONSULTATION WITH THE PRESIDENT AND

CEO. ALL MEMBERS OF THE EXECUTIVE COMMITTEE ARE ALSO VOTING BOARD MEMBERS.


FORM 990, PART VI, SECTION B, LINE 11B:

THE 990 IS REVIEWED BY THE FINANCE COMMITTEE. ALL BOARD MEMBERS RECEIVE A

COPY OF THE FORM PRIOR TO FILING.


FORM 990, PART VI, SECTION B, LINE 12C:

AS POTENTIAL BOARD MEMBERS OR OFFICERS ARE RECRUITED THEY ARE ASKED ABOUT

POSSIBLE CONFLICTS OF INTEREST. UPON JOINING PAN, AND AT LEAST ANNUALLY,

MEMBERS READ AND SIGN THE CONFLICT OF INTEREST POLICY.  IF ANY CONFLICTS

ARE NOTED ON THE FORM, MORE INFORMATION WILL BE GATHERED AND IT WILL BE

DETERMINED IF THE ISSUE IS MATERIAL.  IN ADDITION, THAT MEMBER WILL ABSTAIN

FROM ALL DISCUSSIONS AND VOTE ON THE MATTER.  IF IT IS MATERIAL, WE INVOLVE

| Name of the organization | Employer identification number |
|---|---|
| PATIENT ACCESS NETWORK FOUNDATION | 20-1184743 |

LEGAL COUNSEL AND A DETAILED FOLLOW UP AND RESOLUTION WILL OCCUR.


FORM 990, PART VI, SECTION B, LINE 15:

THE INDEPENDENT BOARD DETERMINES THE COMPENSATION FOR THE PRESIDENT/CEO.

THE CURRENT PRESIDENT/CEO STARTED IN SEPTEMBER 2021.  HIS COMPENSATION WAS

DETERMINED WITH THE HELP OF AN OUTSIDE CONSULTANT WHO USED DATA FROM OTHER

ORGANIZATIONS' 990S.  ALL OTHER EMPLOYEES SALARIES ARE DETERMINED BY THE

PRESIDENT/CEO IN ACCORDANCE WITH THIRD PARTY COMPENSATION SURVEYS. THE MOST

RECENT STAFF COMPENSATION STUDY WAS COMPLETED IN 2022.  IN ADDITION,

PERIODICALLY, THE STAFF REVIEWS FORMS 990 OF ORGANIZATIONS WITH SIMILAR

MISSIONS TO HELP DETERMINE COMPENSATION.


FORM 990, PART VI, LINE 17, LIST OF STATES RECEIVING COPY OF FORM 990:

AL,AR,CA,DC,FL,GA,HI,IL,KS,KY,MD,MA,MS,MI,MN,NH,NM,NJ,NY,OR,PA,RI,SC,TN,UT

VA,WV,WI


FORM 990, PART VI, SECTION C, LINE 19:

THE ORGANIZATION'S FINANCIAL STATEMENTS ARE POSTED ON ITS WEBSITE. THE

ORGANIZATION'S GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY MAY BE

MADE AVAILABLE UPON REQUEST ON A CASE BY CASE BASIS.

**SCHEDULE R**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**

**Attach to Form 990.**

**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2023**

**Open to Public Inspection**

Name of the organization

PATIENT ACCESS NETWORK FOUNDATION

Employer identification number

20-1184743

**Part I**  **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| PAN BRIGHTTRACK, LLC - 93-4724067 1032 15TH ST NW, STE 413 WASHINGTON , DC 20005 | PURSUE ACTIVITIES RELATED TO CLINICAL TRIALS | DELAWARE | 0. | 0. | PAN FOUNDATION |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II**  **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|
| | | | | | | Yes | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule R (Form 990) 2023

SEE PART VII FOR CONTINUATIONS

332161 09-28-23    LHA

Schedule R (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **2**

**Part III**   **Identification of Related Organizations Taxable as a Partnership.**   Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV**   **Identification of Related Organizations Taxable as a Corporation or Trust.**   Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

332162 09-28-23    **Schedule R (Form 990) 2023**

Schedule R (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION                    20-1184743    Page **3**

| **Part V** | **Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36. |
|---|---|

| | | Yes | No |
|---|---|---|---|
| **Note:** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | |
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | |
| **b** Gift, grant, or capital contribution to related organization(s) | **1b** | | |
| **c** Gift, grant, or capital contribution from related organization(s) | **1c** | | |
| **d** Loans or loan guarantees to or for related organization(s) | **1d** | | |
| **e** Loans or loan guarantees by related organization(s) | **1e** | | |
| **f** Dividends from related organization(s) | **1f** | | |
| **g** Sale of assets to related organization(s) | **1g** | | |
| **h** Purchase of assets from related organization(s) | **1h** | | |
| **i** Exchange of assets with related organization(s) | **1i** | | |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | **1k** | | |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | | |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | | |
| **o** Sharing of paid employees with related organization(s) | **1o** | | |
| **p** Reimbursement paid to related organization(s) for expenses | **1p** | | |
| **q** Reimbursement paid by related organization(s) for expenses | **1q** | | |
| **r** Other transfer of cash or property to related organization(s) | **1r** | | |
| **s** Other transfer of cash or property from related organization(s) | **1s** | | |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)**<br>Name of related organization | **(b)**<br>Transaction type (a-s) | **(c)**<br>Amount involved | **(d)**<br>Method of determining amount involved |
|---|---|---|---|
| **(1)** | | | |
| **(2)** | | | |
| **(3)** | | | |
| **(4)** | | | |
| **(5)** | | | |
| **(6)** | | | |

Schedule R (Form 990) 2023    PATIENT ACCESS NETWORK FOUNDATION    20-1184743    Page **4**

| Part VI | **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37. |

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners sec. 501(c)(3) orgs.? Yes \| No | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes \| No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes \| No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Schedule R (Form 990) 2023

Schedule R (Form 990) 2023        PATIENT ACCESS NETWORK FOUNDATION                    20-1184743   Page **5**

| **Part VII** | Supplemental Information |

Provide additional information for responses to questions on Schedule R. See instructions.

PART I, IDENTIFICATION OF DISREGARDED ENTITIES:


NAME, ADDRESS, AND EIN OF DISREGARDED ENTITY:

PAN BRIGHTTRACK, LLC

EIN: 93-4724067

1032 15TH ST NW, STE 413

WASHINGTON , DC  20005

PRIMARY ACTIVITY: PURSUE ACTIVITIES RELATED TO CLINICAL TRIALS

DIRECT CONTROLLING ENTITY: PAN FOUNDATION

332165  09-28-23                                                                Schedule R (Form 990) 2023